UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT SYLVESTER KELLY, aka "R.Kelly" | Case No. 19 CR 567-1<br><br>Honorable Harry D. Lienenweber |

# GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR DETENTION OF DEFENDANT ROBERT SYLVESTER KELLY

The defendant, Robert Sylvester Kelly, currently 52-years old, sexually abused young teen girls, some as young as being in 8th grade, over the span of many years. Defendant threatened, intimidated, physically abused, and used violence, threats of violence, and other controlling behaviors against victims and witnesses so that he could abuse, manipulate, and control them. Defendant's psychological abuse and control of the young girls, who are now adults, is real and ongoing. Further, defendant and his co-conspirators used defendant's fame, power, and financial resources to go to great lengths to obstruct justice, cover-up evidence, and tamper with witnesses. For years, defendant used threats, intimidation, and pressure to cause victims, their family members, and witnesses to provide false information to law enforcement regarding defendant's sexual abuse of young teen girls. Defendant and his co-conspirators also threatened violence against witnesses who possessed graphic videos showing defendant sexually abusing a minor girl.

1

For the safety of the community, to ensure that defendant abides by the law, to ensure defendant's appearance at future court dates, and because there is a presumption in favor of detention, defendant should be detained pending trial.

**I.  BACKGROUND**

On July 11, 2019, a grand jury in the Northern District of Illinois charged defendant in a 13-count indictment involving offenses relating to child exploitation and obstruction of justice. Specifically, Count One through Count Four of the Indictment charges defendant with using a child to engage in sexually explicit conduct for the purpose of creating a visual depiction of that conduct, in violation of Title 18, United States Code, Section 2251(a). These counts allege that defendant created four videos that depict him sexually abusing a young teen girl. Each of these counts carries a mandatory minimum sentence of ten years in prison.

Count Five charges defendant with an obstruction of justice conspiracy spanning nearly two decades, from 2000 to the present, in violation of Title 18, United States Code, Section 371. This count alleges that defendant and his co-conspirators concealed and covered up the existence of videos that show defendant sexually abusing young girls. The count also alleges that defendant conspired to pay money to numerous people to ensure that they not cooperate with law enforcement and would conceal and cover up evidence regarding defendant's sexual abuse of minor girls. The indictment alleges that defendant used physical abuse, violence, threats of violence, blackmail, and other controlling behaviors against victims so that defendant could

maintain control over them, prevent them from providing evidence to law enforcement, and persuade them to lie about defendant's sexual abuse of them.

Counts Six alleges that for a period of six years, defendant and his co-conspirators conspired to receive child pornography. Counts Seven and Eight allege that defendant received three specific videos of child pornography. Each of these counts carries a mandatory minimum sentence of five years in prison.

Lastly, Counts Nine through Thirteen of the Indictment charge defendant with enticing five minors to engage in sexual activity with him, in violation of Title 18, United States Code, Section 2422(b).

In total, defendant is facing a statutory mandatory minimum sentence of 10 years imprisonment and a maximum term of imprisonment of 195 years.

Separately, on July 12, 2019, the United States Attorney's Office for the Eastern District of New York unsealed an indictment charging defendant in a five-count indictment. That indictment includes a racketeering charge with multiple predicate racketeering acts relating to five victims, some whom were minors at the time of the conduct.

There is no overlap between the victims alleged in this Indictment and the victims alleged in the New York case. Accordingly, defendant faces federal charges related to his abuse of 10 different minors and young women.

In addition to those significant federal charges, defendant also faces serious charges in the Circuit Court of Cook County, Illinois. Specifically, defendant was charged in February 2019 with 10 counts of aggravated criminal sexual abuse of four

different victims, including three victims who were under the age of 17 at the time of the abuse. Then, in May 2019, defendant was charged with 11 additional counts of sexual assault and abuse relating to one of those minor victims. Four of those charges are pursuant to Title 720, Illinois Compiled Statutes, Section 5/12-14(a)(3) or (a)(4). Those charges allege that defendant committed aggravated criminal sexual assault, including by threatening the life of a victim or during the commission of another felony.

