UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 19 CR 567-1 |
| v. | ) |
| | ) |
| ROBERT KELLY, | ) |
| | ) Hon. Harry D. Leinenweber |
| Defendant. | ) |

## MOTION TO RECONSIDER BAIL

NOW COMES the Defendant, ROBERT KELLY, through counsel, and respectfully requests that this Court reconsider its decision holding Defendant without bond pending trial. In support, Defendant, through counsel, states as follows:

I.    The Bail Reform Act is Designed to Permit Bail Pending Trial

Bail pending trial has long been a part of this nation's criminal process, because every defendant is presumed innocent until proven guilty. Thus, under the Bail Reform Act, courts "shall hold" detention hearings when the case involves any one of the enumerated serious offenses outlined in §3142(f)(1), or cases involving allegations of particularly dangerous criminal activity, or when there are "serious" concerns about risk of flight or obstruction of justice are present, §3142(f)(2), and determine whether there are conditions

upon which a defendant can be released.[1] The key question at the detention hearing is "whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community." Id. § 3142(f). Detention is only proper where, after this hearing, "the judicial officer finds that no condition or combination of conditions will reasonable assure the appearance of the person as required and the safety of any other person and the community." Id. §3142(C).

In United States v. Byrd, the court cautioned "even after a hearing, detention can be ordered only in certain designated and limited circumstances, irrespective of whether the defendant's release may jeopardize public safety." United States v. Byrd, 969 F.2d 106, 109-10 (5th Cir. 1992); United States v. Chavez-Rivas, 536 F. Supp. 926 (E.D. Wisc. 2008), at 966.

In this case, given Defendant's lack of resources, willingness to submit to electronic monitoring, and lack of contact with minors, history of appearance, substantial monetary bond posted in State Court, and

---

[1] "The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes. See 18 U.S.C. § 3142(f) (detention hearings available if case involves crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, or certain repeat offenders)."

*United States v. Salerno*, 481 U.S. 739, 747 (1987).

demonstrated ability to comply with bail restrictions, conditions could easily be fashioned. Unfortunately, at the hearing here the Court never contemplated "whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community." Id. § 3142(f).

II. The Court Incorrectly Applied the Bail Reform Act

This Court must reconsider its decision to detain because it was based on a flawed legal framework and a failure to apply the correct roadmap.[2] The inquiry required deliberation of the factors set forth in 18 USC §3142(g). Instead, this Court was only focused on the nature of the charged crimes, rather than Defendant's risk of flight or danger to the community, when evaluating whether there are reasonable conditions for bail. Rather than considering the conduct as simply starting the process by shifting the burden of persuasion, the Court applied it as the endpoint.

Even in a rebuttable presumption case, the overall burden remains with the government, not the Defendant:

> We turn now to the effect this presumption has on the court's analysis. We join the rest of the circuits, which have considered

---

[2] A motion for reconsideration is an appropriate means to correct manifest errors of law or fact. *Publishers Resource, Inc. v. Walker Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). Further, the Court has yet to enter the formal detention order required by 18 U.S.C. § 3142(i), so the detention order is not final.

3

> this issue in concluding that the presumption shifts the burden of production but not the burden of persuasion to the defendants. Jessup, 757 F.2d at 381-89; Chimurenga, 760 F.2d at 405; Fortna, 769 F.2d at 251. This approach is consistent with the presumption of innocence enjoyed by a criminal defendant.

United States v. Portes, 786 F.2d 758, 764 (7th Cir. 1985).

This Court wrongly presumed the allegations themselves justified detention. They do not; they simply define the burden(s):

> The Bail Reform Act prescribes different burdens of proof depending on whether the question involves the efficacy of conditions to assure attendance at trial or the safety of the community. If the former, the standard is a preponderance of the evidence; if the latter, it is proof by clear and convincing evidence. 18 U.S.C. 3142(f)(2)(B). The burden of proof by clear and convincing evidence is a greater burden of proof than preponderance of the evidence. Maynard v. Nygren, 332 F.3d 462, 469 (7th Cir.2003). Clear and convincing evidence is evidence that places "in the ultimate fact-finder an abiding conviction that the truth of… [the] factual contentions are 'highly probable.'" Colorado v. New Mexico, 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L. Ed. 2d 247 (1984). See also United States v. Boos, 329 F.3d 907, 911 (7th Cir.2003).

