UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ROBERT SYLVESTER KELLY, aka "R.Kelly"

Case No. 19 CR 567-1

Honorable Harry D. Leinenweber

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION TO RECONSIDER BAIL**

After an extensive detention hearing, this Court correctly concluded that defendant Robert Sylvester Kelly should be detained pending trial. Without providing any new evidence or new legal analysis, defendant asks this Court to reconsider its ruling simply because he disagrees with it. In doing so, defendant compares his repeated sexual abuse of a 14-year-old girl to stale gym socks, ignoring the allegation that defendant's ongoing obstruction of justice was the cause of any such "staleness." Congress certainly did not think that charges for the sexual abuse of minors could ever be "stale" when it eliminated the statute of limitations for such crimes. 18 U.S.C. § 3299. In any event, defendant's hyperbole and colorful language provide no basis to disrupt this Court's finding that "there are no conditions that will assure the defendant's attendance at trial and no conditions that will protect the public and certain individuals." Dkt. 54-1 at 32.

I. **THE COURT APPLIED THE APPROPRIATE STANDARD AND THE FACTS SUPPORT DETENTION.**

This Court correctly found that a presumption of detention applied because defendant is charged with multiple counts of sexual exploitation of children (Counts

1

1-4) and enticement of minors for sexual activity (Counts 9-13). *See* 18 U.S.C. § 3142(e)(3)(E) (presumption applies to offenses involving a minor victim under 18 U.S.C. §§ 2251 and 2422). This presumption "continues to weigh in the balance against bail even after the defendant meets his burden of producing some evidence to rebut the presumption." *United States v. Diaz*, 777 F.2d 1236, 1238 (7th Cir. 1985).

The Court's ruling that defendant is a danger to the community was supported by clear and convincing evidence. The government proffered at the detention hearing that Minor 1 testified under oath in the grand jury that Robert Kelly sexually abused her repeatedly beginning when she was as young as 13 years-old and that the videos named in Counts 1, 2, and 3 of the Indictment all show Robert Kelly sexually abusing her when she was 14 and 15 years-old. Minor 1's parents are also cooperating with the government. They support and corroborate their daughter in all respects, including by acknowledging defendant's admissions to them about his abuse of their daughter. Beyond that, multiple other witnesses corroborate Minor 1 in that they had first-hand knowledge of defendant's abuse of Minor 1 when they were also abused as minors by defendant. This alone supports the Court's ruling to detain defendant as a danger to the community.

But that's not all. In addition to Minor 1, the government proffered facts showing that defendant repeatedly sexually abused other teen girls, repeatedly created videos depicting his sexual abuse of teen girls, and received child pornography as part of his efforts to obstruct justice. The extent of defendant's sexual abuse of minor girls is staggering: the Indictment in this district alone alleges five minor

victims, and as proffered at the detention hearing, defendant sexually abused those girls *hundreds of times* before they turned 18 years-old. Dkt. 54-1 at 6. Defendant even married a 15 year-old girl when he was 27 years-old. Dkt. 54-1 at 12. The government produced in discovery to the defendant the official marriage application, marriage certificate, and annulment records for this marriage. Far from being a one-time mistake, defendant's sexual abuse of minors was intentional and prolific. As the government stated during the detention hearing, the danger posed by defendant regarding the risk that he will abuse or attempt to abuse minors is ongoing: "Being sexually attracted to young girls is not something that you can just turn on and turn off like a light switch. [That sexual desire and interest in young girls] hasn't just magically gone away. It's who the defendant is. It's what he's been doing for most of his adult life and that . . . makes him a danger today." Dkt. 54-1 at 9. The Court's finding of dangerousness was well supported.

Defendant argues that he is not a "current danger" simply because of the age of the underlying offenses alleged in the Indictment. Defendant, however, wholly ignores that the conspiracy to obstruct justice allegation runs to the present day, meaning that defendant currently poses a risk of obstruction of justice. This is because as long as victims are available to testify, and as long as evidence exists that the government has not yet obtained, the defendant's goals to obstruct justice and conceal evidence are present. For example, and as the Court noted, one of the videos charged in the Indictment is still "out there somewhere." Dkt. 54-1 at 32 ("And if all three or four videos, one of which apparently has not surfaced yet but must be out

there somewhere, had all three of them, who knows how the case could have come out.") This fact demonstrates both defendant's previous, successful attempts to obstruct justice and the ongoing incentive to continue to obstruct justice.

Defendant attempts to discount the fact that a missing video evidences obstruction by suggesting that additional videos would have been immaterial to the outcome of his previous trial. Dkt. 54-1 at 9. This is absurd. Of course there is a difference between a jury seeing one tape showing one instance of sexual abuse and a jury seeing four tapes depicting four instances of sexual abuse of the same girl. Additionally, defendant points to the fact that Minor 1 and her parents previously denied that she was depicted in Video 1.[1] As alleged in the Indictment, however, those false denials were induced by the defendant's threats, coercion, and payments. And, in any event, both Minor 1 and her parents are now cooperating with law enforcement, and each person acknowledges both that defendant sexually abused Minor 1 and that defendant pressured the witnesses to deny that fact to law enforcement.[2]

Because the government provided evidence that defendant is an ongoing and present danger, defendant's reliance on *United States v. Dominguez*, 783 F.2d 702 (7th Cir. 1986), is misplaced. In that case (involving allegations of distribution of

---

[1] Neither Minor 1 nor her parents previously denied that Minor 1 was depicted on Video 2 and Video 3 being sexually abused by defendant.

