UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT SYLVESTER KELLY, aka "R. KELLY" | No. 19 CR 567<br><br>Judge Harry D. Leinenweber |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR IMMEDIATE RELEASE FROM SOLITARY CONFINEMENT**

Defendant's motion for release from solitary confinement is moot. Dkt. 61. On September 3, 2019, defendant was moved from the Special Housing Unit, or SHU, to general population at the Chicago Metropolitan Correctional Center ("MCC"). Nevertheless, because of the serious allegations in defendant's motion, the government will provide the Court with the following timeline of events, which shows that defendant's housing conditions were largely the result of his own choices. As described below, defendant himself chose not to be housed in general population, which is documented in a recorded jail call. In addition, defendant initially refused a cellmate in the SHU. Dkt. 62, Ex. B. After his initial refusal, MCC staff gave him a cellmate anyway, and since then defendant has not been in solitary confinement. The SHU is certainly more restrictive than general population, but defendant's last three weeks in the SHU were not in solitary, and in any event, until recently, defendant preferred to be in the SHU over general population. Once defendant changed his mind about general population, MCC staff began making arrangements for his transfer, which occurred on September 3, 2019. The following timeline provides more details:

1

1. Defendant was arrested on July 11, 2019.

2. Since his arrest, defendant has been housed at MCC Chicago, except for August 1 to August 7, 2019, when he was transported to the Eastern District of New York for an arraignment.

3. Defendant was initially placed in the SHU, at MCC Chicago. MCC staff had discussions with defendant about possible housing options at the MCC. Defendant initially stated that he preferred to remain in the SHU over general population.

4. Approximately one week after defendant's arrest, on July 18, 2019, MCC staff attempted to give defendant a cellmate, and defendant refused. According to the incident report documenting his refusal, defendant stated that he was "told that he didn't have to take a cellie." Dkt. 62, Ex. B.

5. On July 19, 2019, during a recorded phone call, defendant discussed being held in the SHU and how he "had been thinking about going up there [to general population]." Defendant went on to say that he wasn't sure if he wanted to go to general population "because if I go to population, it's…I'm just up on everybody and everybody's up on me, and I'm trying to figure out how to trust that or whatever. But, you know, for right now, I'm in the SHU." Later in the same call, defendant stated that the MCC staff told him that he could "try it [general population] in a couple of days to see what it looked like but they can't guarantee nothing. You know, and that's why, I was like, hmmm, too many people up on you and I done seen too many movies, you know, and it's just, and then I'm so popular here, it's like yeah man."

6. On August 11, 2019, MCC staff gave defendant his first cellmate, which lasted until August 20, 2019. On August 20, 2019, MCC staff gave defendant his second cellmate, which lasted until August 22, 2019. Then, on August 22, 2019, defendant received a third cellmate, which is the same cellmate that defendant has now, even in general population.

7. While in the SHU, defendant had access to indoor recreation three times a week, though it was not outdoors on the rooftop.

8. Since his arrest, defendant has had three phone calls and seven social visits (not including attorney phone calls and visits).

9. Since his arrest, defendant has purchased items from the commissary, including snacks such as Snickers.

10. The first time that defendant or his counsel requested to leave the SHU was on August 19, 2019. MCC staff did not deny the request, but rather started to review the general population housing options. In fact, MCC staff took steps to ensure a safe transition to general population by initiating a threat assessment to determine if there were any safety or security concerns with housing defendant in general population.

11. Defense counsel never contacted the U.S. Attorney's Office to discuss defendant's MCC housing conditions prior to filing this motion. Had counsel done so, the undersigned attorney would have advised counsel that the MCC staff had already decided to move defendant out of the SHU and were taking steps to ensure a safe transition into general population, which has now been accomplished.

Throughout his incarceration, MCC staff have taken steps to ensure defendant's safety, and in doing so, have treated him with dignity and respect. The government respectfully requests that the Court deny defendant's motion as moot.

Respectfully Submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: *Angel M. Krull*
ANGEL M. KRULL
ABIGAIL PELUSO
JEANNICE APPENTENG
Assistant United States Attorneys
(312) 353-5300