IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 19 CR 567 |
| v. | ) | |
| | ) | Judge Leinenweber |
| ROBERT KELLY | ) | |

DEFENDANT ROBERT KELLY'S RENEWED MOTION FOR BOND[1]

We are respectfully renewing our request for a bail hearing and order granting release. Robert Kelly, a pretrial defendant currently at the Chicago MCC is plainly at risk for contracting COVID-19. Counsel was advised last night that one inmate on Mr. Kelly's floor had tested positive for Covid 19 and been taken to the hospital. The Director of the Federal Defender's Office for the NDIL sent an email this morning advising that "The MCC is in the midst of a serious outbreak". Release is now required. See also

https://chicago.suntimes.com/coronavirus/2020/4/18/21225747/coronavirus-cases-rising-chicago-federal-jail

In making this request Mr. Kelly remains mindful of the fact that on the last status date he withdrew his motion asking that the court reconsider his detention. Dkt. 54. He is also mindful that he is still being detained on an order out of the Eastern District of New York. A new request has been filed before that court. Mr. Kelly request that this Court defer any ruling until after the New York court has

---

[1] Kelly acknowledges that much of this motion is from a template circulated by the federal defender program, and virtually identical to his request filed at the end of March. Dkt. 107.

acted on his request, less this Court were to grant his request and that court did not he would simply end up in the same unhealthy conditions, just physically in New York.

The BOP is now on their 6th "action plan". The simple truth is they are at the mercy of this virus. Those now detained cannot be protected from the jail epidemic, and if infected will without question suffer from inferior health care.

The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The health risk to Mr. Kelly, because of his age and existing health issues, especially considering the conditions at the MCC, necessitates his release on bail.

Mr. Kelly is requesting that this court consider all the arguments made in his previously filed request for reconsideration of detention, in addition to the additional arguments made herein. Dkt. 54.

If Mr. Kelly were to be released, he would live at "the Roosevelt Collection Lofts", a large apartment complex just west of Clark Street on Roosevelt Road. He would reside with Joycelyn Savage. He would submit to any conditions that this court saw fit, including home incarceration.

For health reasons people are supposed to remain at a "social distance" which the experts have defined as at least six feet. They are supposed to avoid interaction. These are the basic steps to try and not become infected. These basic steps are simply impossible in a jail setting. No matter what steps they take the sanitation

will be substandard, the risk of an internal pandemic at the MCC is great, and if one does get sick jail healthcare is notoriously substandard. Make no mistake about it, this is a deadly disease.

### The Bail Reform Act Requires Mr. Kelly's Release

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The circumstances that existed when detention was ordered detained have now changed.

As an initial matter, the Bail Reform Act requires that a court should "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225 at 7, as reprinted in 1984 U.S.C.CA.N. 3182, 3189); see United States v. Salerno, 481 U.S. 739, 755 (1987) (suggesting that "detention prior to trial or without trial is the carefully limited exception" to liberty before trial). One charged with a crime is, after all, presumed innocent. Stack v. Boyle, 342 U.S. 1, 4 (1951). A single individual unnecessarily detained before trial is one individual too many, and the increasing use of the practice places tremendous wear on our constitutional system. United States v. Montalvo-Murillo, 495 U.S. 711, 723–24 (1990) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). Due to the

3

crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. See United States v. Gonzales Claudio, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), cert. dismissed sub nom., Melendez-Carrion v. United States, 479 U.S. 978 (1986).

The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. As Judge Weinstein held, "We do not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy." United States v. Scarpa, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC"). See also United States v. Adams, No. 6:19-mj-00087-MK, 2019 WL 3037042 (D. Or. July 10, 2019) (defendant charged with violation of the Mann Act and possession of child pornography and suffering from diabetes, heart conditions and open sores released on home detention because of his medical conditions); United States v. Johnston, No. 17-00046 (RMM) 2017 WL 4277140 (D.D.C. Sept. 27, 2017) (defendant charged with violation of the Mann Act and in need of colon surgery released to custody of his wife for 21 days); United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (badly wounded defendant released to custody of his relatives).

4

This Court should consider the "total harm and benefits to prisoner and society" that continued pretrial imprisonment of Mr. Kelly will yield, relative to the heightened health risks posed to Mr. Kelly during this rapidly encroaching pandemic. See United States v. D.W., 198 F. Supp. 3d 18, 23 (E.D.N.Y. 2016); Davis v. Ayala, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); United States v. Mateo, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case"); United States v. Francis, 129 F. Supp. 2d 612, 619-20 (S.D.N.Y. 2001) (reducing sentence in acknowledgment of "the qualitatively different, substandard conditions to which the Defendant was subjected" in pretrial detention).

In addition, continued detention is not necessary to ensure the primary goals of pretrial detention—appearance in court and community safety. Statistics demonstrate that nearly everyone on pretrial release in the federal system appears in court and does not reoffend. In 2019, fully 99% of released federal defendants nationwide appeared for court, and over 98% did not commit new offenses while on bond.[2]

---

[2] See AO Table H-15, http://jnet.ao.dcn/sites/default/files/pdf/H15_Ending12312019.pdf (showing a nationwide failure to appear rate of 1.1% and a rearrest rate of 1.8% in 2019).



Moreover, this near-perfect compliance rate is seen equally in federal districts with very high release rates (~70%) and those with very low release rates (~24%). The below chart reflects this data:

<u>Conditions of Release Are Available That Allow Mr. Kelly To Be Treated Humanely While Also Ameliorating Any Danger To The Community</u>

From Mr. Kelly's perspective his life—not only his liberty—is on the line, creating a powerful incentive to abide by any release conditions the Court may impose and changing the calculus that initially led to the denial of bail in this case. He would be foolish to leave his home. Indeed, there is an order that requires people to stay in

6

their homes. Electronic monitoring could ensure that he stays in his home.

Critically, during this temporary release, Mr. Kelly could be supported and monitored by Pretrial Services. Since 2009, Pretrial Services' data has found that only 2.9% of defendants in the highest risk category were re-arrested for a violent crime while on release.[3] In the Northern District of Illinois, the Office of Pretrial Services reports that in Fiscal Year 2019, the failure to appear rate was only 0.4%, and only 3.2% of supervisees reoffended. Mr. Kelly poses a lower risk of violating supervision, particularly during a global pandemic during which even leaving the house will endanger their lives.

Respectfully submitted,

/s/ Steven Greenberg

Attorneys for Defendant:

STEVEN A. GREENBERG
Greenberg Trial Lawyers
Attorney at Law
53 W. Jackson Blvd., Suite 1260
Chicago, IL 60604
(312) 879-9500

Steve@GreenbergCD.com

LEONARDMEYER, LLP
Michael I. Leonard
120 North LaSalle – 20th Floor
Chicago, Illinois 60602

---

[3] Thomas H. Cohen, Christopher T. Lowenkamp, and William E. Hicks, *Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary* (September 2018) *at* https://www.uscourts.gov/sites/default/files/82_2_3_0.pdf.

(312)380-6659 (direct)
(312)264-0671 (fax)

mleonard@leonardmeyerllp.com