IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19 CR 567 |
| ) | |
| ROBERT KELLY ) | |
| ) | |
| Defendant. ) | |

MOTION TO REQUIRE THE DISCLOSURE OF GRAND JURY SUBPOENAS,
PRODUCTION OF ALL GRAND JURY MATERIALS,
AND FOR A PROTECTIVE ORDER

Defendant, Robert S. Kelly, by and through his undersigned counsel, respectfully moves this Honorable Court for the entry of an Order requiring the Government to immediately disclose all requests for records and Grand Jury Subpoenas that have been issued in this case, to produce all documents produced in response to those requests, and for a Protective Order barring the Government from further prying into the irrelevant records of Mr. Kelly's counsel. In support of this Motion, Mr. Kelly states as follows:

1. On July 17, 2020, the Government disclosed new materials to defense counsel in this case. Within that disclosure were voluminous bank records. None of those bank records had been redacted.

2. The bank records were from entities associated with Mr. Kelly, including RSK Entertainment Worldwide, Inc., RSK Enterprises LLC, and SomeBrotherLuv, LLC. The records also included personal banking records for the three Defendants in

this case, Mr. Kelly, Mr. McDavid, Mr. Brown, as well as others associated, at least on some level, with Mr. Kelly.

3. Incredibly, among the bank records produced were records from one of the individual attorney's currently representing Mr. Kelly in his federal criminal case in New York, and from a major international law firm ("law firm") who had previously represented Mr. Kelly. The attorney's records date back to 2013, the law firm's even farther.

4. There are records from several of the individual attorney's accounts, including his checking and client trust accounts, as well as his debit and credit cards.

5. The records from the international law firm are all encompassing; they include checking and wire transfer records.

6. The records the Government obtained were not limited to transactions with Mr. Kelly, or any of the other Defendants. The records reflect thousands of banking transactions. They are a roadmap of financial transactions involving his attorney, and for the international law firm.

7. The Government does not have, and never had, any lawful basis to believe that either the New York lawyer or the law firm ever engaged in any type of improper conduct. In short, the Government went on an unreasonable, intimidating, and harassing fishing expedition into the records of Mr. Kelly's current counsel, as well as into the records of one of the country's preeminent law firms.

8. Neither the individual New York defense attorney or the international law firm were provided with a copy of any request for records or subpoena before the records

were produced, or any opportunity to object. Indeed, to-date, neither has seen any of these documents.

9. Appropriately alarmed by this clear overreach, Mr. Kelly's Chicago defense counsel reached out to the Government and sought the reason for this unprecedented intrusion. The explanation provided was that the records were necessary to show that Mr. Kelly was diverting monies to the SomeBrotherLuv, LLC account, specifically his royalties, and that the monies from the account were being used to pay Mr. Kelly's expenses. That explanation makes absolutely no sense. Individuals form entities to manage their affairs, including paying their bills, all the time.

10. The SomeBrotherLuv LLC bank records reflect an extremely small payment, in May 2019, to Mr. Kelly's New York defense counsel. That payment was for representation in a civil case. In May 2019, there was not yet a criminal case.

11. SomeBrotherLuv LLC is a company that was formed to accept royalties and pay expenses for Mr. Kelly. It has at all times been properly registered and its taxes have been paid. It was formed after Mr. Kelly was incarcerated in this case, although its bank account was opened shortly beforehand.

12. There was nothing odd or unusual about the extraordinarily modest payment to Mr. Kelly's New York counsel; he was hired and paid a very small retainer. The fact a lawyer is hired, and paid, does not give the government carte blanc to request banking records.

13. It appears neither request was narrowly tailored, or limited to a relevant time period or to Mr. Kelly or his entities; the Government has all of the bank records

for years before New York counsel ever began representing Mr. Kelly, and a decade of the international law firms'.

14. More to the point, the Government already had evidence of the payment, from SomeBrotherLuv, LLC to the New York attorney, when they obtained the SomeBrotherLuv, LLC banking records. And if they wanted to confirm the recipient, the subpoena should have been narrowly drafted. They did not need six (6) years of the attorney's substantive records, or those from an international law firm.

15. Mr. Kelly's counsel well understands that a Grand Jury has broad powers to investigate. However, those powers are not absolute. *See, e.g., United States v. R. Enterprises, Inc.* 498 U.S. 292 (1991) ("The investigatory powers of the grand jury are nevertheless not unlimited . . . Grand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass.") (citations omitted); *Cirag v. Hynes*, 54 N.Y.2d 437, 442–443, 446 N.Y.S.2d 196, 430 N.E.2d 1249, 1252 (1981) (recognizing that grand jury subpoenas can be "challenged by an affirmative showing of impropriety," including "bad faith" (internal quotation marks omitted)); *Trump v. Vance*, 140 S. Ct. 2412 (2020). Grand juries are subject to judicial supervision and a subpoena may be quashed or modified if compliance would be unreasonable or oppressive. Fed.R.Crim.P. 17(c); *Branzburg v. Hayes,* 408 U.S. at 708, 92 S.Ct. at 2670; *In re Grand Jury Matters,* 751 F.2d 13, 16–17 (1st Cir.1984) ("Although service of a grand jury subpoena on an attorney representing the target of the investigation in pending, related criminal proceedings is not unprecedented, *see, e.g., United States v. Dyer,* 722 F.2d 174 (5th Cir.1983); *In re*

4

*Terkeltoub,* 256 F.Supp. 683 (S.D.N.Y.1966), it is *highly unusual* insofar as we can tell from the case law and implicates serious policy concerns. The district court could weigh those policies and conclude that the potential disruption of the attorneys' relationships with their clients at this crucial period in their preparation of their clients' defense made the subpoenas unreasonable and oppressive at the time they were served.").

