UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT SYLVESTER KELLY, aka "R.Kelly,"<br>DERREL MCDAVID, and<br>MILTON BROWN, aka "June Brown" | Case No. 19 CR 567<br><br>Honorable Harry D. Leinenweber |

**GOVERNMENT'S REPLY IN**
**SUPPORT OF MOTION TO CONTINUE TRIAL**

The UNITED STATES OF AMERICA, through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby files this reply in support of its motion to continue the trial. Dkt. 136. Specifically, this filing responds to defendant Derrel McDavid's claim that: "Much of the government's concerns in asking to continue this jury trial relate to Robert Kelly and would be cured if Mr. David [sic] were allowed to proceed to trial separately." Dkt. #138 at 1. As described below, despite his claim to the contrary, a severed trial for McDavid would not cure the government's concerns, would in fact create serious additional concerns, and is against Supreme Court case law that prefers joint trials for defendants charged together with conspiracies.

## I. Introduction and Background Facts

From approximately June 1991 until approximately January 2014, McDavid was employed by Kelly and/or Kelly's businesses. The Superseding Indictment alleges that, as a business manager for Kelly, McDavid provided services that included

protecting Kelly's image, reputation, and assets in the face of actual and potential criminal and civil actions involving individuals who were victims of Kelly's sexual misconduct. Dkt. #93 at 5. The Superseding Indictment further alleges that McDavid knew of Kelly's sexual contact and sexual acts with minors and knew that Kelly recorded himself engaged in such conduct on videotape. *Id*. at 8. In addition, the Superseding Indictment alleges that McDavid learned that multiple such videos were missing from Kelly's collection of videos and that he conspired with Kelly and others to collect the missing videos to conceal and cover up their existence from investigators. *Id.* Based on these and other facts, McDavid is charged with four crimes jointly with Kelly: (1) a conspiracy to obstruct justice relating to child pornography (Count 5), (2) a conspiracy to receive child pornography (Count 6), and (3) two substantive counts of receiving child pornography during the course of those conspiracies (Counts 7 and 8). *Id.*

To prove these allegations against McDavid, the government intends to call at least 25 witnesses who would also testify against Kelly and thus would have to testify twice if McDavid's trial were severed from Kelly's.[1] At least 8 of these overlapping witnesses live outside of Illinois, many in states on Chicago's 14-day quarantine list. And all but one of the witnesses listed in the government's under-seal filing will also testify against McDavid; these are witnesses who are at a higher risk for developing a severe illness if exposed to COVID-19, or who live with such individuals. Dkt #137.

---

[1] Many of these witnesses will also testify against defendant Brown, but for purposes of this filing, the government is focusing only on the overlap in evidence against McDavid and Kelly.

Thus, a severed trial for McDavid would not cure the government's concerns about the safety and welfare of these witnesses and their families.

Moreover, a McDavid-only trial would require proof that Kelly sexually abused minors and that he created videotapes that showed that sexual exploitation. In order to meet its burden of proof that McDavid knowingly conspired to receive child pornography, knowingly received child pornography, and obstructed justice in an effort to cover up and conceal the existence of those videotapes, the government will call numerous victims and witnesses to testify, and will play three videos of child pornography.

McDavid is charged with conspiring to receive, and actually receiving, child pornography, including Video 2 and Video 3. Dkt. #93 at Counts 6-8. To prove that charge against McDavid, the government will play those videos for the jury. These videos are directly relevant to the charge that McDavid conspired to, and did, knowingly receive child pornography. McDavid is also charged with obstructing justice, including relating to Video 1, in part by instructing Minor 1's father to lie about its contents to the state grand jury and by making hush money payments to the family. The videos are approximately 90 minutes in length, and the videos depict Kelly sexually abusing Minor 1.

Further, the government will call Minor 1 to testify. Minor 1 will explain that she is the underage girl in the videos, and she will testify that Kelly is the person sexually abusing her on them. Minor 1 will also explain that McDavid knew that Kelly sexually abused her and that Kelly created videotape evidence of his sexual

abuse of her. In particular, Minor 1 will testify that McDavid knew that Minor 1 wore a distinctive necklace in her passport photograph that matched the distinctive necklace that she wore in Video 1, and that McDavid had conversations with Kelly about how the necklace could prove that it was Minor 1 that Kelly abused in Video 1.

Additionally, Minor 1 and her family will also testify about McDavid's obstruction of justice. For example, Minor 1's father will testify that McDavid instructed him to lie to the state grand jury and say that Video 1 did not show Kelly sexually abusing Minor 1 when McDavid knew that it did.

McDavid will almost certainly attack Minor 1's credibility at trial. The government will respond to that credibility attack by presenting numerous witnesses and evidence that corroborate her, including the testimony of Minor 4, Minor 5, Minor 6, and Individual D, all of whom witnessed first-hand Kelly's sexual abuse of Minor 1 and who were sexually abused themselves by Kelly. In addition, Minor 1's mother and father will also testify about McDavid's knowledge and role in covering up Kelly's sexual abuse of Minor 1. Thus, if McDavid's trial were severed from Kelly's trial, four victims would be forced to testify twice about being sexually abused as minors, and the family of Minor 1 will also have to testify twice.

