UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No.: 19 CR 567-1 |
| v. | ) ) |
| ROBERT KELLY, | ) ) |
| | ) Hon. Harry D. Leinenweber |
| Defendant. | ) |

## MOTION FOR BAIL

NOW COMES the Defendant, ROBERT KELLY, through counsel, and respectfully requests that this Court grant him bail pending trial. In support, Defendant states as follows:

> **"Indefinite imprisonment without charge or trial is anathema in any country which observes the rule of law." Lord Nicholls of Birkenhead in his ruling of 16 December 2004.[1]**

### I. Background

Mr. Kelly has requested this Court grant him bail in this case, with conditions. He proposes living in an apartment a short distance

---

[1] Lord Nicholls of Birkenhead in the eight to one majority ruling of the House of Lords on the appeal of 11 detainees held at the high-security Belmarsh prison dubbed the "British Guantánamo." *See A(FC) and others (FC) (Appellants) v. Secretary of State for the Home Department (Respondent)*, at paragraph 74 of judgment of 16 December 2004.

from the courthouse, where he will reside with his girlfriend. Electronic monitoring can be utilized to ensure that his whereabouts are always known. He would not be a danger to the community if he were released, he would not be a flight risk, and there is zero chance he would endeavor to obstruct these proceedings in any way.

There has been a sea-change in the landscape since this Court last considered the issue of bail. First and foremost is the pandemic, and this Court's candid comments at the recent status hearing that confirmed no one knows when this case can be tried. Regardless of Mr. Kelly's willingness to proceed to trial at the earliest possible moment, the Government does not want to bring its witnesses forth. That is not Mr. Kelly's fault. This District's facilities cannot accommodate this trial under the current restrictions. Again, that is not Mr. Kelly's fault.

Only in a Third World nation could somebody be held, indefinitely, without the possibility of going to trial. It is un-American. It is illegal. Nowhere does the law authorize indefinite detention. And notwithstanding the Orders of this Court that have generally held that the continuance of every trial is "in the interest of justice," justice makes it clear that a defendant has a right to a speedy and prompt

2

trial. If Mr. Kelly cannot be provided with a trial, at a minimum he should be able to await that trial in a less restrictive environment.

Then there are the more recent events, including the attack that Mr. Kelly recently suffered at the MCC Chicago. Recall, when this case was first indicted and the Court ordered that Mr. Kelly be detained, he was held in the MCC's SHU (Special Housing Unit). The only thing special about that unit is that it is the most archaic and cruel portion of the facility. It is a place where people are taken who misbehave, and for those who refuse to abide by the institution's rules and regulations. It is not the place for a high-profile prisoner simply because there is no place in the institution where he can be adequately protected.

True, Mr. Kelly has been in general population for the balance of his time in custody. But that is not a safe environment. To ensure his own safety, Mr. Kelly mostly remains in his cell. This past week, an inmate was allowed to enter into Mr. Kelly's cell while he was asleep. He was awoken by this inmate stomping on his head, repeatedly. The inmate had an ink pen with him that he was going to use to stab Mr. Kelly. Fortunately, others grabbed him before he could use it.

This is an inmate that never should have been anywhere near Mr. Kelly, an individual who is charged with the most violent of crimes, and one who plainly has no respect for the rules, he has the phrase "*Fu\*\* The Feds*" tattooed on his face.

The proffered reason for this violent attack: because the inmates at the institution are upset that they must go on lockdown when there is a protest outside of the MCC in support of Mr. Kelly. To-date, there have been at least a half-dozen of these displays of support outside of the MCC, always peaceful. These unnecessary institutional lockdowns have needlessly promoted animosity towards Mr. Kelly. Notably, the institution does not go into lockdown during other, violent, downtown protests or during citywide looting.

Mr. Kelly should never have been detained in the first place. The bail Report from Pre-Trial Services recommended that Mr. Kelly be released, with conditions that would reasonably assure the safety of the community and Kelly's appearance, namely home incarceration with electronic monitoring and other conditions. The government argued, without factual support, Mr. Kelly should be detained as a danger to the community and a flight risk.

