UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT SYLVESTER KELLY, aka "R. Kelly" | Case No. 19 CR 567-1<br><br>Honorable Harry D. Leinenweber |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO RECONSIDER BAIL AND MOTION FOR EVIDENTIARY HEARING**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby files this response to defendant Robert Kelly's motions to reconsider bail and for an evidentiary hearing, (R. 143, 145). Defendant's bail motion should be denied because this Court correctly concluded that there are no condition or combination of conditions that will reasonably assure defendant's appearance in court and safety to the community because defendant is a danger to the community and flight risk. Further, defendant's motion for an evidentiary hearing should be denied because there are no material facts in dispute which bear upon this Court's detention analysis.

### BACKGROUND

On July 11, 2019, a grand jury in the Northern District of Illinois returned a 13-count indictment, charging defendant, among others, with a number of offenses relating to child exploitation and obstruction of justice. Counts One through Four charged defendant with using a child to engage in sexually explicit conduct for the purpose of creating a visual depiction of that conduct, in violation of 18 U.S.C.

§ 2251(a). Specifically, these counts alleged that defendant created four videos that depict him sexually abusing a young teen girl. Count Five charged defendant with conspiracy to obstruct justice that spanned nearly two decades, in violation of 18 U.S.C. § 371. Specifically, this count alleged that defendant and his co-conspirators concealed and covered up the existence of videos that depict defendant sexually abusing young girls, and used physical abuse, violence, threats of violence, blackmail and bribery to ensure that victims and witnesses did not cooperate with law enforcement. Count Six alleged that defendant and his co-conspirators conspired to receive child pornography, and Counts Seven and Eight alleged that defendant received three specific videos of child pornography. Lastly, Counts Nine through Thirteen charged defendant with enticing five minors to engage in sexual activity with him, in violation of 18 U.S.C. § 2422(b).

The government sought defendant's detention pending trial and the Court granted the government's motion. (R. 24.) The Court determined that there were "no conditions that will assure the defendant's attendance at trial and no conditions that will protect the public and certain individuals ... ." (R. 54-1, at 32) (Transcript of Proceedings on July 16, 2019.) In particular, the Court, having found that the rebuttable presumption in favor of detention applied, described the charged offenses as "extraordinarily serious" and detailed the allegations of obstruction of justice, including the grand jury's finding "that witnesses were paid and witnesses were threatened in order to either change testimony or not appear at all" in prior proceedings. (*Id.* at 31-32.) The Court also noted the allegations pending in the United

States District Court for the Eastern District of New York, which also carried a presumption in favor of detention. (*Id.* at 31-32.). The Court held that defendant had failed to overcome his burden and ordered that he be detained pending trial.

On August 1, 2019, defendant filed a motion to reconsider bail. (R. 54.) The government responded on August 30, 2019, but defendant withdrew his motion for reconsideration on March 5, 2020. (R. 63, 102.)[1] In the interim, on February 13, 2020, a grand jury returned a superseding indictment, which, for purposes of detention and the rebuttable presumption under the Bail Reform Act, tracked the charges and allegations set forth in the original indictment. (R. 93.) The additional charge relates to yet another of defendant's victims.

This is defendant's third attempt to seek release from this Court. From the last motion to reconsider bail filed in August 2019, no circumstances unique to defendant which bear upon this Court's determination under 18 U.S.C. § 3142(e) have changed, nor does defendant even allege as much.[2] Instead, defendant rehashes his initial

---

[1] On March 26, 2020, defendant filed a motion for release citing the COVID-19 pandemic. (R. 107.) The government was ordered to respond on April 15, 2020, (R. 109), however the Court denied the motion as moot on April 10, 2020, (R. 113), in light of the district court's denial of defendant's motion for release pending in the Eastern District of New York. On April 20, 2020, defendant renewed his motion for release due to the COVID-19 pandemic. (R. 115.) On that same date the Court stayed consideration, per defendant's request, pending a ruling on his similar motion pending in the Eastern District of New York. (R. 116.) On April 22, 2020, the Court denied the motion as moot, as the Eastern District of New York had again denied defendant's motion. (R. 117.)

[2] Indeed, when defendant sought release for a third time in the Eastern District of New York, in denying his motion the court there noted, "The defendant is currently in custody because of the risks that he will flee or attempt to obstruct, threaten or intimidate prospective witnesses. The defendant has not explained how those risks have changed … [and] has not demonstrated [a] change in circumstances that would alter the Court's conclusion that he is

3

arguments, points to the continuance of his trial date in light of the COVID-19 pandemic, and incorrectly claims that this Court misapplied the Bail Reform Act. None of these reasons warrants reversal of the detention order. Further, defendant's claim that his release is warranted due to an attack he recently suffered is misplaced. As set forth below, the BOP has addressed defendant's immediate concerns, and in any event, release of a defendant who poses such extraordinary danger to the community is an inappropriate and extreme remedy where more reasonable measures are available.

