UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 CR 567 |
| | ) | |
| -vs- | ) | |
| | ) | Hon. Harry D. Leinenweber |
| | ) | |
| ROBERT SYLVESTER KELLY, also known As "R.Kelly," DERREL MCDAVID, and MILTON BROWN, also known as "June Brown." | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT KELLY'S REPLY TO MCDAVID'S RESPONSE TO KELLY'S MOTION FOR SEVERANCE**

NOW COMES, Defendant, ROBERT S. KELLY, by and through his counsel, Jennifer Bonjean and Ashley Cohen of the Bonjean Law Group, PLLC, and files this reply to co-defendant McDavid's response to Kelly's motion for severance.

1. Although McDavid takes no position on severance, he found it necessary to file an emotional 13-page response to Kelly's motion to sever, seemingly for no other purpose than to protect the legacy of Ed Genson and feign incredulity at Kelly's legitimate concern about Mr. Glozman's potential conflict and its implications on a joint trial.

2. McDavid's filing does not warrant much of a response, but several points must be made considering the histrionics.

3. **First,** McDavid accuses Kelly of advancing falsehoods for the purpose of circumventing the court's denial of Kelly's motion for a continuance. McDavid can point to exactly zero falsehoods in Kelly's motion. McDavid's counsel is entitled to have a different take on the record, but it does not follow that his self-serving views are truth.

4, Moreover, Kelly has not renewed his motion for a continuance. Kelly accepts the Court's ruling even if he disagrees with it. Presumably McDavid understands that this Court can grant severance by conducting a simultaneous, severed trial which would not require a continuance. Continuance or no continuance, undersigned counsel is going to protect Kelly's interest in a fair trial because her loyalties are with him, not deceased criminal defense lawyers - no matter how legendary.

5. **Second,** McDavid's claim that Kelly's motion to sever is pretextual "to circumvent a continuance" is meritless.

6. McDavid's counsel, Vadim Glozman, seems to have forgotten about the two conversations he had with undersigned counsel about the issue of severance before Kelly filed a motion for a continuance. During those conversations, Mr. Glozman adamantly refused to discuss McDavid's defense, expecting undersigned counsel to "take his word" that McDavid's defense would not be antagonistic to Kelly. Undersigned counsel questioned how non-adversarial defenses would be possible, but Mr. Glozman declined to elaborate.

7. McDavid's counsel has no obligation to share his defense theory with undersigned counsel but undersigned also has no obligation to blindly accept a promise of harmony when the evidence suggests the strong possibility that either or both defendants would be prejudiced by a joint trial.

8. Furthermore, as this Court knows, Kelly's prior counsel raised the possibility of severance long ago. Undersigned counsel also had conversations with counsel for co-defendant Brown about the need for severance – before Kelly filed a motion for a continuance. Those conversations were productive. Any competent attorney representing Kelly (who has read the discovery in this case) would understand the risk of Kelly's co-defendants possibly being used as

witnesses against him at a joint trial. Kelly will hardly be in a position to complain about it once trial commences.

9. Undersigned counsel also told the AUSAs assigned to this case that she was contemplating filing a motion to sever when she met them to review evidence in this case on April 19, 2022. And of course, Kelly expressly stated in his motion for continuance that he was exploring the need to seek a severance. In short, Kelly's motion to sever is not an attempt to end-run the court's ruling on his continuance motion despite McDavid's outburst.

10. Kelly's motion to sever is not controversial; it was raised as a possibility long ago; and is unquestionably supported by the discovery record *and* defendant's investigation. Kelly's motion is made in good faith and McDavid knows it.

11. **Third,** McDavid seems most offended that undersigned counsel has raised a legitimate concern about Glozman's potential conflict of interest and undersigned counsel's reference to Ed Genson's public statements verifying Kelly's claim that his attorney client relationship continued with Genson beyond 2008, during the period that Glozman worked for Ed Genson.[1]

---

[1] McDavid's diatribe also accuses undersigned counsel of unfairly "malign[ing]" Ed Genson. McDavid's attorneys' fixation with protecting the legacy of Ed Genson is bizarre. Ed Genson violated his duty of loyalty to Mr. Kelly when he declared publicly in the Sun Times that Kelly was "guilty as hell" and that he had instructed Kelly to take libido suppression pills - all while Kelly was facing prosecution in numerous jurisdictions. This observation is not particularly provocative. Numerous ethics professors have commented on this egregious ethical breach. *See, e.g.,* https://www.usatoday.com/story/life/2019/03/08/r-kelly-news-ex-lawyer-says-guilty-as-hell-when-he-defended-him/3104641002/  Mr. Genson's health issues, of which McDavid's attorneys seem have intimate knowledge may have played a role in his lack of judgment but that is irrelevant to the issues at hand. Kelly cited the interview to show that Genson *admitted* to an ongoing attorney-client relationship with Kelly after 2008 when he boasted that he kept Kelly out of trouble for 10 years. McDavid's counsel is simply upset that undersigned counsel has prioritized her client's interests over Genson's reputation. Furthermore, contrary to McDavid's statements, undersigned counsel never claimed that the ARDC did *not* investigate the matter. Undersigned counsel has no idea what the ARDC did or did not do (although strangely McDavid's counsel does). Undersigned counsel merely pointed out that the ARDC did not seem to have much of appetite for addressing the ethical breach since they did not even contact Mr. Kelly who was the person impacted by Genson's conduct. It's rather difficult to take any supposed ARDC investigation seriously when it did not even involve contacting Kelly to see if he wished to pursue a complaint. McDavid's attorneys seem to know far more than Kelly about this alleged ARDC investigation, which is irrelevant in any event to whether Kelly and Genson had am attorney-client relationship that extended beyond 2008.

