UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>   v. )<br>)<br>ROBERT SYLVESTER KELLY, )<br>   Also known as "R. Kelly," )<br>DERREL MCDAVID, and )<br>MILTON BROWN, )<br>   Also known as "June Brown" )<br>) | No.   19 CR 567<br><br>Hon. Harry D. Leinenweber |

**RESPONSE TO GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE* BY DEFENDANT ROBERT SYLVESTER KELLY**

NOW COMES Defendant Robert Sylvester Kelly, by and through his counsel Jennifer Bonjean, and responds to the Government's Consolidated Motions *In Limine* as follows.

**INTRODUCTION**

The government's 40-page Consolidated Motion *in Limine* ("Government's Motion" or "the Motion") consists of 16 parts, some of which attempt to prevent Mr. Kelly from effectively confronting witnesses while asking this Court to preclude any possibility of a fair trial by flooding the proceedings with prejudicial propensity evidence. Where parts of the Motion simply remind Mr. Kelly to follow the Rules of Evidence and provide notice that the Government intends to try to prove its case, Mr. Kelly responds that he intends to abide by the rules and object as necessary. Mr. Kelly objects to MIL Nos. 2, 3, 5-7, 8, and 15 of the Government's Motion, joins the Motion with respect to No. 4, has no objection to Nos. 1 or 11, and defers to the Court on the remainder, reserving the right to object as necessary. He responds to each part of the Government's Motion in turn.

1. **Motion to Protect the Identities of Minors 1, 3, 4, 5, and 6**

First, Mr. Kelly has no objection to the alleged Minors testifying using only their first names, or to Minor 1's mother doing the same. Mr. Kelly agrees to refer to them in kind. That said, some of these individuals are already well-known within the public domain. Minor 1 and her mother are already public figures because of the previous case in which Mr. Kelly was acquitted. In addition, Minor 4 gave an interview to NBC's Dateline in 2019 and may well have made other statements to the media. It is not known to Mr. Kelly whether any of the other Minors have had similar media involvement. Therefore, while Mr. Kelly does not object to using first names, he does assert that to the extent that some of the Minors' last names and identifying information is already widely known, it was not through his own public disclosure.

Mr. Kelly has no objection to refraining from eliciting disclosure of the addresses, names of family members, and places of employment of the alleged Minors, Minor 1's mother, or Lisa Van Allen (Individual D). As to the government's request that the Court enter "the attached protective order," Mr. Kelly agrees to a protective order that corresponds to points 1-3, *supra*. Mot. at 5.

2. **Motion to Preclude Evidence of Victims' Sexual History**

Citing to Rules 412(a) and 403, the Motion asks for an order precluding "defendants from eliciting on cross examination or otherwise introducing evidence or making arguments as to the sexual behavior of the Victim-Witnesses with individuals other than Kelly or others at Kelly's direction," as well as any evidence of any purported "sexual predisposition." Mot. at 6 and 7. At the outset, Mr. Kelly has no intention of introducing any evidence of victim-witnesses' sexual behavior for the purpose of establishing "sexual predisposition." That said, the prior sexual behavior of the victim-witnesses may be relevant to questions surrounding consensual sex acts

with Mr. Kelly when the victim-witnesses were not minors. Indeed, Mr. Kelly maintains that as to certain victim-minors, he never had sexual contact with them when they were minors. Accordingly, Mr. Kelly objects to the exclusion of 1) any evidence regarding sexual conduct of witnesses who are not alleged victims identified in the indictment, 2) any evidence that falls within the exceptions laid out in Rule 412(b), and 3) any exclusion based on Rule 403 that is not narrowly tailored to protect Mr. Kelly's Sixth Amendment rights.

As a preliminary matter, the Motion is not clear as to who the alleged "Victim-Witnesses" are that the Government asks for this ruling to apply to. The voluminous discovery in this case involves many women who purportedly had sex with Mr. Kelly who are not identified in the superseding indictment—many of whom were legally able to consent and others for whom the proffered evidence provides a genuine dispute as their age at the time of the sexual acts. To the extent that the Motion asks for the Court to preclude cross-examination or evidence regarding witnesses who are not identified in the superseding indictment, it should be squarely rejected. Because "Rule 412's express terms apply only to witnesses who are victims" and because "the government has not explained how adult females who had consensual sex are 'victims,'" its motion in limine pertaining to evidence of other sexual conduct of these witnesses should be denied. *United States v. Ray*, 2013 U.S. Dist. LEXIS 202505, at *8 (N.D. Ind. Aug. 23, 2013).

