UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No.   19 CR 567 |
| | ) | |
| ROBERT SYLVESTER KELLY, | ) | Judge Harry D. Leinenweber |
|   also known as "R. Kelly," | ) | |
| DERREL MCDAVID, and | ) | |
| MILTON BROWN, | ) | |
|   also known as "June Brown" | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT KELLY'S
MOTION TO BAR GOVERNMENT'S CHILD SEXUAL ABUSE EXPERT**

The government provided notice of its intention to call Dr. Derrel Turner as an expert witness at trial.[1] The topics about which Dr. Turner will testify fall into two main categories: (1) the grooming behavior of sex offenders against children; and (2) the victims' delayed or partial disclosure of the abuse. Dr. Turner has been qualified as an expert to testify about both topics in other federal and state cases.

Defendant Robert Kelly has moved to bar Dr. Turner's testimony or, alternatively, requests that this Court conduct a hearing pursuant to *Daubert v. Merrell Dow Pharmaceutical, Inc.,* 509 U.S. 579 (1993). R. 243.[2] Kelly's motion should be denied, however, because Dr. Turner's testimony satisfies the requirements of Federal Rule of Evidence 702 and no *Daubert* hearing is required.

---

[1] The government provided notice pursuant to Fed.R.Crim.P. 16(a)(1)(G) on July 1, 2022 by letter to all defense counsel. The government provided a supplement to counsel by letter on August 8, 2022. Copies of these letters are attached as Exhibits 1 and 2, respectively.

[2] Kelly filed his motion on July 31, 2022, after the July 1, 2022 letter and before receiving the August 8, 2022 letter. The government, however, identified the same proposed topics of testimony in both letters.

### I. BACKGROUND

The superseding indictment charges Kelly with multiple offenses related to his sexual abuse of children. These children ranged in age between 13 and 17 at the time of the abuse. Specifically, Kelly is charged in separate counts with enticing Minor 1, Minor 3, Minor 4, Minor 5, and Minor 6 to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). Kelly is also charged with four counts of enticing Minor 1 to engage in sexually explicit conduct for the purpose of producing four videos, in violation of 18 U.S.C. § 2251(a).

At trial, the government anticipates calling Minor 1, Minor 3, Minor 4, and Minor 5 to testify about how they met Kelly while they were children and their interactions with Kelly before and during the period in which they engaged as children in sexual acts with him. These minors will testify that Kelly repeatedly engaged in sexual acts with them and that they did not disclose Kelly's sexual conduct during this period.

The government intends to call Dr. Turner before the testimony of any of the minors at trial. The purpose of Dr. Turner's testimony is to introduce the jury to a world wholly unfamiliar to them. Dr. Turner's testimony, which is based on Dr. Turner's extensive experience with both sex abusers and child victims of sex abuse, will describe how sex abusers attract children to them, persuade or coerce children to engage in sex acts with them, and prevent the children from making an outcry about the abuser's sexual conduct. This general testimony will allow the jury to assess on its own, after Dr. Turner concludes his testimony, the testimony of Minors

1, 3, 4, and 5, including their description of how they met Kelly and how they came to engage in sexual conduct with him. Dr. Turner's testimony will not focus on the facts of this case. Dr. Turner has no knowledge about the facts of this case and he will not render any specific opinions as to Kelly or Kelly's actions with Minors 1, 3, 4, and 5.[3]

Kelly claims in his motion that Dr. Turner lacks the expertise to testify about victim dynamics such as a victim's reaction to sexual abuse. R. 243. Kelly also claims that the testimony will not help the jury and that the testimony is not based on sufficient facts or data or reliable principles or methods. None of these arguments have merit. Dr. Turner has extensive experience with both minor victims and perpetrators of sexual abuse. The purpose of Dr. Turner's testimony, to educate the jury without opining about the specific facts in this case, is wholly appropriate. *See, e.g.,* Rule 702 Advisory Committee Notes (2000 Amendments) ("Yet it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case.").

---

[3] Dr. Turner has not interviewed any of the victims or defendants in this case. Dr. Turner has not been provided any evidence in this case, including reports related to the minors expected to testify at trial.

