UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT SYLVESTER KELLY, aka "R. Kelly,"<br>DERREL McDAVID, and<br>MILTON BROWN, aka "June Brown" | Case No. 19 CR 567<br><br>Honorable Harry D. Leinenweber |

### GOVERNMENT'S RESPONSE TO MOTION TO COMPEL REGARDING DOJ-OIG INVESTIGATION AND LARRY MCGEE

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendant Kelly's motion to compel regarding materials from a DOJ-OIG investigation and communications with Larry McGee, (R. 242). For the reasons stated below, defendant's motion should be denied.

### BACKGROUND

On or about November 22, 2019, Federal Bureau of Prisons (BOP) staff at the Metropolitan Corrections Center (MCC) became aware that a YouTube blogger known as "TashaK" revealed information relating to Kelly's prison visits and communications with his girlfriends while he was being housed at the MCC. (Ex. A to Def.'s Mot., Affidavit ("Aff.") at 3.) Agents from the Department of Justice, Office of the Inspector General (OIG), began investigating and searched the internet to obtain further information about what TashaK disseminated on YouTube and other social media platforms. (Aff. at 5-8.) OIG learned that, between November 7, 2019,

and January 12, 2020, TashaK posted or discussed the following information on social media platforms: (1) a photograph that depicted Kelly's visitation list; (2) content from a phone call involving Kelly and two women with whom he was in a romantic relationship at the time; and (3) emails between Kelly and one of those women dated November 11, 2019 and November 14, 2019. (*Id.*)

OIG also collected materials from BOP, namely, BOP TruView[1] system logs that indicate the date and time that a BOP employee accessed records from the system, as well as the identity of the inmates whose records were accessed. (Aff. at 3.) These logs show which inmate's records a BOP employee accessed, but do not provide further specificity regarding which records within that inmate's file were accessed. (*Id.*)

OIG reviewed system logs for the period from July 15, 2019, through January 8, 2020, and learned that 60 BOP employees accessed Kelly's TruView records. BOP employee Officer A accessed Kelly's records during that period, but Officer A was not assigned to the MCC, and thus was not authorized to access Kelly's records during that period. (*Id.* at 4.) OIG obtained Officer A's personnel file. (*Id.* at 3.) OIG also reviewed a subset of email communications that Officer A sent or received from Officer A's official BOP email address, which existed on the BOP network. (*Id.* at 8.)

OIG compared the date, time, and content of the information regarding Kelly that TashaK disclosed with TruView logs and emails from Officer A's BOP email account and determined that Officer A accessed Kelly's inmate records on or around

---

[1] The TruView system is an application that contains information on inmates, including inmate emails, inmate telephone calls, inmate visitation lists, and inmate funds. (Aff. at 2.)

2

those same dates and times. (*Id.* at 5-9.) On or about February 27, 2020, OIG, in connection with the United States Attorney's Office, applied for and obtained a warrant to search Officer A's desktop computer for the material identified in the search warrant attachment. (*See* Aff. at Attachment B.)

Kelly now requests this Court to order the government to disclose to him specified information from the OIG's separate investigation. This information, however, is sensitive and unrelated to the instant case. The requested information includes the following:

- Officer A's personnel file;

- BOP TruView system logs reflecting access data and employee information of at least 59 BOP employees, none of whom are suspected of disclosing Kelly's information;

- Email communications that Officer A sent or received from Officer A's official BOP email address; and

- Materials resulting from the search of Officer A's BOP computer.

Kelly claims without support that *all* the materials OIG collected during its investigation "likely constitutes *Brady* information." Kelly does not cite a single supporting case and he does not identify how this information is relevant to allegations at issue in this case such as his alleged sexual abuse of minor girls in the 1990's and the alleged cover-up that followed. Kelly's motion, tethered only by Kelly's unsubstantiated speculation to this case, should be denied.

## ARGUMENT

Kelly argues that he is entitled OIG's investigative materials because the information that TashaK disclosed about him was "apparently shared" with a supposed "government cooperator" named Larry McGee. (R. 242 at 5.) The government has a duty to disclose any information in its possession that is favorable to the defense and material either to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 88 (1963). Information favorable to the defense includes evidence which "would tend to exculpate [the defendant] or reduce the penalty," *id.* at 87, and evidence regarding the reliability or credibility of a government witness. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972). But, here, Kelly's speculative and deficient claims do not fall within these parameters.

Kelly claims that an individual named Larry McGee received Kelly's visitation list, phone calls or emails with his girlfriends. But this is pure conjecture. Kelly fails to provide any confirmation of when or how Mr. McGee received any of Kelly's information or what specific information Mr. McGee allegedly received. Moreover, even if Mr. McGee had received such material, Kelly fails to articulate how Kelly's visitation list or phone calls constitutes *Brady* material that would tend to exculpate him. But, in any event, Kelly knows who visited him and with whom he talked on the telephone and, as such, the information is already in his possession. *See, e.g. Carvajal v. Dominguez*, 542 F.3d 561, 567-68 (7th Cir. 2008) (suppression of exculpatory or impeaching evidence, required to be disclosed to defendant pursuant to *Brady*, "does

4

not occur when the defendant could have discovered it himself through reasonable diligence") (internal markings omitted).

