UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No.   19 CR 567 |
| | ) | |
| ROBERT SYLVESTER KELLY, | ) | Judge Harry D. Leinenweber |
|   also known as "R. Kelly," | ) | |
| DERREL MCDAVID, and | ) | |
| MILTON BROWN, | ) | |
|   also known as "June Brown" | ) | |

**GOVERNMENT'S MOTION TO EXCLUDE TESTIMONY FROM
DEFENDANT KELLY'S PROPOSED EXPERT**

Defendant Robert Kelly informed the Court that he "is not planning to raise mental defect under Rule 12.2." Yet Kelly now seeks to call an expert witness at trial to testify about his "intellectual disabilities." R. 232 at 11. Kelly has not provided proper notice under Rule 12.2 and, even if Kelly provided proper notice, the proffered expert testimony is inadmissible. The government requests that the Court exclude testimony from Kelly's proposed expert.

**I.   BACKGROUND**

On July 28, 2022, Kelly submitted a letter pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C) notifying the government of his intent to present at trial testimony from Dr. Daniel Martell regarding Kelly's "significant impairments in academic function," "illiteracy," "below average cognitive abilities," and "I.Q. which was measured at 79." The Rule 16 letter further indicated that "Dr. Martell will testify regarding the implications of Mr. Kelly's intellectual disabilities."

According to Kelly's disclosure letter, Dr. Martell conducted "intelligence testing" on Kelly on May 19 and May 20, 2022. Kelly also provided the government with two mitigation reports prepared by other individuals that refer to a "Forensic Neuropsychological Examination Report" by Dr. Martell dated June 6, 2022. The government has not yet received a copy of Dr. Martell's June 6, 2022 report or any other report from Dr. Martell.

## II. KELLY HAS FAILED TO COMPLY WITH THE NOTICE REQUIREMENTS OF RULE 12.2 AND THIS COURT SHOULD BAR THE EXPERT FROM TESTIFYING

Federal Rule of Criminal Procedure 12.2 sets out stringent notice requirements where, as here, a defendant seeks to introduce expert evidence relating to a mental condition bearing on the issue of guilt:

> If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must—within the time provided for filing a pretrial motion or at any later time the court sets—notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk.

Fed. R. Crim. P. 12.2(b). Upon the defendant's failure to give notice under Rule 12.2(b), the court "may exclude any expert evidence from the defendant on the issue of defendant's mental disease, mental defect, or any other mental condition bearing on the defendant's guilt." Fed. R. Crim. P. 12.2(d)(1).

Kelly's counsel entered her appearance in this case on February 18, 2022, and, since that time, has filed multiple pretrial motions, including a motion to dismiss and motion to sever. R. 184, 189, 196. The deadline to file motions *in limine* was

June 13, 2022. R. 206. Kelly did not file any motions related to his alleged mental defect. In his response to the government's motion *in limine* to preclude introduction of evidence or argument related to a mental defect defense (R. 211 at 37), Kelly stated that he "is *not* planning to raise mental defect under Rule 12.2." R. 232 at 11 (emphasis added). Then, less than three weeks before the scheduled trial date, Kelly for the first time provided the Rule 16 notice about his intention to present expert testimony concerning his mental condition.[1]

The Rule 16 letter states that Dr. Martell will testify "regarding the implications of Mr. Kelly's intellectual disabilities."[2] There is no question, based on this description, that Dr. Martell will seek to testify as to a "mental condition" "bearing . . . on the issue of [Kelly's] guilt." Kelly has also failed to file a notice with the clerk of his intention to provide expert testimony as Rule 12.2 requires him to do. Further, Kelly's Rule 16 letter directly conflicts with his assertion that he will not raise any mental defect defense under Rule 12.2, undermining any possible fair notice the letter may serve under the Rule. Accordingly, and on this basis alone, the

---

[1] On July 21, 2022, Kelly sent the government multiple expert reports along with a cover letter stating that the defendant "may call the following witnesses at trial: 1. Steve Kline, CVT; 2; Dr. Daniel A. Martell; 3. Dr. Renee Sorrentino; and 4. Dr. Park Dietz." The only witness included on the witness list that Kelly submitted to the Court on August 4, 2022, was Dr. Daniel A. Martell. Kelly's counsel later added Steve Kline to the witness list on August 9, 2022. This motion is confined to arguments related to Dr. Martell, as the government assumes that Kelly is not calling Dr. Sorrentino or Dr. Dietz to testify at trial.

[2] Kelly's Rule 16 letter is deficient in that it does not provide "the witness's opinions, the bases and reasons for those opinions, and the witness's qualification." Fed. R. Crim. P. 16(b)(1)(C).

3

Court should exclude the proposed testimony of Dr. Martell pursuant to Rule 12.2.

