UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 19 CR 567 |
| -vs- | ) | |
| | ) | Hon. Harry D. Leinenweber |
| ROBERT SYLVESTER KELLY, also known As "R.Kelly," DERREL MCDAVID, and MILTON BROWN, also known as "June Brown." | ) | |
| Defendants. | ) | |

### DEFENDANT KELLY'S MOTION TO EXCUSE FOR CAUSE POTENTIAL JURORS WHO HAVE SEEN ANY PORTION OF THE DOCUSERIES SURVIVING R. KELLY

NOW COMES, ROBERT S. KELLY, Defendant, by and through his counsel Jennifer Bonjean and respectfully files this motion to excuse all potential jurors who have watched any portion of the docuseries *Surviving R. Kelly*[1] where the docuseries: (1) explores the exact allegations that underscore this indictment, including Kelly's 2008 prosecution for child pornography of Minor 1; (2) includes extensive interviews with several individuals expected to testify at this trial; and (3) contains numerous allegations of other misconduct that is not and will not be introduced during this trial. Any potential juror who has watched any portion of this docuseries must be disqualified for cause, irrespective of whether he/she believes he/she can be fair, where too great a risk exists that such a juror would base his/her verdict on matters not introduced into evidence in the courtroom.

---

[1] For the purpose of this motion, Kelly seeks to incorporate the *Surviving R. Kelly* docuseries which can be streamed on Netflix https://www.netflix.com/title/81069393

1. *Surviving R. Kelly* is a Lifetime documentary detailing sexual abuse allegations by numerous women against the Defendant. It aired in January 2019 and was Lifetime's highest-rated program in two years. In January 2020, a second season premiered on Lifetime titled *Surviving R. Kelly II: The Reckoning. Surviving R. Kelly* is largely credited as the impetus for the wave of criminal charges that followed its premiere.

2. The docuseries devotes significant attention, indeed entire episodes to the subject matter of this trial. For example, Episode Three is titled "Sex Tape Scandal" which explores the sex tape that was the subject of Kelly's 2008 prosecution. Relatedly, Episode Four is titled "The People v. R. Kelly" which addresses the 2008 prosecution and allegations related to the first eight counts of this superseding indictment.

3. Indeed, the docuseries contains extensive interviews with some of the government's witnesses in this case, including Lisa Van Allen and Jerhonda Pace. Other individuals who appear in the docuseries are identified as potential witnesses in this matter including Stephanie "Sparkle" Edwards and Andrea Kelly. There is substantial overlap between the subject matter of this prosecution and the subject matter of the documentary.

4. Furthermore, *Surviving R. Kelly* contains hours of interviews with individuals who share a litany of other allegations of sexual misconduct against Kelly, including some allegations that the government has already conceded it will not introduce at trial. Just by way of example, the docuseries discusses allegations against Kelly in connection with his relationship with Aaliyah when she was underage. In response to Kelly's motion *in limine,* the government has already conceded that it will not introduce evidence related to allegations surrounding Kelly's relationship with Aaliyah. This Court acknowledged the government's concession, finding Kelly's motion moot in light of the government's position on this issue. Any juror who

watched the docuseries would be privy to such information that has already been excluded at this trial.

5. In light of the foregoing, there is no scenario under which any individual who watched *Surviving R. Kelly* could be qualified as a juror in this case whether the person admits it or not. Any person who has seen the documentary would possess information about the allegations in this indictment (and unrelated allegations) that would unquestionably interfere with his/her ability to decide the case based on the evidence that is introduced at trial. No one, even a well-intentioned person, would be capable of purging his brain of information obtained through the docuseries or separating information learned from the documentary that was never subject to cross-examination from testimony introduced at trial on the same subject matter.

6. The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury." U.S. Const. Amend. VI. "One touchstone of a fair trial is an impartial trier of fact – 'a jury capable and willing to decide the case solely on the evidence before it." *McDonough Power Equip. v. Greenwood,* 464 U.S. 548, 554 (1984). A juror is not impartial if his experiences, opinions, predispositions, biases, prejudices, interests, or relationships "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt,* 469 U.S. 412, 424 (1985).

