UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT SYLVESTER KELLY, aka "R. Kelly,"<br>DERREL McDAVID, and<br>MILTON BROWN, aka "June Brown" | Case No. 19 CR 567<br><br>Judge Harry D. Leinenweber |

**GOVERNMENT'S SECOND SUBMISSION REGARDING ADMISSIBILITY
OF PURPORTED BUSINESS RECORDS PROPOSED
BY DEFENDANT MCDAVID**

On September 4, 2022, defendant Derrel McDavid submitted to the court eight documents that McDavid "intends to authenticate and offer through Marta Johansen," a former administrative assistant of private investigator Jack Palladino. Accompanying these documents is a purported declaration by Ms. Johansen in which she represents that "these records <u>appear to be</u> the original or duplicates of the original records kept in the custody of Palladino & Sutherland, Inc." (emphasis added).

In its prior submission, the government set out in detail its objection to the wholesale admission of these proposed documents on the basis of the business records exception, Fed. R. Evid. 803(6). *See* R. 299. In particular, the government argued Ms. Johansen could not serve as a qualified witness to authenticate and admit the proposed documents under Fed. R. Evid. 803(6)(D), given her only passing familiarity with their originality. *Id*. at 4-5. The government also established that the proposed

documents were not immediately relevant to a fact issue in this case and may only be conditionally so upon the testimony of McDavid at trial. *See* Fed. R. Evid. 401, 104(b).

For the reasons set forth below, the government renews its objection to the admission of these proposed documents in evidence. To the extent the court nonetheless considers the proposed documents' admissibility, it should do so through a two-step inquiry that first considers their authenticity and then evaluates the foundation for their relevance in relation to McDavid's state of mind. The admission of these proposed documents—reflecting in many cases unfettered and highly biased commentary by a private investigator working on behalf of Kelly to recover tapes depicting child pornography—on Ms. Johansen's authentication alone risks significant prejudice and would run afoul of a suite of evidentiary rules as further detailed below.

I. **ARGUMENT**

None of the eight documents proposed by McDavid is immediately identifiable as a business record as defined by Fed. R. Evid. 803(6). As set forth in the government's first submission and reply on this issue, *see* R. 299, 303, each proposed document bears significant questions of whether the "source of the information [and] the method or circumstances of preparation indicate a lack of trustworthiness." *United States v. Croft*, 750 F.2d 1354, 1364 (7th Cir. 1984). This is because most of the documents are addressed to attorneys or were otherwise prepared in the context of anticipated litigation, with some directly referencing efforts to develop impeachment evidence on expected witnesses. *See Jordan v. Binns*, 712 F.3d 1123,

1136 (7th Cir. 2013). Others suffer from a significant lag between the creation of the document itself and the underlying event or transmission of information. *See* Fed. R. Evid. 803(6)(A). And, as noted above, it is not clear that Ms. Johansen can attest to the proposed documents as being kept in the regular course of Mr. Palladino's business. *See* Fed. R. Evid. 803(6)(B)-(D). To authenticate the documents or to admit them as business records, the court will first have to measure whether Ms. Johansen can testify as to the documents' adequacy under "all these conditions," *see id.*, and in a manner that overcomes the government's showing of indicia of untrustworthiness.

But "[t]he determination that [a document] meets the test of authenticity does not end the inquiry" where "[d]efendant has raised relevance objections to many of the [documents] and argues that the contents of all of them are inadmissible hearsay." *United States v. Latchin*, 2007 WL 9724208, at *6 (N.D. Ill. Jan. 22, 2007). As previously noted and as described in detail below, the proposed documents are potentially highly prejudicial, replete with hearsay and hearsay-within-hearsay, and often lack relevance to a fact issue in this case (a factor to which Ms. Johansen will be unable to speak to). The apparently wide-ranging nature of Mr. Palladino's investigation means that the proposed documents relate to individuals that are neither witnesses nor otherwise implicated at trial and events that are not within the bounds of the conduct charged in the Superseding Indictment. Where the documents do discuss relevant conduct and personalities, they are colored by the biased commentary of investigators hired at Kelly's behest. And the documents contain, and indeed rely on, purported statements of third parties, in at least two instances taking

the form of unsigned "declarations." Authentication offers a solution to none of these issues.

