UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 CR 567 |
| | ) | |
| -vs- | ) | |
| | ) | Hon. Harry D. Leinenweber |
| | ) | |
| ROBERT SYLVESTER KELLY, also known As "R.Kelly," DERREL MCDAVID, and MILTON BROWN, also known as "June Brown." | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CRIM. P. 33 WHERE THE GOVERNMENT CONCEALED IMPEACHING EVIDENCE THAT "JANE" HIRED A LEGAL AND EXPERT TEAM FOR THE PURPOSE OF SEEKING $13 MILLION IN RESTITUTION FROM DEFENDANT AND FALSELY TESTIFIED ABOUT IT AT <u>TRIAL WITHOUT CORRECTION FROM THE GOVERNMENT</u>**

NOW COMES, the Defendant, ROBERT S. KELLY, by and through his counsel, Jennifer Bonjean, and moves this Court to grant a new trial where Defendant's Due Process guarantees were violated where the government's key witness, Jane, denied during her trial testimony that she had made a decision about whether she would seek restitution. In truth, Jane had already hired a lawyer and a team of experts to prepare a restitution package for this court that the government presents in support of its claim that Jane is entitled to a whopping $13M in restitution.[1]

Because the government *knew* Jane had hired a lawyer and expert team to create a restitution package (for which Jane paid 55K that she seeks to pass along to the Defendant) and

---

[1] According to submissions by Jane's attorney and her expert team, she believes she is entitled to as much as $20M in restitution. Defendant will address what restitution Jane is entitled to, if any, in his sentencing submissions.

failed to disclose this information to the Defendant, and then failed to correct Jane's false testimony on the subject matter during her trial testimony, Defendant's Due Process rights under *Brady, Giglio, and Napue* were violated, and he is entitled to a new trial.

    1.    Federal Rule of Criminal Procedure 33 provides that "the court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." The Seventh Circuit has interpreted the "interest of justice" to require a new trial in situations on which "the substantial rights of the defendant have been jeopardized by errors or omission during trial." *United States v. Kuzinar,* 881 F. 2d 466, 470 (7th Cir. 1989). Unlike Rule 29, Rule 33 "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice," but such "discretion should be exercised sparingly." *United States v. Sanchez,* 969 F. 2d 1409, 1413-14 (2d Cir. 1991).

    2.    Jane testified as the government's star witness at trial on August 19, 2022. During cross examination, Defendant's counsel questioned her about her expectations of restitution in the event Defendant was convicted.

    Q.    And isn't it true that the U.S. Attorney's office told you that you would be entitled to restitution if Mr. Kelly was convicted, right?

    A.    Yes.

    Q.    And restitution is money, right?

    A.    Yes.

    Q.    And you are seeking restitution or will seek restitution if he is convicted, correct?

    A.    **I'm still undecided with that. No, that is not correct.**

    Q.    You haven't decided whether you're going to seek restitution?

    A.    **No.**

> Q. But you know you have the right to seek restitution correct?
>
> A. That is correct. (R914-915)

3. Jane's testimony was not truthful when she claimed she was "undecided" about whether she would seek restitution from the Defendant. She knew full well she was seeking restitution in an extraordinary amount if Defendant was convicted. The government knew it too.

4. Prior to Jane's (and her parents') cooperation with the government, they retained the legal services of Boston-based attorney Christopher L. Brown. Brown negotiated immunity agreements for Jane and her parents, and further retained an expert team to put together a "restitution package" on behalf of Jane for this Court.[2] *See* Brown's attached billing invoice.[3]

5. Although Jane falsely claimed at trial that she had not decided whether to seek restitution, the government produced documents yesterday, including billing records from Jane's counsel, a nine-page letter-motion from Jane's counsel arguing for restitution in the amount of roughly $20M, and two lengthy expert reports that reflect that Jane absolutely *knew* of her intent