## II. LEGAL STANDARD

Under the Bail Reform Act, federal courts may order a defendant's detention pending trial upon a determination that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. 18 U.S.C. § 3142(e). With respect to reasonably assuring the appearance of the defendant, the government bears the burden of proof by a preponderance of the evidence. *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985). Regarding reasonably assuring the safety of any other person and the community, the government bears the burden of proving its allegations by clear and convincing evidence. 18 U.S.C. §3142(f); *United States v. Salerno*, 481 U.S. 739, 742 (1987). The meaning of "safety of any other person" in Section 3142(e)(1) is not limited to physical harm or violence. *United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007) ("The concept of 'safety' may include non-physical harm.").

The Court shall hold a detention hearing when one of the circumstances described in 18 U.S.C. § 3142(f) is met, including when the case involves a crime of

violence, 18 U.S.C. § 3142(f)(1)(A), and when the case involves "a serious risk that the [defendant] will obstruct or attempt to obstruct justice, or … attempt to threaten, injure, or intimidate, a prospective witness or juror," 18 U.S.C. § 3142(f)(2)(B). Felony child exploitation offenses under Chapters 110 and 117, such as the crimes alleged in Counts One through Four and Counts Six through Thirteen of the Indictment, qualify as "crimes of violence" under the Bail Reform Act. 18 U.S.C. § 3156(a)(4)(C).

The Bail Reform Act establishes a set of factors that the Court may consider in its detention determination, including the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and the history and characteristics of the defendant. 18 U.S.C. § 3142(g).

Under 18 U.S.C. § 3142(e)(3)(E), there is presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community if there is probable cause to believe that a defendant committed an offense involving a minor victim under 18 U.S.C. §§ 2251 and 2422. That presumption applies in this case because the Indictment charges defendant with those statutes in Counts One through Four and Counts Nine through Thirteen. This presumption "continues to weigh in the balance against bail even after the defendant meets his burden of producing some evidence to rebut the presumption." *United States v. Diaz*, 777 F.2d 1236, 1238 (7th Cir. 1985).

The Federal Rules of Evidence do not apply at a detention hearing and the government may proffer evidence. *See* Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f); *Salerno*, 481 U.S. at 743.

5

## III. ARGUMENT

During the course of its investigation, the government interviewed numerous witnesses, received three videos that depict the defendant sexually abusing a young teen girl, and obtained numerous records regarding defendant's efforts to tamper with witnesses, falsify records, and conceal and cover-up evidence. This evidence establishes that defendant spent many years of his adult life exploiting and manipulating young girls, including by threatening members of a victim's family. In order to avoid detection by law enforcement and to attempt to conceal the full scope of his serial, exploitive efforts, defendant paid hundreds of thousands of dollars to witnesses to collect videos of his sexual abuse of minors, and he used pressure, intimidation, threats, and other coercive measures to persuade victims and witnesses to lie to investigators.

The defendant should be detained pending trial. He poses a significant threat to minor girls in the community, to victims and witnesses in the case, and to the ongoing investigation. In addition, defendant has the means and the incentive to flee the jurisdiction given that he is facing multiple federal charges that carry a mandatory minimum of 10 years' imprisonment and a maximum of 195 years' imprisonment. Defendant cannot overcome the statutory presumption in favor of detention in this case. 18 U.S.C. § 3142(e)(3)(E).

### A. DEFENDANT POSES A RISK OF DANGER TO THE COMMUNITY

#### 1. NATURE AND CIRCUMSTANCES OF THE OFFENSES

Defendant is charged with incredibly serious crimes involving the sexual exploitation and abuse of young teenaged girls. Five of those victims – Minors 1 through 5 – are included in the indictment. That said, the government's ongoing investigation has revealed that defendant sexually abused many other young girls. Indeed, as one example, in 1994 when defendant was 27-years old, he married a 15-year old girl at a hotel in Rosemont, Illinois, knowing that she was a minor. Defendant's sexual abuse of young girls was prolific not only in the number of girls he abused, but also in the frequency of his sexual abuse of particular girls. Two of the minors listed in the Indictment reported that defendant sexually abused them hundreds of times as minors, beginning when they were in middle school.