United States v. Meschino, No. 10 CR 588-1, 2010 U.S. Dist. LEXIS 72055, at *27 n.8 (N.D. Ill. July 19, 2010). The law required the government to demonstrate, by clear and convincing evidence, that there were no release conditions that would ensure the safety of the community or the appearance of the defendant. But the Court never reached that point, nor did the government.

As reflected by the attached transcript, the Court did not consider whether there were conditions which would overcome the rebuttable

4

presumption of detention. It erroneously relied upon the fact that a grand jury indictment had been returned, commenting that "the grand jury found probable cause of guilt." Detention Transcript at pg. 31. Of course, a grand jury does not do that, the grand jury only finds probable cause regarding whether a crime has been committed. And it does so in a one-sided presentation, not an adversary hearing. A grand jury finding of probable cause is far from guilt. It certainly cannot substitute for clear and convincing evidence.

Here, the government argued defendant should be detained as a danger to the community and as a flight risk. The United States Probation Officer recommended release, with conditions that would reasonably assure the safety of the community and Kelly's appearance, namely home incarceration with electronic monitoring and other conditions. Based on the Court's statements, it appears that the Court never considered those proposed conditions of release. See, e.g., United States v. Sabhani, 493 F.3d 63, 74-75. (Court must consider and explicitly state why conditions offered by Defendant would not ensure his appearance.)

Having stopped after the first step of the requisite analysis, the Court skipped the critical second step, determining whether there were conditions of release:

> A defendant cannot be detained as dangerous under §3142 (e), even if the presumption is not rebutted, unless a finding is made that no release conditions" will reasonably assure . . . the safety of the community . . . That finding cannot be based on evidence that he has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future misconduct. This is, indeed, the very import of the presumption of dangerousness in § 3142(e)… To rebut this presumption they need not necessarily show that they are not guilty of the charged crimes in the first place. They could also show that the specific nature of the crimes charged, or that something about their individual circumstances, suggests that "what is true in general is not true in the particular case . . ." United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). Any evidence favorable to a defendant that comes within a category listed in § 3142(g) can affect the operation of one or both of the presumptions, including evidence of their marital, family and employment status, ties to and role in the community, clean criminal record and other types of evidence encompassed in § 3142(g)(3).

United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986)

The burden for the defendant is low, all that is required is "some evidence that he will not flee or endanger the community if released." Dominguez at 707.

The evaluation of bail requires a balance: liberty interests versus public safety. That is why there only a narrowly crafted set of circumstances ever require detention. After all, pretrial detention impacts a defendant's ability to prepare a defense, restricts his contact with friends and family, subjects him

6

to draconian conditions and rules, and bars him from making a living or supporting others. [3]

Notably, the Court did not hear the specifics to any future dangerousness in the proffered evidence. "A defendant cannot be detained as dangerous under § 3142(e), even if the presumption is not rebutted, unless a finding is made that no release conditions "will reasonably assure . . . the safety of the community . . ." (Emphasis added). That finding cannot be based on evidence that he has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future misconduct." Dominguez, 783 F.2d 702, 706-07 (7th Cir. 1986).

Here, the best evidence that Defendant is not a current danger is the indictment itself. Let's look at the dates of the offenses:

Count 1: 1998-1999

Count 2: 1998-1999

Count 3: 1998-1999

Count 4: 1998

---

[3] Mr. Kelly is being held in the "Special Housing Unit" (SHU) because of who he is, not what he has done. That unit is also known as the "hole". Accordingly, the conditions are harsh. He is always locked up. There is no daily shower, no day room, no television or radio, no contact with other inmates, no recreation, and phone privileges are severely restricted. While others have face-to-face visits, in the SHU they are not. He has had to request to terminate his child support obligation and his girlfriends, with whom he lived, will have to move as a result of this incarceration.