[2] Defendant also argued in his motion that he is not a danger to the community because "[n]othing was found when a search warrant was executed at Mr. Kelly's condominium." Dkt. 54 at 10. That is incorrect. The government seized dozens of electronic devices from defendant's condominium, and the search of those devices is ongoing.

narcotics), the defendant argued that he was not a danger to the community, and the detaining court failed to make a finding that the government met its burden of persuasion to the contrary. Unlike in that case, here the government proffered evidence that defendant is likely to continue to engage in criminal conduct given his past sexual misconduct and ongoing efforts to obstruct justice. Even the *Dominguez* case recognized that courts may consider whether a defendant's "past conduct suggests the likelihood of future misconduct," *id*. at 707, which is exactly what the Court did here. Additionally, the Court here did not simply conclusively apply the presumption of detention. Instead, the Court analyzed the information provided by both the government and defendant, and the Court concluded that defendant should be detained pending trial. That finding was correct.

To detain defendant, the Court need not find *both* that defendant poses a danger to the community and is a risk of flight – one is sufficient. Thus, the analysis could stop here. But the government also provided proof by a preponderance of the evidence that defendant posed a risk of nonappearance.[3] As the government stated at the detention hearing, the fact that defendant faces serious charges in both the Northern District of Illinois and the Eastern District of New York amps up the defendant's incentive to flee. Dkt. 54-1 at 10-11 ("the stakes [for the defendant] have significantly changed. He is now for the very first time facing a mandatory minimum of 10 years' imprisonment and up to a maximum of 195 years on the Illinois

---

[3] Defendant incorrectly stated in his motion that the standard for detaining defendant based on nonappearance is "clear and convincing evidence" when the correct standard is actually "preponderance of the evidence." *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985) (risk of flight); *United States v. Salerno*, 481 U.S. 739, 742 (1987) (danger to the community).

indictment alone. On top of that, New York has a possible sentence of up to 80 years. And that changes everything.") Indeed, the fact that defendant poses a significant risk of flight is the reason that a federal Magistrate Judge in the Eastern District of New York held defendant without bail pending trial. Ex. A, copy of detention order from the Eastern District of New York, entered on August 2, 2019.

## II.    THERE ARE NO CONDITIONS THAT WILL REASONABLY ASSURE THE SAFETY OF THE COMMUNITY AND DEFENDANT'S APPEARANCE

As the government stated during the detention hearing, there are no release conditions that can mitigate the dangers posed by defendant. "Electronic monitoring and home incarceration are just insufficient here. Electronic monitoring does nothing about the obstruction of justice. It does nothing to prevent witness tampering. Defendant could easily obstruct justice from the comfort of his own home even if he has an ankle bracelet, but not so from the MCC where his communications will be monitored." Dkt. 54-1 at 11. Additionally, defendant "can entice girls to his own doorstep. He doesn't have to leave his home to do that, especially when he has assistants and other workers who enable him as alleged in the New York racketeering charge. So electronic monitoring and home incarceration are insufficient to protect the public, to protect the victims, and to protect witnesses from defendant's obstruction of justice." *Id.*

Defendant complains of the "draconian" conditions of his confinement without mentioning that many of those conditions are the result of his own choices. Dkt. 54 at 7, fn. 3. While defendant claims that he has "no contact with other inmates" and "is always locked up," it was defendant himself who refused a direct order to take a

cellmate, for which he was issued an incident report. Ex. A. Defendant appears to want special treatment because of his celebrity status. In responding to the incident report, defendant stated that he was told he "didn't have to take a cellie" and that he had "too much going [on] to worry about [the incident report]." Since the filing of his initial motion for reconsideration, defendant recently filed a new motion for "immediate release from solitary confinement." Dkt. 61. The government will file a response to that motion separately. Suffice it to say that defendant is **not** in solitary confinement, as he has had a cellmate for quite some time despite his initial refusal. In fact, he has had more than one cellmate so far. In any event, these are not reasons to disrupt the Court's prior ruling to detain defendant.

## III.   CONCLUSION

The government respectfully requests that the defendant continue to be detained pending trial.[4]

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:   /s/ *Angel M. Krull*
ANGEL M. KRULL
ABIGAIL L. PELUSO
JEANNICE APPENTENG
Assistant U.S. Attorneys
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-5300

Dated: August 30, 2019

---

[4] Defendant noted in his motion that the Court has yet to enter a written detention order pursuant to 18 U.S.C. § 3142(i). At the Court's request, the government can submit a draft proposed order.