16. To obtain the banking records of Mr. Kelly's New York defense counsel because he was paid an insignificant retainer is a prime example of charter boat fishing trip. To obtain that attorney's financial records going back six years before he ever first came in contact with Mr. Kelly is not only outrageous and an abuse of the Grand Jury process, is was clearly not a way to establish anything that could conceivably have any relevance to this or any other criminal prosecution.

17. The explanation offered so far by the Government, that it was merely following the money trail, is entirely without virtue for many reasons, including the following: (a) Mr. Kelly has every right to have his royalties go into whatever bank account he wants; (b) in order for royalties to be deposited into an account, Mr. Kelly had to provide documentation to the paying entity, stating that he wanted his royalties to go into that account, i.e., it had to be an above-board and transparent transaction; (c) there is absolutely no issue that this information could possibly be relevant to; and, (d) even if the Government felt some need to show that this account was a subterfuge, that does not require years of records from multiple law firms.

18. There is another concern – the lack of notice to counsel. Although the records were obtained at the beginning of the year, no notice was ever provided to the

5

New York attorney or the major international law firm that records were being sought. Such notice should have been provided. *See* U.S. Attorney's Manual Section 9-13.410 (subpoenaing attorney records related to client representation).

19. Obviously, what the Government has already improperly done here cannot be unwound. Still, after reviewing the materials and speaking with the Government, defense counsel sent a letter that requested the Government:

   A. Provide written assurances that it would cease prying into the relationship between Mr. Kelly and his defense counsel;
   B. Cease its investigations of his New York counsel;
   C. Provide Mr. Kelly's defense counsel in this case with copies of any Subpoenas that have already been issued for records;
   D. Require the attorneys for the other Defendants in the present case to return the disk containing the offending records and advise them that they will be issued a new disk without the records; and
   E. That the Government advise Mr. Kelly's defense counsel whether records at issue were ever shared with any other prosecutors or members of law enforcement.

A redacted copy of the letter to the Government is attached hereto as Exhibit A.

20. In response, the Government replied that it would request counsel for the other Defendants to return the particular discs at issue so that NYDC records may be removed.[1] However, with regard to Mr. Kelly's counsel's other requests, the Government advised that it is unaware of any statute, rule, or case law that required a response. A copy of the Government's letter is attached hereto as Exhibit B.

21. Accordingly, and justifiably, Mr. Kelly request this Court reign in the Government. Mr. Kelly is requesting a copy of any and all requests and/or the Grand Jury Subpoenas for the requests at issue, and any other bank Subpoenas, be

---

[1] On July 29, 2020, the Government advised the materials had been returned.

6

immediately produced, regardless of whether the records have already been obtained by the Government, so that an evaluation can be made whether a Motion to Quash would (or will) have been appropriate and, if so, a motion can be brought, *nunc pro tunc* if necessary. *See United States v. Kitzhaber*, 828 F.3d 1083 (9th Cir. 2015) (holding that because the government did not in any manner tailor its request to relevant material, the subpoena was unreasonably broad and within the district court's supervisory power, and responsibility, to quash); In re Grand Jury, 194 F.R.D. 384 (D. Mass 2000) (holding that government would not be permitted to serve grand jury subpoena on civil attorney of client indicted by grand jury, given real and immediate risk of chilling client's Sixth Amendment rights.. Further examination of these records may be necessary to see if the government violated the attorney-client privilege, necessitating that existing prosecutors recuse themselves).

22. Beyond that, the defense seeks an Order from this Court restricting the Government's obvious effort to intimidate and harass Mr. Kelly's defense counsel. The fact that Mr. Kelly has paid defense counsel should not make their financial records, or even their financial dealings with him, fair game for a criminal subpoena. The fact that counsel is paid to represent a client does not make counsel's banking records fair game.

23. Moreover, so that there is full transparency, and as a sanction for what is really outrageous conduct by the Government, this Court should Order that the Government be required to: immediately produce to Mr. Kelly's defense counsel each and every Grand Jury Subpoena that has been issued to-date, as well as every document obtained under the guise of each such Subpoena.

7

24. In sum, it will take such an Order from this Court to fully bring to light the full nature and extent of the Government's transgression, and such an Order will hopefully go a long way in making the United States Attorneys' Office think twice before engaging in any such similar conduct in the future.

                                        Respectfully submitted,

                                        */s/* Steven A. Greenberg
                                        *One of Defendant's Attorneys*

Attorneys for Defendant:

STEVEN A. GREENBERG
GREENBERG TRIAL LAWYERS
Attorney at Law
53 W. Jackson Blvd., Suite 1260
Chicago, IL 60604
(312) 879-9500
Steve@GreenbergCD.com

MICHAEL I. LEONARD
LEONARDMEYER, LLP
120 North LaSalle – 20th Floor
Chicago, Illinois 60602
(312)380-6659 (direct)
(312)264-0671 (fax)
mleonard@leonardmeyerllp.com

CHRISTOPHER T. GROHMAN
TAFT
111 East Wacker, Suite 2800
Chicago, IL 60601
P: +1 312 836-4109
C: +1 312 515 7313
cgrohman@taftlaw.com