In addition to the overlap in the victims' testimony and the child pornography videos, numerous additional witnesses will testify about McDavid's obstruction of justice and receipt of child pornography. These witnesses will also testify against Kelly. Specifically, Kelly and McDavid paid Individuals B, C, and D substantial sums of money to return to them videos that showed Kelly sexually abusing Minor 1. These

witnesses are corroborated by other witnesses, including a private investigator, multiple polygraph examiners, a voice stress analysis examiner, and a travel agent. Additional witnesses will testify about the financial records that trace the payments to these individuals. All of these witnesses will have to testify twice if McDavid's trial is severed from Kelly's.

## II. Argument

### A. Rule 8

Rule 8 of the Federal Rules of Criminal Procedure provides for the joinder of defendants when the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. Defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." FED.R.CRIM.P. 8(b). Here, the Superseding Indictment charges that Kelly and McDavid participated together in (1) a conspiracy to obstruct justice relating to child pornography (Count 5), (2) a conspiracy to receive child pornography (Count 6), and (3) two substantive counts of receiving child pornography during the course of those conspiracies (Counts 7 and 8). Thus, it is clear that they are properly joined under Rule 8. *See*, *e.g.*, *United States v. Lanas*, 324 F.3d 894, 899 (7th Cir. 2003).

### B. Rule 14

#### a. Applicable Law

The Court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants,

or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). A defendant bears a "heavy burden" of establishing that a joint trial would unfairly prejudice him. *See, e.g., United States v. Peterson*, 823 F.3d 1113, 1124 (7th Cir. 2016). The decision to sever a trial rests with the sound discretion of the district court. *United States v. Calindo*, 910 F.2d 429, 437 (7th Cir. 1990).

"There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.'" *Zafiro*, 506 U.S. at 537 (*quoting Richardson v. Marsh*, 481 U.S. 200, 209 10 (1987)); *see also United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003). In considering a severance, the trial court must give due deference to the strong public interest in favor of a joint trial:

> There is a strong interest in joint trials of those who engaged in a criminal enterprise. Joint trials reduce the expenditure of judicial and prosecutorial time; they reduce the claims the criminal justice system makes on witnesses, who need not return to court for additional trials; they reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague, even though one or the other (or both) undoubtedly committed a crime. A joint trial gives the jury the best perspective on all the evidence and therefore increases the likelihood of a correct outcome.

*United States v. Buljiubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987)*; see also United States v. Phillips*, 239 F.3d 829, 838 (7th Cir. 2001). This strong preference for a joint trial reflects several principles, as the Supreme Court has forcefully stated:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, **requiring victims and witnesses to repeat the inconvenience (and**

> **sometimes trauma) of testifying**, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Richardson*, 481 U.S. 210 (emphasis added).

Since *Richardson*, the Seventh Circuit has repeatedly emphasized each of these principles. *See, e.g., United States v. Blassingame*, 197 F.3d 271, 285-87 (7th Cir. 1999); *United States v. Magana*, 118 F.3d 1173, 1186 (7th Cir. 1997). As the Seventh Circuit has recognized, in all but the "most unusual circumstances," the risk of prejudice arising from a joint trial is "outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *Blassingame*, 197 F.3d at 286.

Moreover, in keeping with these public policy and equity objectives, severance has been deemed particularly inappropriate in conspiracy cases. "The gravamen of conspiracy is that each conspirator is fully liable for the acts of all coconspirators in furtherance of the conspiracy. Thus, joinder is highly favored in conspiracy cases, over and above the general disposition towards joinder for reasons of efficiency and judicial economy." *United States v. Tedder*, 801 F.2d 1437, 1450 (4th Cir. 1986) (collecting cases. *See also United States v. Myers*, 892 F.2d 642, 647 (7th Cir. 1990) ("[S]everances are rarely granted in conspiracy cases."); *Blassingame*, 197 F.3d at 286 ("Particularly in conspiracy cases, there is a strong interest in trying defendants who have been jointly indicted in a single trial.") (citation omitted). Indeed, the Seventh

Circuit has affirmed a denial of severance even in cases where a very large amount of evidence was directed against the movant's co-defendants. *See United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009) (rejecting movant's claim that government directed massive evidence against his co-defendants because "the fact that the government has greater evidence against one co-defendant does not automatically give the other defendant grounds for severance"). In other words, a "simple disparity in the evidence will not suffice to support a motion for severance." *United States v. Benabe*, 436 Fed. Appx. 639, 646 (7th Cir. 2011) (noting that "[t]here will inevitably be some differences among defendants tried together.") (quotation omitted).

**b. Analysis**

McDavid's request for a separate trial should be denied because he has not established the type of prejudice necessary to obtain a severance and therefore fails to meet his burden to rebut the presumption that properly joined defendants, and particularly co-conspirators, will be tried together. Moreover, the government respectfully submits that the Court should exercise its discretion to promote judicial economy, including efficiency for the Court and witnesses, to reduce the trauma to victims of sexual abuse, to avoid possible inconsistent verdicts, and to avoid the opportunity for defendants to benefit from the fortuity of multiple trials.