Based upon the Court's comments at the first (and only) bail hearing, it appears that the Court never considered any proposed conditions of release. *See, e.g., United States v. Sabhani*, 493 F.3d 63, 74-75 (court must consider, and explicitly state why, conditions offered by Defendant would not ensure his appearance).

## II. The Bail Reform Act is Designed to Permit Bail Pending Trial

Bail and release pending trial have long been a central part of this nation's criminal process because every defendant is presumed innocent until proven guilty. Thus, under the Bail Reform Act, courts "shall hold" detention hearings when the case involves any one of the enumerated serious offenses outlined in §3142(f)(1); in cases involving allegations of particularly dangerous criminal activity; or when there are "serious" concerns about the risk of flight or obstruction of justice. (The so-called §3142(f)(2) cases). Still, a court cannot simply always deny bail and pre-trial release, it must determine whether there are any conditions under which a defendant can be released. The key question at the detention hearing is "whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community." *Id.* at § 3142(f). Indeed,

detention is only proper where, "the judicial officer finds that **no condition or combination of conditions** will reasonable assure the appearance of the person as required and the safety of any other person and the community." *Id.* at §3142(C) (emphasis added).

In *United States v. Byrd*, the court cautioned that, "even after a hearing, detention can be ordered only in certain designated and limited circumstances, irrespective of whether the defendant's release may jeopardize public safety." *United States v. Byrd*, 969 F.2d 106, 109-10 (5th Cir. 1992). "The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes. *See* 18 U.S.C. § 3142(f) (detention hearings available if case involves crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, or certain repeat offenders); *United States v. Salerno*, 481 U.S. 739, 747 (1987);*United States v. Chavez-Rivas,* 536 F. Supp. 926, 966 (E.D. Wis.. 2008).

In this case, Mr. Kelly lacks the resources or desire to flee, is willing to submit to electronic monitoring, has an unblemished history of appearances, posted a substantial bond in State court, and has demonstrated the ability to comply with bail restrictions. All of that

6

leads inescapably to the obvious conclusion that conditions of release for Mr. Kelly could easily be fashioned.

### III. In This Case, The Court Has Incorrectly Applied the Bail Reform Act

This Court's original decision to deny bail was based on a flawed legal framework and a failure to apply the correct roadmap.[2] The inquiry required deliberation of the factors set forth in 18 USC §3142(g). Instead, this Court only focused on the nature of the charged crimes, never accessing Defendant's risk of flight or danger to the community. Rather than considering the conduct as simply starting the process by shifting the burden of persuasion, the Court applied it as the endpoint.

Even in a rebuttable presumption case, the overall burden remains with the government, not the Defendant:

> We turn now to the effect this presumption has on the court's analysis. We join the rest of the circuits, which have considered this issue in concluding that the presumption shifts the burden of production but not the burden of persuasion to the defendants. *Jessup*, 757 F.2d at 381-89; *Chimurenga*, 760 F.2d at 405; *Fortna*, 769 F.2d at 251. This approach is consistent with the presumption of innocence enjoyed by a criminal defendant.

---

[2] The Court has yet to enter the formal Detention Order required by 18 U.S.C. § 3142(i), so the detention order is not final.

*United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985).

It appears this Court presumed the allegations themselves justified detention. Nothing about these charges mandates detention; they simply define the burden(s):

> The Bail Reform Act prescribes different burdens of proof depending on whether the question involves the efficacy of conditions to assure attendance at trial or the safety of the community. If the former, the standard is a preponderance of the evidence; if the latter, it is proof by clear and convincing evidence. 18 U.S.C. 3142(f)(2)(B). The burden of proof by clear and convincing evidence is a greater burden of proof than preponderance of the evidence. *Maynard v. Nygren*, 332 F.3d 462, 469 (7th Cir.2003). Clear and convincing evidence is evidence that places "in the ultimate fact-finder an abiding conviction that the truth of … [the] factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984). *See also United States v. Boos*, 329 F.3d 907, 911 (7th Cir. 2003).