## ARGUMENT

**I. The Court Applied the Appropriate Standard and the Facts Support Detention.**

The Court correctly concluded that the evidence before it established that there are no conditions which would reasonably assure defendant's appearance or safeguard the community. 18 U.S.C. § 3142(e). In making this determination, the Court, as required, considered the factors set forth in 18 U.S.C. § 3142(g): "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Further, the Court appropriately determined that a presumption of detention applied because defendant is charged with multiple counts of sexual exploitation of children (Counts One through Four)

---

a flight risk and that he poses danger to the community, particularly to prospective witnesses." (Case 1:19-cr-00286, (E.D.N.Y.), R. 53.)

and enticement of minors for sexual activity (Counts Nine through Thirteen). *See* 18 U.S.C. § 3142(e)(3)(E) (presumption applies to offenses involving a minor victim under 18 U.S.C. §§ 2251 and 2422). The presumption changes the landscape of a traditional detention analysis under the Bail Reform Act, shifting the burden of production onto the defendant to come forward with some evidence that if released he will not flee or endanger the community. *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985). Even if the defendant rebuts it, the presumption remains in the case as an evidentiary finding militating against release. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *United States v. Diaz*, 777 F.2d 1236, 1238 (7th Cir. 1985).

Here, defendant has not set forth sufficient evidence to overcome his burden and regardless, an examination of the § 3142(g) factors demonstrates that the Court's previous orders should remain in place. Moreover, defendant's motion should be denied as moot insofar as he would remain subjected to a detention order in another federal court because the Second Circuit Court of Appeals recently denied his appeal from the Eastern District of New York's order denying pretrial release under 18 U.S.C. §§ 3142(e) and 3142(i). (Case 1:19-cr-00286 (E.D.N.Y.), R. 77.)[3]

### A.  Defendant Poses a Risk of Danger to Community and a Serious Risk of Nonappearance.

The Court's ruling that defendant is a danger to the community was supported by clear and convincing evidence. The government proffered at the detention hearing

---

[3] As a practical matter, if this Court were to release defendant, he would more likely than not remain at the MCC in Chicago in light of the measures BOP has taken in response to the COVID-19 pandemic.

that Minor 1 testified under oath in the grand jury that Robert Kelly sexually abused her repeatedly beginning when she was as young as 13 years-old and that the videos named in Counts One, Two, and Three of the superseding indictment all show Robert Kelly sexually abusing her when she was 14 and 15 years-old. Minor 1's parents are also cooperating with the government. They support and corroborate their daughter in all respects, including by acknowledging defendant's admissions to them about his abuse of their daughter. Beyond that, multiple other witnesses corroborate Minor 1 in that they had first-hand knowledge of defendant's abuse of Minor 1 when they were also abused as minors by defendant. This alone supports the Court's ruling to detain defendant as a danger to the community.

But that is not all. In addition to Minor 1, the government proffered facts showing that defendant repeatedly sexually abused other teen girls, repeatedly created videos depicting his sexual abuse of teen girls, and received child pornography as part of his efforts to obstruct justice. The extent of defendant's sexual abuse of minor girls is staggering: the superseding indictment in this district alone alleges six minor victims, and as proffered at the detention hearing, defendant sexually abused those girls *hundreds of times* before they turned 18 years-old. (R. 54-1 at 6.) Defendant even married a 15 year-old girl when he was 27 years-old. (R. 54-1 at 12.) The government produced in discovery to defendant the official marriage application, marriage certificate, and annulment records for this marriage.

Far from being a one-time mistake, defendant's sexual abuse of minors was intentional and prolific. As the government stated during the detention hearing, the

6

danger posed by defendant regarding the risk that he will abuse or attempt to abuse minors is ongoing: "Being sexually attracted to young girls is not something that you can just turn on and turn off like a light switch. [That sexual desire and interest in young girls] hasn't just magically gone away. It's who the defendant is. It's what he's been doing for most of his adult life and that . . . makes him a danger today." (R. 54-1 at 9.) The Court's finding of dangerousness was well supported.

Defendant argues that he is not a "current danger" simply because of the age of the underlying offenses alleged in the superseding indictment. (R. 143 at 11.) Defendant, however, wholly ignores that the conspiracy to obstruct justice allegation runs to the present day, meaning that defendant currently poses a risk of obstruction of justice. This is because as long as victims are available to testify, and as long as evidence exists that the government has not yet obtained, defendant's goals to obstruct justice and conceal evidence are present.