12. Kelly's claim of an ongoing attorney-client relationship is not premised on Genson's statements to the Sun Times reporter. Kelly *himself* contends that he maintained an attorney client relationship with Genson long after 2008 and that the relationship involved regularly consulting with Genson about legal matters for roughly a decade after his 2008 acquittal.[2] Genson's statements merely corroborate Kelly's assertion. McDavid's suggestion that undersigned counsel fabricated this issue out of whole cloth is preposterous.

13. In addition to conversations with her client, undersigned counsel has read the entire EDNY record and has made it far enough in the NDIL discovery to know that Mr. Kelly has faced a constant stream of legal issues since 2008, some of which brought him to Mr. Genson for advice.

14. McDavid has worked himself up into a lather simply because Kelly has identified a *potential* conflict on the part of Glozman that could prejudice Kelly at a joint trial. Kelly's motion makes clear that if Glozman worked for Genson while Kelly and Genson still had an attorney client relationship, a *potential* conflict exists. Ill. R. Prof. Conduct 1.7; 1.10(a); 1.8(k). Notably, Glozman does not deny that he worked for Genson during 2012 through 2018; nor does he offer any factual basis to dispute that Kelly and Genson maintained their attorney-client relationship past 2008.

15. Undersigned counsel cannot get into Mr. Glozman's head and was not present for any conversations that may have occurred in the infamous law offices of Ed Genson. But it doesn't require an ethics professor to explain that Glozman *could* be in a conflicted position if he is in possession of privileged communications that occurred during Kelly's attorney-client

---

[2] Since McDavid fantasizes that undersigned counsel conjured a post-2008 attorney-client relationship between Genson and Kelly, undersigned counsel will supplement Kelly's motion with a sworn declaration from Mr. Kelly. Perhaps, the Court will need to conduct a hearing to get to the bottom of the issue.

relationship with Genson. For example, if Ed Genson felt at liberty to make the statements he did to a Sun Times reporters, it is hardly a stretch that he might have shared privileged communications with his associates, including an associate who represents a co-defendant who may be antagonist to Kelly.

16. It is also a reasonable assertion that Glozman owes duty of loyalty to Kelly because Genson's duty of loyalty is imputed to him. Ill. R. Prof Conduct 1.10(a); 1.8(k). *see also, People v. Carr,* 2020 IL App (1st) 171484, ¶29 *citing People v. Fountain,* 2012 IL App (3d) 090558, ¶16 ("if one member of a private firm has a *per se* conflict of interest that conflict is imputed to all other members of the law firm, regardless of whether any of those other members had any personal involvement in the conflicting representation.")

17. McDavid's attorneys are free to argue otherwise, and the government and this Court will have to decide what to do with this information. Kelly is not moving to disqualify Glozman. Kelly has identified this potential conflict as a basis for severance – nothing more.

18. **Lastly,** McDavid's vitriolic response merely underscores the likelihood of antagonistic defenses. Undersigned counsel may not be as familiar with the discovery as McDavid's counsel claims to be, but she apparently is familiar enough to file a motion to dismiss that they overlooked (and joined) and to know that there is ample evidence to show that McDavid was in complete control of Kelly's finances and helped himself to the fruits of Kelly's labor. The fact that McDavid intends to vehemently deny this claim simply shows that it is possible that either or both co-defendants could suffer prejudice at a joint trial.

19. The government presumably has something to say about this. And the Court will rule on the motion. Defendant will accept the ruling. That's how litigation works.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully asks this Court to sever his trial from co-defendant McDavid's trial and further to sever counts 10 through 13 from the remainder of the indictment.

Respectfully Submitted,

/s/JENNIFER BONJEAN
/s/ASHLEY COHEN

*Robert S. Kelly's Attorneys*


Bonjean Law Group, PLLC
750 Lexington Ave., 9th Fl
New York, NY  10022
715-875-1850

## CERTIFICATE OF SERVICE

      I, JENNIFER BONJEAN, certify that filed this Reply to Defendant's Motion for Severance on May 22, 2022, via ECF. All parties to this action were serve via ECF.

/s/JENNIFER BONJEAN