In addition, the Government's assertion that all evidence of sexual conduct of Minors 1, 3, 4, 5, and 6 is inadmissible under Rule 412 is unavailing. Under Rule 412(b) and (c) "evidence of specific instances of a victim's sexual behavior" are admissible "to prove consent" and where exclusion "would violate defendants constitutional rights." Fed. R. Evid. 412(b) and (c). Accordingly, courts have admitted evidence that involved sexual conduct for purposes unrelated

3

to sexual predisposition, such as establishing that a victim lied about her age, and for arguing that allegations of sexual abuse are false based on history of making false allegations. *See Ray,* 2013 U.S. Dist. LEXIS 202505 at *6. *See also Sussman v. Jenkins*, 636 F.3d 329, 356-57 (7th Cir. 2011). To mount a defense against the Government's extensive allegations, some of which date back almost 30 years, Mr. Kelly must be permitted introduce evidence and make arguments that would impeach claims of minority, assert a mistake of age, or establish a timeline, among other defenses.

Similarly, the Government's sweeping claim that "any inquiry or evidence related to victims' sexual history" should be excluded under Rule 403 is unsupported and premature. Mot. at 8. "When evidence is relevant and otherwise admissible, exclusions should be narrowly tailored" and "the prejudicial effect of the offered evidence must *substantially* outweigh its probative value." *United States v. Hamzeh*, 986 F.3d 1048, 1056 (7th Cir. 2021) and *United States v. Buckner*, 91 F.3d 34, 36 (7th Cir. 1996). Consequently, it is not enough for the Government merely to claim that any evidence of any sexual conduct would be "marginal at best" where the admission of specific instances may be necessary to secure Mr. Kelly's rights under the Confrontation Clause. Mot. at 8; *See United States v. Stamper*, 766 F. Supp. 1396, 1400 (W.D.N.C. 1991), *aff'd*, 959 F.2d 231 (4th Cir. 1992) (rejecting prejudice argument under Rule 403 and admitting complainant's past allegations of sexual abuse because "In order to confront the complainant effectively, to elucidate the facts and legal issues here in question fully, and to present a defense in a constitutionally viable trial, Defendant must be allowed to set before the jury the proffered evidence of ulterior motives.") The government's sweeping 403 argument, which attempts to broadly exclude evidence that is explicitly admissible under Rule 412(b), must be rejected.

Finally, the Government's statement that Mr. Kelly must submit a motion under 412(c)(1) before introducing certain evidence with regard to the alleged victims is not in dispute. Mr. Kelly has every intention of complying with the Federal Rules of Evidence, including 412(c)(1), and will provide notice as required by the Rules.

3. **Motion to Bar Evidence and Argument Related to Consent**

By their own statements, all but one of the alleged Minors had engaged in a sexual relationship with Mr. Kelly while they were consenting adults. In addition, the entirety of the sexual acts charged in the superseding indictment took place between 19 and 26 years ago. The ages of the alleged Minors and veracity of claims about their age at remote points in time are of central importance in this case—so much so that proving any of the alleged minors was old enough to consent would be a complete defense to all counts involving that alleged Minor. While Mr. Kelly does not intend to argue that minors are legally able to consent to sexual acts with adults, he objects to excluding evidence and argument related to consent because he cannot be precluded from arguing that the alleged Minors were old enough to consent.