## II.  LEGAL STANDARD

The admissibility of expert testimony is governed by Fed. R. Evid. 702. This rule provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The Supreme Court has made clear that in applying Rule 702, district courts serve a gatekeeping function and must ensure that the expert testimony at issue 'both rests on a reliable foundation and is relevant to the task at hand.'" *United States v. Cruz-Velasco,* 224 F.3d 654, 660 (7th Cir. 2000), *quoting Daubert,* 509 U.S. at 597. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), the Court explained that when testing the reliability of an expert opinion, courts must adjust the *Daubert* "gatekeeper" factors to fit the facts of the particular case at issue. 526 U.S. at 147. It is well established that "any" specialized knowledge may be the subject of expert testimony. *Id.* The trial judge enjoys broad discretion in determining whether the factors listed in *Daubert* reasonably measure reliability in a given case. *Id.* at 153.

**III. ARGUMENT**

Dr. Turner's testimony satisfies the elements of Rule 702 that apply to his proposed testimony. Dr. Turner is qualified, his testimony is based on sufficient facts and data, and his testimony is the product of reliable principles and methods.[4]

**A.     Dr. Turner is Qualified to Testify as an Expert Witness**

Dr. Turner has a bachelor's degree in psychology and a master's degree in counseling psychology from McNeese State University. Dr. Turner has also earned a doctoral degree in clinical psychology from Sam Houston State University. Dr. Turner is a licensed clinical psychologist specializing in forensic psychology and sex offending. Dr. Turner has spent approximately 18 years in the field of clinical psychology.

Dr. Turner has extensive experience conducting forensic and trial evaluations of adults and juveniles. *See* Ex. 2 at 1. Dr. Turner has treated hundreds of victims of sexual abuse. *Id.* Dr. Turner has also interviewed sex offenders and has served as a staff psychologist in a federal prison setting. Dr. Turner, among many other consulting positions, serves as a consultant to various federal agencies, including the FBI, NCIS, and the Department of Homeland Security, as well as various state and local law enforcement agencies, concerning risk assessment of sexual offenders and the behaviors of offenders and victims of childhood sexual assault. *See* Dr. Turner CV (attached to Ex. 1). Dr. Turner has also authored multiple articles about sex offenders

---

[4] The last Rule 702 element, that the expert has reliably applied the principles and methods to the facts in the case, does not apply here since Dr. Turner has not been provided with any facts about the case and his testimony will not be based on those facts.

5

and victims, including "Grooming and Other Offense-Related Behaviors in Child Molestation Cases: An Analysis of Offender Self-Reported Behaviors and Beliefs." Dr. Turner has also testified as an expert in over a dozen federal criminal proceedings.[5] *See* Ex. 2 at 1.

Kelly argues that Dr. Turner "does not have sufficient experience or specialized knowledge to speak to the so-called 'dynamics' of victims of child sexual abuse" because he "does not apparently treat child abuse victims and has never published or conducted any research in the area of behavior of child abuse victims." R. 243 at 4. But, as described in the August 8, 2022 supplemental notice, Dr. Turner has treated and interviewed "hundreds" of victims of sexual abuse. The Seventh Circuit recognizes that requisite expertise can be acquired through practice, experience, or education. *See United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) ("[W]e have recognized that while extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is

---

[5] The Ninth Circuit recently found Dr. Turner qualified and his expert testimony helpful to the jury in understanding the evidence and determining facts related to child sexual enticement under 18 U.S.C. § 2422(b). *United States v. Telles*, 18 F.4th 290, 302-03 (9th Cir. 2021). There, as here, defendant challenged Dr. Turner's testimony on that basis that "the testimony concerned behaviors associated with sex offenders and their 'groomed' victims that are not scientifically probative of the statutory elements and issue the jury was tasked to resolve." *Id*. 302-03. In affirming the district court's denial of the challenge, the Ninth Circuit approved of Dr. Turner's testimony because it "explained for the jury that [defendant's] behavior with [victim] could be innocent behavior, or it could actually have been part of his plan to engage in illicit activity with her." *Id*. at 303 (internal quotations and citations omitted). In *Telles*, as the government intends to happen here, "Dr. Turner did not testify as to [defendant] or [victim] specifically—he merely gave a straightforward account of relevant background information based on his own knowledge and experience." *Id*. (internal quotations and citations omitted).

based on experience.") (internal quotations and citations omitted); *see also United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002) (observing that the Advisory Committee notes to Rule 702 specifically provide that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony"). Dr. Turner has also conducted multiple presentations on the impact of sexual abuse on child victims.[6] Dr. Turner's many years of experience, which includes repeated and firsthand observation of both sex offenders and child victims of sex abuse, makes him well qualified to testify as an expert witness in this case.