Kelly speculates that Mr. McGee has provided cooperation in the instant case because, Kelly claims, "McGee has publicly bragged" about providing government assistance and "McGee himself has publicly taken credit for turning various witnesses into government witnesses in Kelly prosecutions." (R. 242 at 3, 4-5). Mr. McGee has not before and is not now cooperating in the instant case. Mr. McGee will not be called by the government as a witness in this case. The government has not interviewed him in connection with this case. The prosecution team in the instant case is not privy to whatever cooperation Mr. McGee has provided in other federal cases in other districts.

The screenshot Kelly includes in his motion, from what appears to be a social media site, does not establish that Mr. McGee cooperated in the instant case. The screenshot shows a January 2020[2] email exchange. (*Id.* at 4.) Mr. McGee emailed AUSA Angel Krull a message, which the screenshot does not contain, and Ms. Krull responded, "Thank you for sending this." (*Id.* at 3, 4.) The screenshot includes entries from "The Green Man Show." The government is aware of one of the emails from the sender "The Grown Man Show" in Kelly's screenshot. The email is an unsolicited

---

[2] Defendant incorrectly claims that the email exchange in January 2020 occurred "during the exact time period during which Defendant's private communications and telephone calls were stolen by a BOP officer." (R. 242 at 3.) However, as noted in the affidavit attached to Kelly's motion, Officer A retired in December 2019, and the investigation revealed that Officer A accessed defendant's records in November and December 2019. (Aff. at 3, 5-8.) In any event, Kelly fails to provide any facts which show that Officer A communicated with Mr. McGee, or that either of them had any communications with a witness in this case.

5

message regarding material that is not relevant to nor at issue in this case. Specifically, in the email, the sender posts screenshots of posts from a Kelly supporter's blog discussing how others can support Kelly on social media. The email exchange does not establish that Mr. McGee provided substantive information to the prosecution team.[3]

Kelly also makes vague references in his motion to Officer A "influencing witness testimony." But Kelly does not identify how, where, when, or what government witness in this case Officer A allegedly influenced. Officer A is not a witness in this case. (R. 242 at 1.)[4]

Kelly misstates in his motion the contents of the affidavit submitted in support of the search warrant for Officer A's BOP computer. For example, Kelly, purportedly quoting the affidavit, states in his motion that the OIG investigation was opened to

---

[3] The prosecution team received, over time, approximately ten emails from Mr. McGee. The emails generally conveyed that Kelly supporters were harassing Mr. McGee or others. The listed recipients on the emails included multiple groups and agencies in addition to the prosecution team in the instant case.

[4] Pursuant to the Court's order on June 1, 2022 (R. 206), on June 14, 2022, the government provided defendant with a response to his first motion for production of investigative materials (R. 195). In its letter to defendant, enclosing the affidavit discussed above, the government stated the following: "The government reviewed the materials collected by DOJ-OIG pursuant to its investigation into a matter separate from this case (the "investigative materials"). The government did not observe any discoverable material within the investigative materials. Specifically, the investigative materials did not contain any Rule 16, *Giglio*, *Brady*, or Jencks Act (§ 3500) material related to this case. Further, there is no indication from the investigative materials that, (1) defendant Kelly's "attorney-client communications were provided to a YouTube blogger named TashaK," or to anyone; or, (2) that any of defendant Kelly's communications were "shared … with government witnesses [or] with an alleged government informant who was under federal indictment at the time the information was stolen." (R. 195 at 2.)" The government also stated that, as it relates to this case, "the government is not aware of any such "government informant" under federal indictment." Additionally, the government stated that Officer A and TashaK are not government witnesses in this case.

investigate the potential crimes of "'bribery, fraud, theft, narcotics trafficking, money laundering, ethics violations, and other official misconduct.'" (R. 242 at 2.) But the affidavit language Kelly references is in the section describing the affiant's training and experience about the types of cases he investigates, not the crimes under investigation by the OIG. (Aff. at 1.) Kelly also states in his motion that the investigation revealed that Officer A sold information to TashaK. (R. 242 at 2.) The affidavit, however, does not conclude, let alone mention, that Officer A sold anything to anyone.

## CONCLUSION

Kelly's Motion to Compel fails to provide credible support for releasing to Kelly all information obtained during a separate OIG investigation about a BOP employee. As noted, the government has reviewed this material and, in keeping with its *Brady* and *Giglio* obligations, determined that the material did not contain information subject to production in this case. The government requests that Kelly's Motion to Compel be denied.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ Jeannice Appenteng*
JEANNICE APPENTENG
ELIZABETH POZOLO
JASON JULIEN
BRIAN WILLIAMSON
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300

7