Rule 12.2(b) further provides that the Court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial preparation time, or provide other appropriate relief. Fed. R. Crim. P. 12.2(b). Kelly has made no effort to establish good cause and, without any such showing, it must be assumed that none exists here. The objective of Rule 12.2 "is to give the government time to prepare to meet the issue, which will usually require reliance upon expert testimony." Rule 12.2, Advisory Committee Notes. The government is also entitled to request that the defendant be examined under 18 U.S.C. § 4242 after receiving such notice. The significance of a Rule 12.2 mental defect notice is such that failure to give timely notice "commonly" results in a continuance of the trial and a corresponding delay in the administration of justice. *Id.* Here, the government is prejudiced by not being able to take the steps Rule 12.2 allows to examine Kelly's mental defect claim and any anticipated testimony of his expert witness. The government requests that the Court bar Kelly's expert witness on the basis of untimely notice alone.

### III. THE LEGAL STANDARD

The admission of expert testimony is governed by Federal Rule of Evidence 702 and the framework established by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009). This court acts as a gatekeeper and has a special obligation

4

to ensure that all expert evidence is both relevant and reliable. *Daubert*, 509 U.S. at 589; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). The first requirement of Rule 702 is that the expert's knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony helps the trier of fact if it is relevant, it is not within the jury's common knowledge and experience, and the testimony will not usurp the jury's role of evaluating a witness's credibility. *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006); *United States v. Libby*, 461 F. Supp. 2d 3, 7 (D.D.C. 2006). When cross examination, argument, and jury instructions are sufficient to allow the jury to assess the evidence, expert evidence is unhelpful and improper. *Daubert,* 509 U.S. at 591-92; *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999); *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004). The remainder of Rule 702 requires that expert testimony be based on sufficient facts or data, that it be the product of reliable principles and methods, and that the expert reliably apply the principles and methods to the facts of the case. Fed. R. Evid. 702(b)-(d). Kelly has the burden of establishing that his proposed expert evidence is admissible, *Daubert,* 509 U.S. at 592 n.10; *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987), and in determining such admissibility, this court has broad discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).

Even if proposed expert testimony is admissible under Rule 702, the court may

exclude it under Federal Rule of Evidence 403 if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, or wasting time. As the Supreme Court recognized in *Daubert*, "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it, and therefore, the judge in weighing possible prejudice against probative force . . . exercises more control over experts than over lay witnesses. *Daubert*, 509 U.S. at 595.

IV. **ARGUMENT**

A. **The Proposed Testimony is Inadmissible Under Rule 702**

Kelly's notice provides that Dr. Martell will testify about Kelly's significant impairments in academic function, his illiteracy, his below average cognitive abilities, an "I.Q. which was measured at 79," and the implications of Kelly's intellectual disabilities. Dr. Martell's testimony should be excluded, however, because it is not relevant, it is not helpful to the jury's understanding of the issues in the case, and it is unduly confusing and prejudicial.

Kelly has not shown how this testimony is relevant to the case. Kelly has not raised an insanity defense and, as a result, "[m]ental disease or defect does not otherwise constitute a defense." 18 U.S.C. § 17(a). Dr. Martell's testimony is also not relevant because, as described thus far, it does not negate the *mens rea* of a specific intent crime. The indictment charges Kelly with enticement of a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction (18 U.S.C. § 2251(a)); enticement of a minor to engage in sexual activity (18 U.S.C. § 2422(b));

6

conspiracy to obstruct justice (18 U.S.C. § 1519; 18 U.S.C. § 371); and conspiracy to receive and receipt of child pornography (18 U.S.C. §§ 2252A(a)(2) and (b)(1)). "The Seventh Circuit has held that a defense based on an inability to form the requisite intent to commit a crime is an 'extremely limited defense' because of its potential to confuse the jury." *United States v. Weis*, 891 F. Supp. 2d 1007, 1013 (N.D. Ill. 2012) (quoting *United States v. Ricketts*, 146 F.3d 492, 498 (7th Cir. 1998)). Expert testimony is allowed only when it can make a 'meaningful contribution' in guiding jurors in determining whether intent to commit a crime existed." *Id*. Here, Kelly's "illiteracy," "academic function," and IQ score would not affect his basic understanding of concepts such as age, what constitutes sexual activity, and what it means to make a recording of sexual conduct.

Kelly has failed to demonstrate how Dr. Martell's testimony would negate intent and not merely present a dangerously confusing theory of defense more akin to justification and excuse than a legally acceptable theory of lack of *mens rea*. *United States v. Litzky,* 18 F.4th 1296, 1303 (11th Cir. 2021); *United States v. Martinez*, 923 F.3d 806, 810 (10th Cir. 2019). "Congress chose to eliminate any form of legal excuse based on psychological impairment that does not come within the carefully tailored definition of insanity in [18 U.S.C. § 17(a)]." *United States v. Cameron,* 907 F.2d 1051, 1061 (11th Cir. 1990). Dr. Martell would thus have to provide a link between Kelly's alleged condition and the likelihood that, at the time of the offense, Kelly did not form the intent to commit the crimes with which he has