7. Not only must potential jurors with actual bias be excused for cause, but courts have found that "when circumstances create too great a risk of affecting a juror's decision-making process, even if the juror is not, consciously, fully aware of the impact," a juror must be excused. *Crawford v. United States,* 212 U.S. 183, 196 (1909) (holding that the law says that, with regard to some of the relations which may exist between the juror and one of the parties, bias is implied, and evidence of its actual existence need not be given). *See also Smith v.*

*Phillips,* 455 U.S. 209, 221 (1982) (O'Connor, J., concurring) ("determining whether a juror is biased or has prejudged a case is difficult, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it."); *see also Hunley v. Godinez,* 975 F. 2d 316 (7th Cir 1992) (recognizing presumed bias in "extreme" situations where, for example, the prospective juror is connected to the litigation in such a way that is highly unlikely that he or she could act impartially during deliberations.)

8. This type of bias is called implied or presumed bias and is determined as a matter of law and "attributed to a prospective juror regardless of actual partiality. Jurors are considered impartial so long as they can "conscientiously and properly carry out their sworn duty to apply the law to the facts of a particular case." *Ross v. Oklahoma,* 476 U.S. 81, 86 (1988). A request to excuse a juror for cause "must be supported by specific causes or reasons that demonstrate that, as matter of law, the [juror] is not qualified to serve." *Gray v. Mississippi,* 481 U.S. 648, 653, n. 3 (1987). In certain circumstances juror bias will be presumed and the juror must be excluded, for example, where the juror is related to one of the parties or has a financial interest in the outcome of the case. *United States v. Polichemi,* 219 F. 3d 698, 704 (7th Cir. 2000).

9. In this case, a potential juror who has seen any portion of *Surviving R. Kelly* is actually prejudiced where there is simply no scenario under which an individual exposed to the contents of *Surviving R. Kelly* can be impartial. Some potential jurors in this case who have completed the questionnaires acknowledge as much, but some potential jurors who have seen the documentary have indicated that they are still capable of being impartial. This representation is in a word – absurd.

10. This case presents one of those rare circumstances where bias must be presumed by individuals who have seen *Surviving R. Kelly*, because the viewer has already gained an

understanding of the specific facts in this case through television interviews with actual witnesses.² Even the best-intentioned individual would invariably view a witness's testimony from the witness stand through a lens of whatever bias he/she developed after watching that same individual provide her account during a television interview.

11. To be clear, this is not a simple matter of a juror being exposed to negative pretrial publicity, indeed every prospective juror in this case has probably been exposed to some negative pretrial publicity about Kelly. Rather, this is an issue of potential jurors possessing a mountain of information about the specific allegations in this case and the witnesses' stories that will play center stage at this trial and may or may not be admissible. Allowing an individual to sit on this jury who has seen *Surviving R. Kelly* is no different than allowing a juror to sit on the jury who was permitted to preview the discovery in this case.

12. In the conventional criminal case in which the jury is asked only whether guilt has been prove beyond a reasonable doubt, "[t]he bias or prejudice of even single juror would violate [a defendant's] right to a fair trial."

13. Thus, this Court should excuse for cause all potential jurors who have seen any portion of *Surviving R. Kelly* and those potential jurors who have been exposed to pretrial publicity about this case must be scrutinized and questioned to determine whether they are *capable* of serving as an impartial witness.

---

² Just by way of example, the following clip is a portion of extensive interviews from *Surviving R. Kelly* with one of the state's star witnesses Lisa Van Allen. https://www.youtube.com/watch?v=yREP5i3Jhtg It is difficult to imagine that any juror would be equipped to listen to Van Allen's trial testimony with an impartial viewpoint and without allowing prior information received during the documentary shade her assessment of Van Allen's in-court testimony. This is precisely the scenario the law prohibits.

Respectfully Submitted,

/S/JENNIFER BONJEAN

Bonjean Law Group, PLLC
750 Lexington Ave., 9th Fl.
New York, NY 10022
718-875-1850

## **CERTIFICATE OF SERVICE**

      I, Jennifer Bonjean, filed this Motion to Exclude for Cause All Potential Jurors Who Have Watched *Surviving R. Kelly* on August 14, 2022 via ECF. All parties were served with this response via ECF.

                                                              /s/JENNIFER BONJEAN