The government expects that McDavid will attempt to surmount these evidentiary barriers by testifying as to how reading the documents impacted his state of mind, pursuant to Fed. R. Evid. 803(3). It remains to be seen whether McDavid's testimony will qualify under that particular exception to hearsay. *See United States v. Jackson*, 780 F.2d 1305, 1315 (7th Cir. 1986). But even if his testimony can ameliorate hearsay concerns, it does nothing to remedy lack of relevance or the bias and prejudice inherent in the proposed documents as outlined below:

- **Document 1** is a collection of summaries of telephone conversations with a non-witness individual named A.W., a purported victim of Kelly's in conducted unrelated to the charged offenses. Document 1 should be excluded under Fed. R. Evid. 401 and 403.

- **Document 2** is a "brief summary" sent to a public relations/crisis communications firm describing a private "sting" operation that targeted persons unrelated to the charged offenses. Document 2 also merits exclusion under Fed. R. Evid. 401 and 403.

- **Document 3** is an unsigned "declaration" of non-witness A.W. the contents of which are unrelated to the charged offenses. Document 3 is likewise excludable under Fed. R. Evid. 401 and 403.

- **Document 4** is a memorandum to counsel summarizing interviews of Jane and members of her family. Document 4 is excludable under Fed. R. Evid.

403 as cumulative of the direct witness testimony of Jane, Susan, and Detective Everett at trial and as containing prejudicial statements regarding Jane and other witnesses.

- **Document 5** is an unsigned "declaration" of Jane, who has already testified and been subject to cross-examination at trial. Document 5 carries the significant potential to be unfairly prejudicial, confuse the issues, and mislead the jury and should be excluded under Fed. R. Evid. 403, particularly given that the defense chose not to present Jane with this document during cross-examination.

- **Document 7** is a memorandum to counsel regarding two intermediaries, Chuck Freeman and Charlucci Finney, with regard to their knowledge of and ability to resolve a matter unrelated to the charged conduct. Document 7 contains improper extrinsic evidence of a witness's truthfulness under Fed. R. Evid. 404(b) and 608(b), along with prejudicial characterizations of Freeman and the nature of the investigation.

- **Document 8** is a compilation of documents, including memoranda to counsel and reports summarizing witness interviews, conducted in an effort to gather "impeachment" evidence against Freeman. Document 8 is impermissible under Fed. R. Evid. 404, 608, and 609. It also contains commentary from investigators with regard to Freeman which would be prejudicial under Fed. R. Evid. 403.

- **Document 9** is an invoice purporting to itemize activities and billable hours related to efforts to recover items for Kelly. Document 9 contains prejudicial descriptions of investigative work conducted by Palladino which would violate Fed. R. Evid. 403.

Unless and until McDavid testifies, these documents will remain only conditionally relevant. *See* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."); *see also* R. 299 at 8-9. The proposed documents cannot be admitted prior to McDavid taking the stand and cannot be admitted on the authentication of Ms. Johansen alone. Prejudicial and cumulative content, along with improper character evidence, can only be resolved through redactions after a proper relevance foundation has been laid, if the document is not precluded from admission in its entirety.

Ultimately, the only means by which to safeguard the jury from receiving improper evidence in the form of the proposed documents is the two-step process proposed by the government: *first*, to determine the authenticity of the proposed documents through the testimony of Ms. Johansen and *second*, to determine their relevance—and admissibility—through the testimony of McDavid as to how they affected his state of mind. Anything short of the above-described process bears significant risk of prejudicing the jury through the introduction of improper evidence.

II. **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court exclude the proffered documents from admission into evidence at trial, or, in the alternative, conducts a two-step test to determine both their authenticity and relevance prior to admission.

                                    Respectfully submitted,

                                    JOHN R. LAUSCH, JR.
                                  United States Attorney

By:   */s/ Brian Williamson*
        JEANNICE APPENTENG
        ELIZABETH R. POZOLO
        JASON A. JULIEN
        BRIAN WILLIAMSON
        Assistant U.S. Attorneys
        219 South Dearborn St., Rm. 500
        Chicago, Illinois 60604
        (312) 353-5300

Dated: September 6, 2022