---

[2] Jane and her legal and expert team have no standing to argue for restitution or even to present evidence in support of restitution as they are not parties to this case. Courts have recognized that notwithstanding the rights reflected in the restitution statutes, crime victims are not parties to a criminal proceeding. *Marino v. Ortiz,* 484 U.S. 301, 304 (1988); *United States v. Aguirre-Gonzalez,* 597 F. 3d 46, 53 (1st Cir. 2010) (crime victims have no right to directly appeal a defendant's sentence); *United States v. Grundhoefer,* 916 F.2d 788, 793 (2d Cir. 1990) (holding that a crime victim lacks Article III standing to appeal under the MVRA); *United States v. Stoerr,* 695 F. 3d 271 (3d Cir. 2012) (crime victim has no standing to challenge restitution order); *United States v. Mindel,* 80 F. 3d 394, 398 (9th Cir. 1996) (crime victim does not have standing under the VWPA to challenge the district court's order rescinding restitution payments); *United States v. Johnson,* 983 F. 2d 216, 217 (11th Cir. 1993) (holding that VWPA "does not afford a victim . . . standing to appeal the rescission of a restitution order"); *United States v. Monzel,* 641 F. 3d 528, 544 (D.C. Cir. 2011) (same); *United States v. Kovall,* 857 F. 3d 1060 (9th Cir. 2017) (holding that it joins the First, Third, Fifth, Eight, and Tenth circuits in holding that a victim of crime may not appeal a restitution order under the MVRA).

[3] Mr. Brown also includes an affidavit which is a little puzzling as it reference's Jane's "copyright" claim and seems to have been prepared in connection with a different case.

to seek restitution from Defendant on August 19, 2022 when she testified otherwise. Not only did she know of her intent, she apparently invested 10K into assembling an expert team to prepare expert reports that supports an outrageous request for restitution of nearly $20M - as if she was litigating a complex civil case - absent the burden of proof and pesky causation requirements that would be required in a civil litigation.[4]

6. Not only did Jane give false testimony, the government knew her testimony was false and failed to correct it in violation of *Napue v. Illinois*. A second such violation on the part of the government. As Mr. Brown's billing records reflect, he began discussing restitution with the government in April 2020 -more than two years before Jane testified at Defendant's trial. Jane, through her counsel, retained two experts, Dr. Cooper and Dr. Smith in February 2021.[5] Prior to April 2022, Jane subjected *herself* to a so-called "independent evaluation"[6] by Dr. Cooper, a forensic pediatrician, retained and paid for by Jane, who prepared a report on April 30, 2022 that is entitled "Expert Opinion of Dr. Sharon W. Cooper Regarding Victim Jane Doe; **United States versus Robert Kell**y, 30 April 2022." In her report dated April 30, 2022, Dr. Cooper declares that one of the purposes of the report was to "determine restitution."

---

[4] Jane's request for restitution seeks "lifetime care" for a myriad of ailments that seem to have no connection whatsoever to harm allegedly committed by Defendant.

[5] Defendant has only attached Mr. Brown's billing records for the purpose of showing the timing of Jane's direct involvement in developing a "restitution package" that belies her sworn testimony and the government's knowledge of Jane's strong interest in restitution. Defendant does not attach Mr. Brown's letter-motion or the two expert reports that Jane paid to have prepared because such information contains confidential medical information about Jane but also because such evidence should not be considered by this Court where Jane is not an independent party to this litigation and has no standing to submit such materials to this Court. These issues will be addressed later in forthcoming sentencing memoranda.

[6] An independent medical evaluation is not an evaluation conducted by one's own retained expert or doctor.

7. On August 12, 2022, Mr. Brown had more discussions with the government related to filing for restitution. On that same day, an expert report from Dr. Smith of Smith Economics was submitted to Mr. Brown that reflected his lengthy opinion in which he "calculate[d] the value of certain losses subsequent to the injury of Jane."

8. Jane, through her counsel Mr. Brown, paid these experts roughly $10K for services rendered *prior* to her testimony on August 19, 2022.