Defendant's sexual abuse of young girls included degrading, humiliating, and sado-masochistic conduct such as urinating on a minor girl's body. The Seventh Circuit has held that urinating on a minor victim qualifies for the sentencing enhancement for sadistic or masochistic conduct. *See United States v. Turchen*, 187 F.3d 735, 738-40 (7th Cir. 1999) (affirming district court's conclusion that an image of nude men standing over a prepubescent girl and urinating on her face qualified as an image depicting sadistic or masochistic conduct under the sentencing guidelines, finding that the district court's description of the image as "degrading, depraved, sadistic, masochistic, perverse, and a form of violence" was correct); *United States v.*

7

*Parker*, 267 F.3d 839, 847 (8th Cir. 2001) (same). Both videos in Counts One and Two of the Indictment include this type of sado-masochistic conduct by defendant.

Four of the five minor victims listed in the Indictment reported that defendant pressured and coerced them into having threesomes with defendant and other minor girls. Two of those minor girls reported that they cried during the threesomes and that defendant nevertheless pressured and coerced them to continue. One victim reported that defendant told her not to be a "baby" about it and to stop crying.

In addition to sexually abusing young teen girls, defendant further exploited them by frequently filming his sexual abuse of them. The Indictment refers to Videos 1, 2, 3, and 4, all of which depict defendant's sexual abuse of Minor 1. The government possesses copies of Videos 1, 2, and 3, which were filmed in three different rooms at defendant's former residence located at 1010 West George Street in Chicago. The government does not possess of a copy of Video 4, which also depicts Minor 2 in addition to Minor 1, but at least four witnesses provided evidence to the government regarding its existence, in addition to documentary evidence corroborating those witnesses. The government does not have Video 4 as a result of defendant's obstruction of justice, which is charged in Count Five of the Indictment and discussed further below.

Minor 1 wasn't the only young girl that defendant video recorded. Four of the five minor victims listed in the Indictment reported that defendant video recorded his sexual abuse of them. Moreover, there is no doubt that defendant knew the girls were under the age of 18. Multiple victims reported that defendant frequently demanded

8

that they say their age to him during defendant's sexual abuse of them. That's corroborated by Video 2 and Video 3, in which both defendant and Minor 1 refer to Minor 1 and Minor 1's body parts as being 14-years old. In total, on Videos 2 and 3, defendant and Minor 1 repeat her age at least 15 times.

Multiple minor victims reported that defendant used physical violence, and threats of physical violence, as punishments and as a way to control their behavior and loyalty. Both Minor 1 and Minor 2 reported being physically abused by defendant. Minor 4 reported that defendant threatened physical abuse against her. Minor 5 witnessed defendant physically attack someone else in her presence. Defendant's physical violence against the minors sometimes continued after they became adults.

In addition to physical harm, psychological harm is considered a danger under the Bail Reform Act, and in cases like this, the harm is "severe and real" and the danger is "ongoing." *United States v. McIntyre*, No. 16-13, 2018 WL 385034, at *5 (D.N.J. Jan. 10, 2018). In *McIntyre*, the defendant essentially extorted minor-aged girls to produce pornographic images by sending threatening messages over social media. The court found that the defendant could not overcome the presumption for detention, despite the fact that the defendant did not physically, in-person exploit a young child. Additionally, courts have found that a danger to the community does not only include physical harm or violent behavior. *See, e.g., United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) (a "defendant's propensity to commit crime generally, even if the resulting harm would not be solely physical, may constitute sufficient risk of danger to come within contemplation of [the Bail Reform Act]").