Count 5: Conspiracy (obstruction) beginning in 1997;

    Overt Act A: 2007

    Over Act B: 2007

    Over Act C: 2008

    Overt Act D: 2013

    Over Act E: 2014

    Overt Act F: 2014

    Overt Act G: 2015

    Over Act H: 2015

Count 6: 2001-2007

Count 7: 2001-2002

Count 8: 2007

Count 9: 1999

Count 109: 1997-1998

Count 11: 1996

Count 12: 199-2000

Count 13: 1997-1998

    With the exception of some minor overt acts in 2015, over four years ago, the allegations are decades old and as stale as used gym socks. To the extent the government argued a serious risk of obstruction (18 U.S.C. 3142(f)(2)(B)) they offered no facts. The concern is a present or future risk. The charged

conduct, from the past, merely triggers the application of (f)(2)(B). It does not provide the proof.

Speculating, the Court commented that it would have been likely that, had the prosecutors known about additional tapes at Mr. Kelly's 2008 state trial, they would have prevailed. That statement is without any basis in fact. It presupposes the tapes were admissible. It also discounts the fact that the alleged victim in that case, who admittedly the federal prosecutors now say is cooperating with them, and her parents, who are apparently not, all testified before the state grand jury, under oath, that she was no not the lady in the video.

Moreover, any suggestion Mr. Kelly should be detained because of obstruction is impeached by the government's own agreement that Mr. McDavid and Mr. Brown, the co-defendant, did not have to be detained. It is also impeached by the fact that although these federal investigations were no secret and there have been pending state charges, no one has said anyone associated with Mr. Kelly or Mr. Kelly himself has tried to influence them with respect to any current investigation or charges.

Further, the Court must look to see what conditions can be set to mitigate this risk and it has not even attempted to do so. Mr. Kelly no longer has the money or the entourage he once did to help him in his endeavors. Home incarceration with close monitoring by pretrial services and limited access to

9

the internet will make it virtually impossible to attempt to contact any witnesses without being caught. The idea that Mr. Kelly has the means and wherewithal to obstruct any witness against him is frankly preposterous.

The court also disregarded that any accusations of sex with a minor dated back two decades.[4] Notably, although the government alleges four videos exist, they all involve the same person and relate to the same time frame—the 1990s. There is no suggestion Mr. Kelly ever distributed child pornography. Nothing was found when a search warrant was executed at Mr. Kelly's condominium. Nothing was found at his studio when he was arrested on state charges. Nothing was found because there is nothing to find.

Likewise, Mr. Kelly presents no risk of flight. He is a lifelong resident of Illinois. Mr. Kelly never missed a single court date, from 2002 to 2008, on his previous case. The court did not consider that Mr. Kelly appeared for each and every day of his trial and was present when the jury's verdict was read. The court never considered that Mr. Kelly has been aware of these federal investigations and yet did not abscond. The court never considered that Mr. Kelly boasted a substantial bond ($100,000.00) in connection with the now pending state court proceedings. The court never considered that Mr. Kelly

---

[4] When previously charged Mr. Kelly was found not guilty by a jury after a lengthy trial. https://www.nytimes.com/2008/06/14/arts/music/14kell.html)

10

does not have a passport. The court never considered that Mr. Kelly could be monitored by an electronic monitoring bracelet or GPS bracelet.

### III. Conclusion

Simply put, despite the present allegations, there are conditions of release for Mr. Kelly, who has no previous convictions, that can be fashioned that eliminate nearly any risk of flight or danger to the community. He can be confined to his home with electronic monitoring, given limited access to the internet, no contact with minors, and monitored by closely by pretrial services. Accordingly, bail should be set.

WHEREFORE, the defendant respectfully requests for this Honorable Court to order the defendant to be released on bond during the pendency of this case, subject to whatever conditions the Court deems to be necessary.

                                              Respectfully submitted,
                                              /s/ Steven Greenberg

Attorneys for Defendant:

STEVEN A. GREENBERG
Greenberg Trial Lawyers
Attorney at Law
53 W. Jackson Blvd., Suite 1260
Chicago, IL 60604
(312) 879-9500

Steve@GreenbergCD.com

LEONARDMEYER, LLP
Michael I. Leonard
120 North LaSalle – 20th Floor
Chicago, Illinois 60602
(312)380-6659 (direct)
(312)264-0671 (fax)

mleonard@leonardmeyerllp.com

Christopher T. Grohman

190 South LaSalle Street, Suite 3700
Chicago, IL 60603-3433
P: +1 312 499 0118
C: +1 312 515 7313

ctgrohman@duanemorris.com