McDavid claims that a joint trial will compromise his right to a Speedy Trial. The Seventh Circuit rejected a similar claim in *United States v. Tedesco*, 726 F.2d 1216 (7th Cir. 1984). In that case, defendant's trial was delayed because of his co-defendants' motions and interlocutory appeal, which delays were excludable under

the Speedy Trial Act. *Id*. at 1219-20. The Seventh Circuit affirmed the district court's denial of a severance, holding that the "mere passage of time" did not improperly prejudice Tedesco's case, particularly when balanced against "the large amount of time that would have been wasted had the Government been forced to present essentially the same evidence in two trials." The Seventh Circuit concluded: "We do not believe that the Speedy Trial Act hobbles multidefendant prosecutions in this manner."

The same is true here. The exclusions of time under the Speedy Trial Act listed in the government's motion are proper and supported by the facts and law. Defendant McDavid is not in custody. The government is not proposing an indefinite continuance of the trial. The United States District Court for the Northern District of Illinois has slowly started to resume trials with new procedures in response to the COVID-19 pandemic. So far only one jury trial has occurred during the pandemic, and that trial had only 6 witnesses, all of whom were law enforcement witnesses. Thus, that short trial did not face the challenges here, even for a severed trial of McDavid which will have at least four times as many witnesses, the vast majority of whom are non-law enforcement witnesses. A delay based on a public health emergency and availability of essential witnesses is reasonable under the circumstances. As in *Tedesco*, a "mere passage of time" without additional unfair prejudice is insufficient to warrant a severed trial when balancing it against the risk to the witnesses, the trauma to victims, and the wasted resources in conducting two trials.

In judging a motion for severance, the district court must balance the benefit of judicial efficiency in a joint trial with the risk of prejudice to a defendant. *United States v. Maya-Gomez*, 860 F.2d 706, 754 (7th Cir. 1988). It is clear that judicial economy weighs heavily in favor of a single trial in this case. Because the evidence underlying the two conspiracy counts would be admissible at both trials, granting McDavid's severance motion would not promote judicial economy. As noted above, if granted a severance, numerous witnesses, including four victims, would be required to testify at two trials, and three videos of child pornography would need to be played at both trials. Further, as recognized by the Supreme Court, the trauma the victims would suffer if forced to provide sensitive testimony regarding sexual exploitation, sexual abuse, and sadomasochistic abuse they suffered as minors in multiple trials is an appropriate consideration for this Court: "[I]t would impair both the efficiency and the fairness of the criminal justice system to require [among other things] victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying . . ." *Richardson*, 481 U.S. at 210. Thus, a joint trial will conserve resources as well as protect the witnesses from the harm of testifying in multiple trials.

Indeed, pursuant to 18 U.S.C. § 3771, crime victims have the right to be treated "with fairness and with respect for the victim's dignity and privacy." It would certainly cause undue added stress to the victims if they had to testify at two trials about the same evidence, rather than in a single trial. And in particular, it would violate the dignity and privacy of Minor 1 to unnecessarily have to display three child pornography videos of her at a severed trial of McDavid only. The Second Circuit

came to the same conclusion in *United States v. O'Connor*, 650 F.3d 839 (2d Cir. 2011), a case involving two defendants who were convicted of trafficking the same minor, one of whom was convicted of selling the child for the purpose of producing child pornography, and the other of whom was convicted of buying the child for the purposing producing child pornography, among other charges. In affirming the district court's denial of severance, the court noted that, "[t]he nature of the charges made the joint trial of [defendants] O'Connor and Sacco particularly appropriate. . . . [M]uch of the evidence, including virtually of the disturbing testimony given by S.O. [the minor victim] about being abused and photographed by Sacco, would have been admissible at a trial of O'Connor alone. And given the sordid nature of the case, it was appropriate to avoid unnecessarily subjecting S.O. to the trauma of having to give her trial testimony more than once." *Id*. at 859.

Finally, a single trial of the charges in this case will best avoid the "scandal and inequity of inconsistent verdicts." *Richardson*, 481 U.S. at 210; *Souffront*, 338 F.3d at 828 (*quoting Richardson*). By presenting the complete picture to one jury, there is a greater likelihood that justice will be accomplished. *See Richardson*, 481 U.S. at 210. In addition, the interests of justice will also be served in a single trial by not "randomly favoring the last tried defendants" who would have the advantage of knowing the prosecution's case before their own trial. *Id.*

## III. Conclusion

For the reasons set forth above, the government respectfully requests that the Court grant the government's motion to continue the trial and deny McDavid's request for a severance.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ *Angel M. Krull*
ANGEL M. KRULL
ABIGAIL L. PELUSO
JEANNICE APPENTENG
Assistant U.S. Attorneys
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-5300

Dated: August 17, 2020