*United States v. Meschino*, No. 10 CR 588-1, 2010 U.S. Dist. LEXIS 72055, at *27 n.8 (N.D. Ill. July 19, 2010). The law required the government to demonstrate, by clear and convincing evidence, that there were no release conditions that would ensure the safety of the community or the appearance of the defendant. But this Court never actually reached that point, nor did the government.

8

As reflected by the transcript, a copy of which is attached hereto as Exhibit A, the Court did not consider whether there were conditions that would overcome the rebuttable presumption of detention. The Court erroneously relied upon the fact that a grand jury indictment had been returned, commenting that "the grand jury found probable cause of guilt." *See* Hrg. Trans., at p. 31. Of course, a grand jury does not do that, the grand jury only finds probable cause, nothing about guilt. And it does so based upon a one-sided presentation, not an adversary hearing. A grand jury's finding of probable cause is far from guilt. Nor can it substitute for clear and convincing evidence.

> A defendant cannot be detained as dangerous under §3142 (e), even if the presumption is not rebutted, unless a finding is made that no release conditions" will reasonably assure … the safety of the community . . . That finding cannot be based on evidence that he has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future misconduct. This is, indeed, the very import of the presumption of dangerousness in § 3142(e) . . . To rebut this presumption, they need not necessarily show that they are not guilty of the charged crimes in the first place. They could also show that the specific nature of the crimes charged, or that something about their individual circumstances, suggests that 'what is true in general is not true in the particular case . . .' *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985). Any evidence favorable to a defendant that comes within a category listed in § 3142(g) can affect the operation of one or both of the presumptions, including evidence of their marital, family and employment

9

    status, ties to and role in the community, clean criminal record and other types of evidence encompassed in § 3142(g)(3).

*United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)

The burden for the defendant to establish that he should be grant bail is low, all that is required is "some evidence that he will not flee or endanger the community if released." *Dominguez, supra,* at 707.

The evaluation of bail requires a balance: liberty interests versus public safety. That is why there only a narrowly crafted set of circumstances ever require detention. After all, pretrial detention impacts a defendant's ability to prepare a defense, restricts his contact with friends and family, subjects him to draconian conditions and rules, and bars him from making a living or supporting others.

To-date, the Government has never proffered any concern of lfuture dangerousness. "A defendant cannot be detained as dangerous under § 3142(e), even if the presumption is not rebutted, unless a finding is made that no release conditions will reasonably assure . . . the safety of the community . . . That finding cannot be based on evidence that he has been a danger in the past, except to the extent that his past

10

conduct suggests the likelihood of future misconduct." *Dominguez*, 783 F.2d 702, 706-07 (7th Cir. 1986).

Here, the best evidence that Defendant is not a current danger is the indictment itself. The alleged acts are antiquated.

To the extent the Government has argued a serious risk of obstruction (18 U.S.C. 3142(f)(2)(B)), they have offered no facts in support of such a finding. The concern is a present or future risk. The charged conduct, from the past, merely triggers the application of (f)(2)(B). It does not provide the proof.

The notion floated by the Government that Mr. Kelly would attempt to intimidate or persuade witnesses is unsupportable. The best evidence that he would *not* try to obstruct justice is that, for the two years prior to being indicted and while all of the uproar was going on about Mr. Kelly, including: the #muteRKelly campaign, the airing of the Surviving R Kelly documentary, the production of the second Surviving R Kelly documentary, the cancellation of his live music performances, and the cancellation of his music streaming services, Mr. Kelly **never once** tried to obstruct justice or influence anyone or anything, including the witnesses in this case. Beyond that, the Government is well aware

11

that even after Mr. Kelly was indicted in Illinois in State court, and before he was indicted in Federal court in Chicago and New York, he never once attempted to influence anyone, obstruct justice, or flee. Indeed, he lived with one of the Jane does listed in the New York indictment. She regularly came to visit him at the MCC after he was in custody, and spoke to him daily by telephone, for months. Never, during their dozens of hours of contact did he ever engage in the slightest obstructive behavior.