For example, and as the Court noted, one of the videos charged in the superseding indictment is still "out there somewhere." (R. 54-1 at 32 ("And if all three or four videos, one of which apparently has not surfaced yet but must be out there somewhere, had all three of them, who knows how the case could have come out.")). This fact demonstrates defendant's previous, successful attempts to obstruct justice, as well as the ongoing incentive to continue to obstruct justice.

The defense is flatly incorrect that it was improper for the Court to consider the grand jury's probable cause finding that defendant committed the acts alleged in the indictment, including obstructing justice. (R. 143 at 9.) To the contrary, the grand

7

jury's determination is an appropriate and relevant factor in the pretrial detention analysis under § 3142. *See Kaley v. United States*, 571 U.S. 320, 329 n.6 ("The grand jury's unreviewed finding similarly may play a significant role in determining a defendant's eligibility for release before trial under the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq.").

Defendant attempts to discount the significance of a missing video, suggesting that additional videos would have been immaterial to the outcome of his previous trial. (R. 54-1 at 9; R. 143 at 12-13.) But there undoubtedly is a substantial difference between a jury seeing one tape showing one instance of sexual abuse and a jury seeing four tapes depicting four instances of sexual abuse of the same girl. Additionally, defendant points to the fact that Minor 1 and her parents previously denied that she was depicted in Video 1.[4] As alleged in the superseding indictment, however, those false denials were induced by defendant's threats, coercion, and payments. Both Minor 1 and her parents are now cooperating with law enforcement, and they acknowledge that defendant sexually abused Minor 1 and that defendant pressured them to deny that fact to law enforcement.[5]

Defendant also incorrectly argues that his co-defendant was the "alleged mastermind of any obstruction," and since the government agreed to conditions for

---

[4] Neither Minor 1 nor her parents previously denied that Minor 1 was depicted on Video 2 and Video 3 being sexually abused by defendant.

[5] Defendant also argued in his motion that he is not a danger to the community because "[n]othing was found when a search warrant was executed at Mr. Kelly's condominium." (R. 143 at 14.) That is incorrect. The government seized dozens of electronic devices from defendant's condominium, and the search of those devices is ongoing.

8

release and bond for him, defendant is entitled to bond. (R. 143 at 13.) The premise of this argument—that defendant was not the mastermind behind the obstruction that benefitted him—is incorrect. Defendant did not merely sit back and let others "protect" him; as the government stated at the hearing, the evidence will prove that defendant was the leader to obstruct justice, and "whatever his co-defendants did in furtherance of that obstruction of justice they did on his behalf." (R. 54-1 at 29.) Unlike defendant, the co-defendants' role in receiving child pornography was not because they enjoyed viewing it; it was because "defendant instructed them to obtain these sex tapes with minors that the defendant was on. … They were doing what the defendant told them to do." (*Id*. at 29-30.) The government agreed to conditions of bond for these individuals because they do not pose the extreme danger to minors that defendant does.

Defendant's reliance on *United States v. Dominguez*, 783 F.2d 702 (7th Cir. 1986), is misplaced. (R. 143 at 9-10.) In that case (involving allegations of distribution of narcotics), the defendant argued that he was not a danger to the community, and the detaining court failed to make a finding that the government met its burden of persuasion to the contrary. Unlike in that case, here, the government proffered evidence that defendant is likely to continue to engage in criminal conduct given his past sexual misconduct and ongoing efforts to obstruct justice. Even the *Dominguez* case recognized that courts may consider whether a defendant's "past conduct suggests the likelihood of future misconduct," *id*. at 707, which is exactly what the Court did here. Additionally, the Court here did not simply conclusively apply the

9

presumption of detention. Instead, it analyzed the information provided by both the government and defendant, and correctly concluded that defendant should be detained pending trial.

To detain defendant, the Court need not find *both* that defendant poses a danger to the community and is a risk of flight. One of those findings is sufficient. Thus, the analysis could stop here. But the government also proved by a preponderance of the evidence that defendant poses a risk of nonappearance.[6] As the government stated at the detention hearing, defendant faces serious charges in both the Northern District of Illinois and the Eastern District of New York. The pending charges in multiple districts increases defendant's incentive to flee. (R. 54-1 at 10-11) ("the stakes [for defendant] have significantly changed. He is now for the very first time facing a mandatory minimum of 10 years' imprisonment and up to a maximum of 195 years on the Illinois indictment alone. On top of that, New York has a possible sentence of up to 80 years. And that changes everything."). Indeed, the fact that defendant poses a significant risk of flight is the reason that a federal Magistrate Judge in the Eastern District of New York held defendant without bail pending trial – a finding which has been affirmed four times by the Eastern District of New York and once by the Second Circuit. (*See* Case 1:19-cr-00286 (E.D.N.Y.), R. 19, 53, 61, 68, 77.)