Relatedly, Mr. Kelly objects to the government's motion to the extent it seeks to prevent Mr. Kelly from refuting the government's proof of inducement. To prove offenses under 18 U.S.C. § 2251(a) and 18 U.S.C § 2422(b), the government must prove that Mr. Kelly knowingly "persuaded, induced, enticed, or coerced" the alleged Minors into engaging in "sexually explicit conduct" (for § 2251(a)) or to "travel in interstate commerce to engage in...sexual activity" (for § 2422(b)). While Mr. Kelly concedes that consent is not a defense to § 2251 or § 2422 offenses, it is also true that sexually explicit conduct with a minor is not *per se* evidence of inducement. Put differently, the government is not relieved of its burden of proving inducement simply because it establishes sexually explicit conduct with the minor. Mr. Kelly must be permitted to

5

challenge evidence of inducement which may require cross-examining the Minors about *their* conduct – not to demonstrate consent but to negate inducement. To the extent the government attempts to prevent Mr. Kelly from challenging inducement, he objects to this motion.

4. **Motion to Prevent the Public Display of Child Pornography During Trial.**

Mr. Kelly joins the motion to prevent the publication of video clips allegedly containing child pornography to the gallery during trial.

5. **Government's Intended Evidence of Polygraph Examinations**

Without conceding any of the arguments in the Motion, Mr. Kelly acknowledges the Government's intent to present testimony and documents of polygraph examinations allegedly taken by the witnesses in this case. To the extent the government intends to introduce the fact that polygraph examinations were used by Defendant McDavid in support of its obstruction charge, Mr. Kelly does not presently object while reserving his right to object at the time of trial. That said, Mr. Kelly *does* object to testimony about the results of the polygraphs and the introduction of questions presented during the polygraph examinations. Any substantive use of the polygraph examinations that would bolster any government witnesses' testimony should be prohibited as both unreliable and unduly prejudicial. The government fails to explain why it would need to present testimony from the polygrapher when the individuals who were allegedly subjected to the polygraph examinations can simply testify about having participated in the polygraph examination. To the extent the Court permits the polygrapher to testify, the testimony should be limited solely to establishing that a polygraph examination occurred.

6. **Notice Regarding Introduction of the False Records Alleged in the Superseding Indictment**

Mr. Kelly objects to the introduction of the memorandum prepared in connection with statements made by Individual D on relevance grounds. The government alleges that Mr. Kelly

and Defendant McDavid *caused* Individual D to make a false statement to private attorneys who then memorialized those statements in some type of memorandum that was provided to the Cook County State's Attorney's office in 2008 and eventually made its way to the office of the United States Attorney. As a matter of law, this memorandum is not relevant evidence since the government has proffered no evidence that Kelly (or McDavid) created the memorandum or made the false statements contained in the memorandum. Mr. Kelly contends that to sustain a conspiracy to commit a violation of 18 USC 1519, the government must show that Mr. Kelly (or a co-conspirator) make the false entry or false statement. It is not sufficient to show that they persuaded another to do so. Moreover, the government has proffered no evidence that Individual D herself had any knowledge that a memorandum was being preparing in connection with her alleged statements and shared with state prosecutors who would eventually share it with federal prosecutors more than a decade later. In short, the creation of this memorandum cannot as a matter of law constitute a "false record" nor is there any evidence that suggests that it was prepared with the knowledge of any the defendants or even Individual D.

Relatedly, Mr. Kelly objects to the introduction of any police report that allegedly contains false statements of Minor 1. Such evidence is irrelevant for establishing that Mr. Kelly or any co-conspirator *made* false entries in any record or document. As stated above, even assuming the government can demonstrate that Mr. Kelly persuaded Minor 1 to make false statements to law enforcement, such evidence would be irrelevant to the question of whether Mr. Kelly and any of his co-conspirators made false entries in any record.

   7. **Notice of Intent to Admit Direct Evidence of Crimes Charged**

The Government's notice of intent conflates proving its case with asking for a *carte blanche* to introduce inflammatory evidence suggesting that Mr. Kelly had a violent and abusive

character. Specifically, it plans to introduce "evidence of physical, emotional, and sexual abuse" of Minors 1, 3, 4, 5 and 6 for purposes of showing enticement and coercion necessary for the § 2422(b) charges and as "direct evidence of the § 371 charge." Mot. 24-25. While some of this evidence might be relevant, Mr. Kelly objects to admission of any evidence that is not directly relevant to the crimes charged, and objects to any evidence whose probative value is "substantially outweighed by a danger of … unfair prejudice." Fed. R. Evid. 403. Critically, the government has provided a couple of examples of evidence of violence it seeks to introduce but has failed to put Mr. Kelly on sufficient notice of what specific acts of violence it intends to offer as evidence.