### B. Dr. Turner's Testimony Will Be Helpful to the Jury

Counts One through Four allege that Kelly "knowingly employ[ed], use[d], persuade[d], induce[d], entice[d], and coerce[d]" Minor 1 to engage in sexually explicit conduct to produce a visual depiction of the conduct in violation of Title 18, United States Code, Section 2251(a). R. 93. Counts Ten through Thirteen charge Kelly with using the mail or other means of interstate or foreign commerce to "knowingly employ, use, persuade, induce, entice, and coerce" Minors 1, 3, 4, 5, and 6 to engage in sexually explicit conduct in violation of Title 18, United States Code, Section 2422(b). *Id.* Kelly's calculated behavior to prepare a child for future sexual encounters, known as "grooming," is relevant to these charges. *See, e.g., United States*

---

[6] Dr. Turner, for example, was the keynote speaker and presenter at the 2019 Utah Children's Justice Symposium, Salt Lake City, Utah, on May 14, 2019 on the topic of "Grooming Behaviors of Child Molesters and Impact on Behavior and Disclosure of Victims," and an invited speaker at the 2013, 2015, 2016, 2019, and 2021 Protect Our Children Conference in Omaha, Nebraska, at which Dr. Turner presented on the topic of "Understanding Counter-Intuitive Behaviors of Victims of Childhood Sexual Assault and Grooming Behaviors of Offenders." *See* Dr. Turner CV (attached to Ex. 1).

7

*v. Berg*, 640 F.3d 239, 252 (7th Cir. 2011) ("[Section 2422(b))] targets the sexual grooming of minors as well as the actual sexual exploitation of them. The statute's focus is on the intended effect on the minor rather than the defendant's intent to engage in sexual activity.").

The techniques used by a sex offender to influence a child to engage in sex with them is specialized information not within the knowledge of the average juror. Dr. Turner's expert testimony will help the jury to understand the evidence and to determine a fact in issue. The Seventh Circuit in *United States v. Dingwall,* 6 F.4th 744, 754 (7th Cir. 2021), noted that, "in prosecutions for sexual abuse of minors, courts frequently admit expert evidence about 'grooming' to help the jury understand how sex abusers of children develop an emotional relationship with a minor before initiating sexual activity." *See also United States v. Halamek*, 5 F.4th 1081, 1089 (9th Cir. 2021) (testimony of FBI agent on grooming assisted the jury's understanding about how seemingly innocent parental behavior was part of a plan to engage in sexual activity with a child); *United States v. Batton*, 602 F.3d 1191, 1201 (10th Cir. 2010) (psychologist's expert testimony on sex offenders using their position as close friends or family "to groom" their victims to trust them is "specialized information" not with in the average juror's general knowledge); *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006) (psychologist's testimony on grooming behaviors of sex offenders was admissible expert testimony on the *modus operandi* of sex offenders); *United States v. Leroy*, 787 Fed. Appx. 74, 79-80 (3d Cir. 2019) (expert witness' testimony about common behavior of child-sexual abuse

8

victims and common techniques of abusers "was relevant because it assisted the jury in learning about specialized topics—for example, she explained that the most significant factor in whether a victim comes forward is his relationship to the offender, that the use of alcohol or drugs can shame the victim into feeling he cannot come forward, and that many offenders ingratiate themselves to child victims by allowing victims to 'act more grown up around them'"); *United States v. Romero*, 189 F.3d 576, 585 (7th Cir. 1999) (FBI agent's expert testimony on the traits of "preferential sex offenders" was permissible because "most jurors would have little experience" in how child sex offenders operate).[7]

---

[7] In *United States v. Gonyer,* 2012 WL 3043020 (D. Me. July 24, 2012), the district court found that the Seventh Circuit's conclusion in *Romero* that expert testimony was necessary to dispel "from the jurors' minds the widely held stereotype of a child molester as a 'dirty old man in a wrinkled raincoat'" (189 F.3d at 584) was no longer applicable given the public's better understanding of child molesters ten years after the *Romero* case was decided. 2012 WL 3043020 *4. Kelly makes a similar argument here by referencing in his motion the Me Too movement. R. 243 at 7. The district court in *United States v. Miller,* 2022 WL 277345 (E.D. Tenn. Jan. 28, 2022), after considering *Gonyer's* reasoning, nonetheless allowed an agent to provide expert testimony about the behaviors of sex offenders and their effect on the child victims and the victims' caregivers. The *Miller* court found such testimony to likely not be within the knowledge of the average layperson. The court stated:

> "While the Court agrees that matters of interpersonal relationships are well within the ken of the ordinary juror, here [the agent] will testify about counterintuitive behaviors, i.e., how sex offenders and their child victims behave in ways that are contrary to common experience and why. The Court finds this testimony is particularly probative in this case because Defendant intends to challenge the veracity and consistency of the alleged victim's statements about the offenses. . . . Moreover, the undersigned disagrees that [the agent's] testimony infringes on the jury's province of determining intent or is somehow improper character evidence. Instead, her proposed testimony on grooming behaviors and their effects educates the jury on the effects of seemingly innocuous or counterintuitive behaviors and puts the jury in a better position to evaluate the factual testimony.

2022 WL 277345 *6. The *Miller* court allowed the proposed expert testimony on sex offenders and grooming so long as the expert did not apply the testimony to the specific facts in the case or opine whether the defendant's conduct constituted grooming behavior. Here, as in *Miller,* much of the conduct at issue is counterintuitive, not intuitive and known to lay people,

Expert testimony about grooming has been regularly admitted in sex trafficking trials in this district involving both minor and adult victims. The courts have found that such testimony was important to inform the jury about the common dynamics between the trafficker and his victims. *See, e.g., United States v. Biancofiori*, Case No. 16 CR 306, 2018 WL 2463387, at *3 (N.D. Ill. June 1, 2018); *United States v. Nichols*, Case No. 15 CR 756, 2019 WL 398775 (N.D. Ill. 2019); *United States v. Arnold*, Case No. 18 CR 206, R. 122 (N.D. Ill. Feb. 14, 2022).

The government will also question Dr. Turner about delayed disclosure of sexual abuse by victims. Expert testimony geared toward explaining to the jury victim-abuser dynamics, including the delayed disclosure of abuse to authorities and family members, has also been consistently approved by the courts.[8] "[E]xpert testimony about how individuals generally react to sexual abuse—such as not reporting the abuse and not attempting to escape from the abuser—helps jurors evaluate the alleged victim's behavior." *United States v. Johnson*, 860 F.3d 1133, 1140 (8th Cir. 2017). *See also United States v. Resnick*, Case No. 11 CR 68, 2019 WL 6912334, at *7 (N.D. Ind. Dec. 19, 2019) (discussing government's use of expert at child exploitation trial who testified about "the ways in which offenders 'groom' child victims" and that "delayed disclosure of abuse by child victims is common"); *United*

---

and the jury will benefit from expert testimony. Defendant Kelly has made clear his intent to challenge the veracity of the minor victims and, for this reason alone, the testimony about behaviors of sex offenders through Dr. Turner is particularly probative and appropriate.

[8] Kelly acknowledges that "Dr. Turner can testify generally about delayed reporting of sexual abuse (R. 243 at 6),but claims Dr. Turner "cannot say whether his understanding of 'delayed reporting' has any relevance to the facts of this case." *Id.* Dr. Turner, however, as noted, is not aware of the specific facts of this case.

10

*States v. Bennett*, 258 F. App'x 671, 679 (5th Cir. 2007) (approving a district court's decision "to admit expert testimony regarding behavior sometimes exhibited by sexual abuse victims in returning to their abusers"). Here, Dr. Turner's testimony "would be helpful in assisting the jury regarding matters beyond the understanding of the average lay person: to wit, why an alleged child sexual abuse victim might wait years to disclose the alleged criminal act." *United States v. Williams*, Case No. 7:09 CR 8, R. 117 (M.D. Ga. Aug. 30, 2010).

Kelly's assertion that expert testimony will not be helpful here because the "trier of fact need only decide whether [defendant Kelly] used a minor to create a visual depiction of sexually explicit conduct" (R. 243 at 4) is both mistaken and unduly narrow. The government, given the charges in the case, must show Kelly's enticement of the minors to engage in sexual activity. Similarly, Kelly's argument that expert testimony is not needed because consent is not at issue is misplaced. *Id.* at 4-5. *Kelly's* conduct as to the minor victims is at issue, even if the minor's consent is not, and expert testimony as to a sex offender's behavior and techniques will be helpful to the jury in assessing the facts in the case and the credibility of the minor witnesses. This is especially so here where, as noted, much of the minors' conduct will be counterintuitive to a layperson without the basis of information Dr. Turner can provide. *See, e.g., United States v. Isabella*, 918 F.3d 816, 844 n.26 (10th Cir. 2019) ("Expert testimony on grooming can be admissible to explain the 'modus operandi' of sex offenders. The methods sex offenders use are not necessarily common knowledge.").