7

been charged. This Dr. Martell cannot do. Dr. Martell examined Kelly in May 2022—multiple decades after much of the charged conduct—and thus none of the resulting findings were specific to Kelly's mental state at the time of the alleged crimes. Kelly's reported IQ score reflects only Kelly's cognitive abilities as of this year. *See Weis*, 891 F. Supp. 2d at 1013 ("Evidence offered as psychiatric evidence to negate specific intent is admissible when it focuses on defendant's state of mind at the time of the charged offense."). Testimony from psychological experts such as Dr. Martell, including the introduction of IQ scores, is often disfavored for exactly these reasons. *See United States v. Lawson*, 459 F. Supp. 2d 1192, 1198-99 (M.D. Ala. 2006) (rejecting the admission of a psychological report as "not nearly probative enough on the issue of Lawson's mental state *at the time of the offense* to warrant consideration by a jury," where report failed to connect low IQ with intent to commit charged crimes) (emphasis added); *United States v. Williams*, 2015 WL 9480012, at *2 (D. Nev. Dec. 29, 2015) (finding no legal support for defendant's admission of "expert testimony of the defendant's IQ to establish that defendant is not generally capable of forming the requisite *mens rea* to commit the crime, absent a proper diminished capacity defense").

Kelly has also failed to show how Dr. Martell's testimony will be helpful to the jury.[3] Kelly has not shown how Dr. Martell's "intellectual disabilities" testimony

---

[3] Emblematic of this, Dr. Martell's expert report was initially prepared as part of Kelly's sentencing mitigation package following his September 27, 2021 conviction on charges in the Eastern District of New York. *See United States v. Robert Sylvester Kelly*, 1:19-cr-00286-

8

will assist the jury in determining, for example, whether Kelly harbored a purpose to produce the videos he is charged with creating in Counts One through Four or whether Kelly had knowledge that the videos would be transported in interstate or foreign commerce. *See United States v. Junkins,* 537 F.Supp.2d 1257, 1263 (S.D. Ala. 2008). Kelly has also indicated in other filings that his defense will be that the individuals referenced in the indictment were not minors at the time of his sexual encounters with them. This means apparently that Kelly will not contest that he made the videos or that he interacted with the referenced minors, substantially diminishing the need for any expert testimony about any alleged deficits in Kelly's cognitive abilities.

Kelly's notice is also deficient because he has not established the reliability of Dr. Martell's testimony. The government has not received from Kelly a copy of Dr. Martell's report and the Rule 16 notice provided scant information about Dr. Martell's testimony. Rule 702 requires that testimony from an expert be reliable and, without this showing, Dr. Martell's testimony should not be allowed to proceed.

Finally, even if Kelly satisfied Rule 702's requirements, Dr. Martell's testimony should be precluded under Rule 403 of the Federal Rules of Evidence

---

AMD-1 (E.D.N.Y. June 13, 2022), R. 306. Facts presented in mitigation at sentencing are ill-suited to determining guilt or innocence, rendering them inappropriate for the present stage of proceedings. *See Bracy v. Schomig*, 286 F.3d 406, 416 (7th Cir. 2002) (comparing the "largely objective" guilt phase of trial with "evidence in mitigation [which] often consists of testimony about what damaging forces a defendant has endured in his life or what kind of a person he otherwise is").

because the testimony will be unduly confusing and prejudicial. Evidence that a defendant's "logical thinking was impaired is the type of testimony that would be likely to confuse the jury." *Weis*, 891 F. Supp. 2d at 1014; *see also United States v. Buchbinder*, 614 F. Supp. 2d 1561, 1569 (N.D. Ill. 1985) (rejecting expert testimony regarding defendant's mental state as it "would not assist the jurors in determining the defendant's intent" and "would tend to confuse jurors regarding the defendant's poor judgment"). Testimony speaking to Kelly's poor judgment or inability to think clearly based on "below average cognitive abilities" would likewise serve to distract the jury from properly considering his intent to commit each alleged crime. The potential for confusion is compounded by the fact that Dr. Martell's proposed testimony at trial would not even address Kelly's mental state at the time of the alleged crimes.

### B. The Government Requests an Opportunity to Examine Kelly If Dr. Martell's Testimony is Allowed

Should the Court permit Dr. Martell to testify on Kelly's behalf, the government requests time to conduct its own examination of Kelly pursuant to Fed. R. Crim. P. 12.2(c)(1)(B) to determine Kelly's mental capacity. *See id.* ("If the defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court."). This examination is necessary to assess Dr. Martell's conclusions.

### V. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the

Court exclude Dr. Martell's testimony at trial. Should the Court allow Dr. Martell's testimony to proceed at trial, the government moves to conduct an examination of defendant pursuant to Fed. R. Crim. P. 12.2(c)(1)(B).

        Respectfully submitted,

        JOHN R. LAUSCH, JR.
        United States Attorney

By:   */s/ Brian Williamson*
        JEANNICE APPENTENG
        ELIZABETH POZOLO
        JASON JULIEN
        BRIAN WILLIAMSON
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 353-8897