9. In light of the foregoing, it is simply not believable that Jane was "undecided" about whether she would seek restitution from Defendant when she testified on August 19, 2022. The documents submitted by the government show that Jane was significantly motivated by the prospects of restitution to the tune of $20M and the government knew this.

10. As defense counsel pointed out, Jane's motive and bias was a fair area of cross-examination. A motive of $20M is a particularly strong motive that defendant should have been able to explore with Jane. The government should have disclosed Jane's intent to seek extraordinary amounts of restitution which apparently was the reason she ultimately cooperated with the government; it certainly was obligated to correct her false testimony on this point. Instead, it sat silent when Jane was less than honest about her interest in restitution denying Defendant his right to cross-examine her interest, bias, and motive.

11. The Supreme Court has held that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois,* 360 U.S. 264, 269 (1959); *See also, Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (new trial required where government failed to correct false testimony by key witness about a benefit, he received for testifying and the prosecutor should have been aware of the falsehood). The same result obtains when the government, although not soliciting

false evidence, allows it to go uncorrected when it appears. *Napue,* 360 U.S. at 269. When a conviction is obtained through the knowing use of false testimony, it must be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id*. at 271.

12. The government will likely argue that Jane's testimony denying her strong interest in restitution could not have affected the judgment of the jury. Even if this was true for the child pornography counts, Jane's credibility was critical in various other way, including whether she participated in sex acts with her friend Pauline and the Defendant when they were underage rather than when they were the age of legal consent. To credit the story that Jane, Pauline, and Defendant had so-called threesomes, in the face of contrary evidence, the jury likely credited Jane's testimony on this point. Thus, Jane's credibility was important to this count of the indictment, and her testimony questionable where the defense presented evidence that any threesomes that occurred were *after* the young women were of legal consenting age. Indeed, in her so-called "independent" examination with Dr. Cooper, Jane failed to disclose any of the threesomes that she testified about at trial (which is arguably itself a *Brady* violation if the government had access to that report). In short, the jury did not accept Jane's testimony hook, line, and sinker on all matters. Thus, testimony that could have further impacted her credibility, such as her motivation to shape her story in ways that were not entirely honest because she stood gain significant restitution, as did her friend Pauling was material and could have affected the judgment of the jury.

13. Although Defendant will raise this issue in his sentencing memoranda, restitution is not meant to be a substitute for emotional distress damages or punitive damages. The inherent and primary purpose of restitution is to compensate the victim of crime rather than to affect the

6

criminal in some way; restitution is not intended to be punitive. *United States v. Newman,* 144 F. 3d 531, 541 (7th Cir. 1998). Awards are designed to compensate victims for *losses*, rather to serve retributive or deterrent purposes. *Id.*

14. If Courts are going to permit the government and victims to use restitution statutes as a means to end run civil litigation and compensate victims for "emotional distress" or to punish the defendants then Courts also need to consider whether *ex post facto* rules should apply and whether Defendant has the right under *Brady* to know if the government intends to seek outrageous sums of money in restitution. It is difficult to deny that that $13M could be a very strong motivator for victim witnesses and could reflect on the credibility of a witness.

15. These issues will be fleshed out further in Defendant's sentencing memorandum, but for the purposes of this motion, Defendant maintains that Jane's false testimony regarding restitution, and the government's failure to correct it denied Defendant of his Due Process rights as well as his Sixth Amendment right to confront his accuser about matters that reflected on her credibility.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant a new trial

Respectfully Submitted,

/s JENNIFER BONJEAN
*Attorney for Robert Kelly*

Bonjean Law Group, PLLC
750 Lexington Ave., 9th Fl.
New York, New York 10022
718-875-1850

7

## **CERTIFICATE OF SERVICE**

      I, JENNIFER BONJEAN, an attorney licensed to practice law in the State of Illinois, hereby certifies that she filed the attached Rule 33 Motion on February 4, 2023, by filing the motion via the Northern District of Illinois Electronic Filing System. The government and other parties were automatically served via ECF.

      /s/JENNIFER BONJEAN