The sexual abuse of minor-aged victims is an insidious offense. Both courts and Congress have acknowledged the dangers of child pornography under 18 U.S.C. § 2251, and "repeatedly stress that child pornography 'is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved." *United States v. MacEwan*, 445 F.3d 237, 249-50 (3d Cir. 2006) (quoting Child Pornography Prevention Act of 1996, Pub.L.No. 104-208, § 121, 110 Stat. 3009, 3009-26 (1996) (codified as amended at 18 U.S.C. § 2251)). In *MacEwan*, the court cited the same Congressional findings which indicate that "where children are used in its production, child pornography **permanently** records the victim's abuse and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *Id.* at 250 (emphasis added). "The mere 'existence of and traffic in child pornography images creates the potential for many types of harm in the community and presents a clear and present danger to all children." *Id.*; *see also United States v. Conover*, 12-2080, 2012 WL 4846132 (D.N.J. Oct. 10, 2012) (citing *MacEwan* in favor of detention for a defendant who was charged with receipt and distribution of child pornography).

In this case, defendant preyed on vulnerable teen girls. Defendant used his celebrity status to lure young teen girls to him, and then he gained their trust and admiration. Once the young girls were close to defendant, defendant repeatedly used and abused them for his own sexual desires. Defendant was physically abusive, and he created numerous videos as trophies. Defendant further controlled his victims by

isolating them from family and friends and by imposing rules such as not allowing them to speak with other men without his permission.

The psychological scars that defendant left on his victims are real. That was by design, so that the victims would feel beholden to defendant and would not disclose the abuse to law enforcement. The risk defendant poses to these victims, and the trauma that he instilled when he videotaped his exploitive efforts, is ongoing and warrants detention pending trial.

### 2. THE STRENGTH OF THE EVIDENCE

The evidence against defendant is very strong and weighs in favor of detention.

*First*, the government possesses three videos showing defendant sexually abusing a young teen girl. These videos are disturbing, explicit, and crude. In two of the videos, defendant repeatedly refers to the victim's genitalia as being 14-years old and in such a way that indicates his particular sexual attraction to girls that age. In two of the videos, defendant subjects the victim to sadomasochistic abuse. These videos alone evidence the need for defendant's detention as he poses a risk to the community. Defendant's identity on these videos is established in multiple ways, including by the victim herself. All three of these videos were filmed at defendant's former home on George Street in Chicago, where very distinctive features of the home are prominently displayed on the videos.

*Second*, the government has interviewed numerous victims who have testified under oath regarding defendant's sexual abuse and his methods of physical and psychological control. For example:

One victim testified that defendant sexually abused her beginning when she was just 13 or 14-years old. Defendant repeatedly coerced the victim to engage in various and numerous sex acts, including threesomes with other minors and defendant, and he routinely videotaped that activity. Defendant also physically abused the minor victim. Defendant maintained significant control over the victim and persuaded her for many years to withhold information from law enforcement regarding the sexual abuse.

Similarly, another victim testified that defendant sexually abused her beginning when she was just 13 or 14-years old. She explained that defendant coerced her to engage in threesomes and foursomes with him and other minor girls. Defendant convinced the victim to keep the sexual abuse secret, and he repeatedly sexually abused her for years. Defendant also routinely videotaped his sexual abuse of this victim.

Another victim recounted that she met defendant when she was 16-years old, and that he forced her to engage in a threesome with him and another minor, during which she cried because she didn't want to go through with it. Similarly, another victim testified that she cried when defendant coerced her into a threesome with defendant and another minor victim. Defendant videotaped his sexual abuse of this minor, including the threesomes. This victim also reported that defendant physically abused her and was psychologically controlling of her.

Yet another victim testified that defendant targeted her when she was just 15-years old. Defendant lured the victim to come from a different state, and he sexually abused her on two different occasions, one occurring at his music studio in Chicago.

Defendant's repeated sexual abuse of minors demonstrates that he is a danger to society. Also, the fact that defendant routinely created video evidence regarding the sexual abuse means that the victims live in constant fear that videotapes will surface and that they will be re-victimized by the receipt or distribution of those videotapes. This is a very real fear, particularly given the wide distribution and black-market sales of Video 1 that occurred in connection with defendant's state charges in 2002.