While it is true that recently three individuals were indicted in New York for conduct purportedly relating to Mr. Kelly, it is similarly true (and perhaps even undisputed) that he had absolutely nothing to do with the actions of any of them.

The prosecutors have mentioned that, in this case, they have multiple sex tapes. Speculating, the Court commented that it would have been likely that, had the prosecutors known about additional tapes at Mr. Kelly's 2008 State trial, they would have prevailed. That statement is without any basis in fact. It presupposes the tapes were admissible and relies on pure mathematics. The Court is of course

mindful that, just as the number of witnesses does not make for a better case, nor necessarily do the number of tapes.

Any suggestion Mr. Kelly should be detained because of obstruction is impeached by the government's agreement. It is the government's theory that Mr. Kelly's co-defendant, Mr. McDavid, was the alleged mastermind of any obstruction. Yet, the government agreed that Mr. McDavid and Mr. Brown, Mr. Kelly's co-defendants, did not need to be detained. It is also impeached by the fact that, although these federal investigations were no secret and there have been pending State charges, no one has ever said or claimed that anyone associated with Mr. Kelly, or for that matter Mr. Kelly himself, has tried to influence anyone with respect to any current investigation or charges.

Further, the Court must look to see what conditions can be set to mitigate the alleged risks, and it has not even attempted to do so. Mr. Kelly no longer has the money or the entourage he once did to help him in his endeavors. Home incarceration with close monitoring by Pretrial Services, coupled with limited access to the internet will make it virtually impossible for Mr. Kelly to even attempt to contact any witnesses without being immediately caught. The idea that Mr. Kelly

13

has the means and wherewithal to obstruct any witness against him is, frankly, preposterous, and it is not supported by any record evidence, much less a legitimate proffer.

This Court also disregarded the fact that any accusations of sex with a minor date back two decades. Notably, although the Government alleges four videos exist, they all involve the same person and relate to the same time frame—the 1990s. There is no suggestion Mr. Kelly ever distributed child pornography. Nothing was found when a search warrant was executed at Mr. Kelly's condominium. Nothing was found at his studio when he was arrested on State law charges. Nothing was found because there is nothing to find.

Likewise, Mr. Kelly presents absolutely no risk of flight. He is a lifelong resident of Illinois and the Chicago area. Mr. Kelly never missed a single court date, from 2002 to 2008, on his previous case. The Court did not consider that Mr. Kelly appeared for each and every day of his trial and was present when the jury's verdict was read. The court never considered that Mr. Kelly had been aware of these federal investigations and yet did not abscond. The Court never considered that Mr. Kelly posted a substantial bond ($100,000.00) in connection with

14

the now pending State court proceedings. The Court never considered that Mr. Kelly does not have a passport. The Court never considered that Mr. Kelly could be monitored by an electronic monitoring bracelet or GPS bracelet.

## IV. Conclusion

Simply put, despite the present allegations, there indeed are conditions of release that can be readily fashioned for Mr. Kelly, an individual who has no previous convictions, that will eliminate nearly any alleged risk of flight or any purported danger to the community. He can be confined to his home with electronic monitoring, given limited access to the internet, be barred from contact with minors, and monitored closely by Pretrial Services. Accordingly, Mr. Kelly must be released, and the conditions of Mr. Kelly's bail and pre-trial release should be set.

Respectfully submitted,
/s/ Steven Greenberg

Attorneys for Defendant:

STEVEN A. GREENBERG
Greenberg Trial Lawyers
Attorney at Law
53 W. Jackson Blvd., Suite 1260
Chicago, IL 60604
(312) 879-9500
Steve@GreenbergCD.com

LEONARDMEYER, LLP
Michael I. Leonard
120 North LaSalle – 12th Floor
Chicago, Illinois 60602
(312) 380-6659 (p)
(312) 264-0671 (f)
mleonard@leonardmeyerllp.com

Christopher T. Grohman
190 S. LaSalle St. Suite 3700
Chicago, IL 60603-3433
(312) 499-0118