---

[6] Defendant incorrectly stated in his motion that the standard for detaining defendant based on nonappearance is "clear and convincing evidence" when the correct standard is actually "preponderance of the evidence." *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985) (risk of flight); *United States v. Salerno*, 481 U.S. 739, 742 (1987) (the standard for danger to the community is proof by clear and convincing evidence).

The defense argues that defendant "lacks the resources" to flee. (R. 143 at 6.) This is incorrect. Bank records (produced to defendant) show that defendant controls a nominee bank account that received at least $1.2 million last year. (R. 139 at 3.) "This account was established in early 2019, shortly after [defendant] was charged with sexual exploitation crimes in the Circuit Court of Cook County. By directing substantial income to a nominee bank account, it appears [defendant] was attempting to avoid financial consequences associated with the pending criminal charges in this and other cases, including fines and victim restitution." (*Id.*) Moreover, given defendant's past conduct, there is a risk he would use these funds to continue his pattern of paying off witnesses and victims to lie or remain silent about his crimes.

Accordingly, contrary to defendant's argument (R. 143 at 7), the Court heard and considered, not just the nature and circumstances of the offenses, but also the weight of the evidence, defendant's history and characteristics, and the nature and seriousness of the danger he poses to the community. In doing so, the Court correctly concluded that defendant "failed to overcome the presumption requiring detention." (R. 54-1 at 32.)

### B. There are no Conditions that will Reasonably Assure the Safety of the Community and Defendant's Appearance.

As the government stated during the detention hearing, there are no release conditions that can mitigate the dangers posed by defendant:

> Electronic monitoring and home incarceration are just insufficient here. Electronic monitoring does nothing about the obstruction of justice. It does nothing to prevent witness tampering. Defendant could easily obstruct justice from the comfort of his own home even

11

> if he has an ankle bracelet, but not so from the MCC where his communications will be monitored.

(R. 54-1 at 11.) Additionally, defendant "can entice girls to his own doorstep. He doesn't have to leave his home to do that, especially when he has assistants and other workers who enable him as alleged in the New York racketeering charge. So electronic monitoring and home incarceration are insufficient to protect the public, to protect the victims, and to protect witnesses from defendant's obstruction of justice." (*Id.*)

Defendant is incorrect that the Court did not consider whether conditions could be fashioned to overcome the presumption of detention. (R. 143 at 9.) By pointing to the government's proffered evidence, the Court noted that "witnesses were paid and witnesses were threatened in order to either change testimony or not appear at all." (R. 54-1 at 32.) In doing so, the Court considered and gave credence to the government's argument that electronic monitoring and home confinement conditions proposed by the defense would be insufficient.

## II. An Evidentiary Hearing Is Not Required.

### A. There Are No Disputed Issues Of Material Fact.

Evidentiary hearings are "not required as a matter of course," and are required only when "a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." *United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018) (internal marks omitted).

Here, defendant asserts that he was physically assailed while in custody at the MCC by an inmate named Jeremiah Farmer. In support of this assertion, defendant

12

provided the court with an unsworn, pro se "motion" written by Farmer. In the filing, Farmer claims that he has received ineffective assistance of counsel (in his own underlying criminal case), and he alleges that a conspiracy arose between prosecutors, judges, and police resulting in his unlawful conviction. (R. 146 at 2, ¶ 4.) Farmer states that "with no where else to turn for legal help" he "was forced to assault hip-hop R&B singer Robert Kelly" in "hopes of getting spotlight attention and world news notice" on the alleged "corruption." (*Id.* at ¶ 5.) Farmer also states that he discussed his plan to assault defendant with a mental health specialist at the MCC, and that the doctor stated "you don't want to assault Kelly[.] [I]f you did you would have done it." (*Id.* at 3.) Farmer states that he was disrespectful to the doctor, and that the doctor stated, "Go do it then." (*Id.*) Farmer claims he then stormed out of the office, the doctor "screamed" at him to "come back," and that Farmer "refused and physically assaulted Kelly." (*Id.*) According to information obtained from the MCC's investigation of this incident, Farmer assaulted defendant. However, the doctor reports that, during his brief encounter with Farmer prior to the assault, Farmer never mentioned Kelly and denies saying "Go do it then."[7]

    Even if Farmer's account is taken as true, these facts are not material to this Court's detention determination under the Bail Reform Act. In making its determination under 18 U.S.C. § 3142(e), the factors for the Court's consideration are set forth in 18 U.S.C. § 3142(g) and do not include a pretrial detainee's conditions of confinement. Because the facts surrounding defendant's assault are not material to

---

[7] Copies of the investigation papers have been produced to the Court and defendant.

the instant motion for bond, defendant's motion for an evidentiary hearing should be denied.