Allegations of acts of violence that were not intended to induce interstate travel for sex are irrelevant to the elements of § 2422(b). Similarly, acts of violence that are unrelated to the conspiracy charges are not relevant. Where Minor 1 alleges that she had a long-term relationship with Mr. Kelly which continued for nearly 10 years after she became and adult and for several years after she allegedly made false statements exonerating him on previous charges, not every allegation of violence during a 15-year period will prove the elements of § 371. *See generally United States v. Ingram*, 2018 U.S. Dist. LEXIS 185201 (S.D. Ind. Oct. 29, 2018) (excluding testimony that codefendant participated in crime because of domestic violence by Defendant where that fact did nothing to prove elements of armed robbery). Similarly, attenuated acts of alleged abuse by Mr. Kelly are not proof of a conspiracy, and it is not conceivable that every act of dating violence or other violence against the alleged victims relates to obstruction of justice. *See e.g. United States v. Reyes*, 2014 U.S. Dist. LEXIS 200336, at *9 (N.D. Ind. Jan. 15, 2014) (expressing concerns about the relevance of "specific incidents of violence on the part of individual co-conspirators" that were not evidence of "concerted action" in a RICO analysis).

Even for evidence of alleged abuse that has some relevance, the Court should conduct an analysis under Rule 403 on an individualized basis to ensure that the evidence is not "overly cumulative or prejudicial." *Id*. Particularly where the thirteen count superseding indictment strings together charges that are unrelated in time, involve different alleged victims, and require proof of distinct facts that could allow for extensive and drawn-out testimony, there is a strong potential that the abuse evidence the government references will end up serving as prejudicial propensity evidence. To avoid this risk, the Court should "delineate precisely the legitimate ends to which the evidence could be applied" and allow "the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) citing *United States v. Lee*, 724 F.3d 968, 978 (7th Cir. 2013).

8. **Motion for Prior Notice Concerning Rule 608(b) Impeachment**

Without any authority whatsoever the Government audaciously moves this Court to put a gag order on Mr. Kelly's defense by barring impeachment "evidence (including by asking questions on cross-examination) … except upon prior notice to the Court and the opposing party outside the presence of the jury." Mot. at 26.

It is uncontroverted that "there is no general requirement that either side give notice of impeachment evidence." *United States v. Cerro*, 775 F.2d 908, 914-15 (7th Cir. 1985). While there is an obligation *on the government* to provide notice of intent to use prior bad acts evidence under Rule 404(b), Rule 608 does not contain the same requirement. *See e.g. United States v. Martinez*, 2022 U.S. Dist. LEXIS 114421, at *9 (W.D.N.Y. June 28, 2022) [one in a line of Second Circuit cases saying no notice required under Rules 608 or 609].

To defend himself, Mr. Kelly must be allowed to expose bias of government witnesses through the use of impeachment evidence. "Exposing witness bias is at the "core" of the

confrontation right." *United States v. Manske*, 186 F.3d 770, 778 (7th Cir. 1999). According to the Seventh Circuit: "Bias is one of the five acceptable methods of attacking the credibility of a witness's testimony: (1) attacking the witness's general character for truthfulness; (2) showing that, prior to trial, the witness has made statements inconsistent with his testimony; (3) showing that the witness is biased; (4) showing that the witness has an impaired capacity to perceive, recall, or relate the event about which he is testifying; and (5) contradicting the substance of the witness's testimony." *United States v. Lindemann*, 85 F.3d 1232, 1243 (7th Cir. 1996). The admissibility of evidence attacking credibility "is limited only by the relevance standard of Rule 402." *Id.* citing Wright & Gold, *Federal Practice and Procedure* § 6092 (1990). Accordingly, this Court should reject the Government's bald attempt to preemptively bolster the credibility of its witnesses, more than a few of whom have made prior inconsistent statements under oath and deny its novel motion for notice of impeachment outside the presence of the jury.