11

## C. Dr. Turner's Testimony Is Reliable and Based on Sufficient Facts and Data

"The test of reliability is 'flexible' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Sundstrom v. Frank,* 630 F. Supp. 2d 974, 979 (E.D. Wis. 2007) (quoting *Kumho*, 526 U.S. at 147); *see also Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 155 (3d Cir. 1999) ("Not only must each stage of the expert's testimony be reliable, but each stage must be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rule."). "[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to the ultimate reliability determination." *Kumho*, 526 U.S. at 142 (emphasis in original). Trial courts are entrusted with ensuring the proposed expert possesses genuine expertise in their field and that their testimony "adheres to the same standards of intellectual rigor that are demanded in [their] professional work." *Tyvus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1997).

The proposed subjects of Dr. Turner's testimony satisfy these standards. The theories of sexual abuse behavior about which Dr. Turner will testify have been extensively tested and peer reviewed by the scientific community. *See, e.g.,* Eli Somer and Sharona Szawarcberg, Variables in Delayed Disclosure of Childhood Sexual Abuse, American J. of Orthopsychiatry, 71(3) (July 2001); Martine Herbert, Marc Tourigny, Mireille Cyr, Pierre McDuff, and Jacques Joly, Prevalence of Childhood Sexual Abuse and Timing of Disclosure in a Representative Sample of Adults from Quebec, Canadian Journal of Psychiatry, 54(9) (September 2009); N.

12

Bennet and W. O'Donohue, The Construct of Grooming Child Sexual Abuse: Conceptual and Measurement Issues, J. of Child Sexual Abuse 23(8) (2014). Dr. Turner has previously testified about the testing, peer review, and scientific consensus of these theories as well as to variables that contribute to or detract from the existence of such dynamics, and the government has produced to Kelly transcripts of Dr. Turner's prior testimony on these points.[9] Dr. Turner's proposed testimony is not just "anecdotal" in nature, as Kelly claims, but is instead based on Dr. Turner's extensive experience as a clinical and forensic psychologist, and research in his field.[10] R. 234 at 5-6.

### D. No *Daubert* Hearing is Necessary

Kelly requests that this Court conduct a *Daubert* hearing to determine whether Dr. Turner's testimony is proper. R. 243 at 7. No hearing is required, however, and this Court can and should deny Kelly's motion without one. The district court need not conduct a *Daubert* hearing "'where the reliability of an expert's methods is properly taken for granted.'" *United States v. Tingle,* 880 F.3d 850, 854 (7tth Cir.), *cert. denied,* 138 S.Ct. 1567 (2018), *quoting Kumho,* 526 U.S. at 152. As noted, courts have consistently approved the use of expert testimony in child abuse cases to explain concepts such as grooming and delayed disclosure. Dr. Turner

---

[9] These cases include *United States v. Ebert*, Case No. 19 CR 244 (W.D.N.C. 2020); *United States v. Telles*, Case No. 16 CR 424 (N.D. Ca. 2019); and *United States v. Disney*, Case No. 12 CR 287 (E.D. Pa. 2013).

[10] At least one of Dr. Turner's publications, "Grooming and Other Offense-Related Behaviors in Child Molestation Cases: An Analysis of Offender Self-Reported Behaviors and Beliefs," has been peer reviewed. *See* Ex. 2 at 2.

is qualified through his experience and his testimony is based on that experience as well as on widely recognized research in his field. Dr. Turner is also testifying to general information and will not render any opinions about Kelly or based on the specific facts in this case.

## IV. CONCLUSION

For the foregoing reasons, the government requests that the Court deny Defendant Robert Sylvester Kelly's motion to exclude the expert testimony of Dr. Darrel Turner and his request for a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

        Respectfully submitted,

        JOHN R. LAUSCH, JR.
        United States Attorney

By:   */s/ Brian Williamson*
        BRIAN WILLIAMSON
        JEANNICE APPENTENG
        ELIZABETH POZOLO
        JASON JULIEN
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 353-8897

Date: August 8, 2022