*Third*, the government interviewed numerous witnesses who explained defendant's efforts to cover-up and conceal his sexual abuse of young teen girls, including defendant's incredible efforts to obstruct justice. For example, one of the victim's parents testified that defendant threatened the family if they did not deny to law enforcement that defendant sexually abused the victim. Another witness explained that defendant hired him to collect and return copies of videotapes that showed defendant sexually abusing a minor. Defendant threatened the life of the witness if the witness did not return all copies of the tape. A victim testified that she was depicted on one of those videotapes, and defendant paid her $100,000 to return a copy of the videotape. Additionally, several witnesses explained that defendant required that at least three witnesses take a polygraph examination to ensure that

13

defendant collected all copies of videotapes that depicted him sexually exploiting minors.

The above-detailed evidence is just a summary of the government's evidence of defendant's serial sexual abuse of minors and efforts to obstruct justice. Defendant has shown a repeated, violent, and dangerous history of exploiting minors, and he has demonstrated that he will break the law to try to keep himself from facing federal charges. Defendant should be detained pending trial.

### B. DEFENDANT POSES A SERIOUS RISK OF FLIGHT

Unlike the state court charges that defendant has faced since earlier this year, the Indictment in this case charges defendant with numerous counts that that carry a mandatory minimum sentence of 10 years' imprisonment. If convicted, defendant could spend the rest of his life in jail. Defendant is an incredibly successful recording artist who earned multi-millions of dollars over several decades. He continues to live a lavish lifestyle and has the means and incentive to flee now that he is facing much more serious charges with hard video evidence and cooperating victims. Accordingly, defendant is a risk of flight in addition to being a danger to the community.

The government will supplement this portion of its analysis after we review the Pretrial Services Report.

### C. DEFENDANT POSES A SERIOUS RISK OF ENGAGING IN OBSTRUCTION OF JUSTICE

In addition to being a danger to the community and a risk of flight, there is a serious risk that defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate a prospective witness.

14

Count One of the Indictment charges defendant with using a minor to create Video 1. Defendant was previously charged with this conduct in *People of the State of Illinois v. Robert Kelly*, 02 CR 14952. But defendant actively obstructed justice during the pendency of this trial. Defendant threatened witnesses, he isolated the victim at issue in the case, and he paid hundreds of thousands of dollars to at least three separate people to collect and round up videotape evidence that would prove his guilt. The defendant undermined the integrity of the state court trial, and his efforts obstructed the fair administration of justice. It further discouraged victims from cooperating with law enforcement for years, which allowed defendant to get away with his conduct for so long. Not anymore.

Additionally, as described in Count Four of the Indictment, there is probable cause to believe that defendant persuaded and instructed numerous witnesses and victims to lie under oath. Defendant used threats of violence, financial intimidation, and other coercive methods to ensure that victims and witnesses would not disclose the fact that he sexually abused a minor. Further, defendant and defendant's co-conspirators covered up evidence proving that Minor 1 was depicted in Video 1.

Defendant and his coconspirators also made witnesses and victims falsify records and create false entries in records. For example, defendant and his co-conspirators arranged for one victim to meet with an attorney who created a report of the interview with false information. At defendant and his co-conspirator's direction and through intimidation and threats, the victim falsely denied that defendant engaged with a threesome with the victim and another minor.

15

Defendant engaged in these efforts in order to mitigate the risk that he would face the serious charges that he now faces in this Court. Defendant's efforts amount to probable cause that he conspired to obstruct justice over the course of many years, and there is probable cause to believe that defendant is at serious risk of continuing to obstruct or attempting to obstruct justice.

## IV. CONCLUSION

The government respectfully requests that the defendant be detained pending trial.

        Respectfully submitted,

        JOHN R. LAUSCH, JR.
        United States Attorney

By:   /s/ *Angel M. Krull*
        ANGEL M. KRULL
        ABIGAIL L. PELUSO
        JEANNICE APPENTENG
        Assistant U.S. Attorneys
        219 South Dearborn St., Rm. 500
        Chicago, Illinois 60604
        (312) 353-5300

Dated: July 12, 2019