### B. Release From Custody Is Not An Appropriate Remedy.

It is unfortunate that Farmer decided to physically assault defendant. But this single, isolated incident does not suggest that the Bureau of Prisons is incapable of safely housing defendant, and his release from custody is not an appropriate remedy. As explained above, this Court properly found that defendant should be detained pending trial due to his danger to the community and his risk of flight. The fact that defendant was assaulted at the MCC does not change or mitigate this Court's correct ruling.

Regarding the incident itself, the MCC conducted an investigation and recommended that Farmer be transferred to a different facility. According to the Bureau of Prisons' publically available information, Farmer is currently housed at Milan FCI in Michigan. And prior to his move to this facility, according to information received from the Bureau of Prisons, Farmer was being housed in the Segregated Housing Unit. In any event, Farmer no longer poses a threat to defendant. Further, there are no facts – proffered by the defense or otherwise – which suggest that defendant faces an ongoing risk in the custody of the Bureau of Prisons.

Finally, to the extent that defendant raises concerns with his conditions of confinement or alleges that the doctor at the MCC failed to protect him, the appropriate mechanism to bring those claims is a civil action. For example, following exhaustion of the administrative process, and pursuant to the Federal Tort Claims

14

Act, "federal inmates may bring suit for injuries they sustain while incarcerated as a consequence of the negligence of prison officials." *Palay v. United States*, 349 F.3d 418 (7th Cir. 2003) (*citing United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850 (1963)). But absent a claim that the right to counsel is affected, claims of conditions of confinement are not cognizable in a criminal case and should be brought in a civil action. *See, e.g., Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995); *United States v. Arnaout*, No. 02 CR 892, 2002 WL 31744654, at *1-2 (N.D. Ill. Dec. 6, 2002) (in analyzing a pretrial detainee's motion under 18 U.S.C. § 3142(i), holding that "[a]bsent any evidence that the conditions of confinement interfere with his right to counsel, Arnaout may only challenge [those issues] in a civil action.").

Raising a conditions of confinement claim in the criminal context, as defendant attempts here, is an impermissible end run around the exhaustion requirements of the Prisoner Litigation Reform Act. *United States v. King*, No. 19-cr-257-WJM, 2020 WL 1890677, at *3 (D. Col. Apr. 16, 2020) (agreeing with the *Arnaout* case, and holding that the pretrial detainee "must pursue his grievances, if at all, through civil litigation, not in the guise of a review of his detention order," otherwise "pretrial detainees could evade the Prisoner Litigation Reform Act"); *United States v. Martinez-Hernandez*, No. 15-057 (GAG/BJM), 2017 WL 10927084, at *2-6 (D.P.R. Jan. 18, 2017) (holding that aside from claims affecting a pretrial detainee's access to counsel, district court did not have jurisdiction to address conditions of confinement claims); *United States v. Folse*, No. CR 15-2485 JB, CR 15-3883 JB; 2016 WL 3996386, at *15-17 (D.N.M. Jun. 15, 2016) (holding that a pretrial detainee "must file a

15

separate civil action to address his conditions of confinement" as opposed to filing a motion in his criminal case, to prevent "pretrial detainees from effectively bypassing the PLRA's exhaustion requirements," but acknowledging the exception for claims involving access to counsel); *United States v. Andrews*, No. 1:12-cr-100, 2014 WL 1379683, at *5 (N.D.W.V. Apr. 8, 2014) (holding that a pretrial detainee's motion challenging his conditions of confinement "is not cognizable in his pending criminal case" and that the detainee "must challenge those conditions and incidents by filing a civil action pursuant to *Bivens*").

## CONCLUSION

The government respectfully requests that the defendant continue to be detained pending trial.[8]

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ *Jeannice Appenteng*
ANGEL M. KRULL
ABIGAIL L. PELUSO
JEANNICE APPENTENG
Assistant U.S. Attorneys
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-5300

---

[8] Defendant noted in his motion that the Court has yet to enter a written detention order pursuant to 18 U.S.C. § 3142(i). At the Court's request, the government can submit a draft proposed order.

16