### 9. Motion to Preclude Argument Designed to Elicit Jury Nullification

The motion asks to "preclude evidence or argument" that it characterizes as "designed to elicit jury nullification" including that of a) penalties faced by Defendants if they are convicted, b) outrageous government conduct, c) government's motivations in prosecuting the case, and d) selective prosecution. Mot. 27-33. Mr. Kelly has no intention to argue jury nullification and objects only to the extent that he intends to expose every weakness in the Government's case, including the Government's conduct and tactics that affect the veracity of and reliability of evidence.

### 10. Preclude Discovery Requests or Commentary Regarding Discovery in Presence of Jury

Mr. Kelly does not intend to have discovery disputes in front of the jury, and questions whether the Government is anticipating not having produced all the discovery. If the

Government produces undisclosed evidence at trial Mr. Kelly's counsel cannot promise to act unsurprised but will conduct herself appropriately.

### 11. Exclude Evidence or Arguments Regarding the Constitutionality of the Statutes Criminalizing the Production and Receipt of Child Pornography

Mr. Kelly has no objection.

### 12. Preclude Argument or Evidence of Defendant's Non-Pertinent Character Traits

Mr. Kelly has every intention of abiding by the Federal Rules of Evidence and reserves the right to introduce relevant and probative evidence at trial. Defendant does not intend to affirmatively introduce evidence of good character.

### 13. Preclude Defenses of Alibi, Unavailability and Mental Defect

With regard to alibi evidence under Rule 12.1, it is currently impossible for Mr. Kelly to provide an alibi because the Government's allegations identify almost no specific dates and span at least 20 years, with the oldest approximation placed somewhere in the mid-1990s. If it becomes clear at trial that Mr. Kelly has an alibi defense, he may very well raise it. At this juncture, it is not possible for Mr. Kelly to provide notice of an alibi when he himself has no notice of the times or dates he may have one for. Mr. Kelly is not planning to raise mental defect under Rule 12.2.

### 14. Preclude Defense Counsel from Defining Term "Reasonable Doubt"

Mr. Kelly has no response to this Motion, and states that he is represented by experienced counsel who will represent him competently.

### 15. Allow Government to Recall Case Agent During Case-in-Chief

Mr. Kelly objects to the Government's open-ended motion to episodically recall its own investigator. While Mr. Kelly does not dispute that it is within the Court's discretion to "exercise reasonable control over the mode and order of examining witnesses" under 611(a), recalling a

witness an untold number of times presents a serious risk of "prejudicial over-emphasis on [the witness's] credibility" and "undue lengthening of the trial." *See generally Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 306 (S.D. Ind. 2016) (*citing United States v. Raineri*, 670 F.2d 702 (7th Cir. 1982) for the proposition that parties to a criminal case have an interest in limiting recall of witnesses); *See also United States v. Dent*, 984 F.2d 1453, 1464 (7th Cir. 1993) (acknowledging "the risk is that one side is given an unfair opportunity to strengthen its case as well as perhaps unduly emphasize certain testimony" when a witness is recalled.) Consequently, Mr. Kelly objects to the Government's motion and asks the Court to use its discretion to appropriately limit the agent's testimony to prevent undue emphasis and keep the trial as balanced as possible.

### 16. Admit Business Records

Mr. Kelly has no objection to the admission of "certified copies of domestic business records," pursuant to Rules 903(11) and 803(6), contingent on the Government's agreement for reciprocity when and if Mr. Kelly seeks to introduce the same. *See* Mot. at 40. Mr. Kelly reserves the right to object on relevance grounds.

**CONCLUSION**

For the foregoing reasons, Defendant seeks an order from this Court denying Nos. 2, 3, 5-7, 8, and 15 of the Government's Motion and granting the Motion with respect to No. 4.

Respectfully Submitted,

/s/ JENNIFER BONJEAN

Bonjean Law Group, PLLC
750 Lexington Ave., 9th Fl.
 New York, NY 10022
715-875-1850

## CERTIFICATE OF SERVICE

      I, Jennifer Bonjean, an attorney hereby certify that on July 17, 2022, I filed the foregoing response to the Government's consolidated Motions *in Limine* using the Court's CM/ECF system.

/s/ JENNIFER BONJEAN