IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>               Plaintiff,<br><br>    v.<br><br>**ROBERT SYLVESTER KELLY, a/k/a "R. Kelly," DERREL McDavid, and MILTON BROWN, a/k/a "June Brown",**<br><br>               Defendants. | **Case No. 19 CR 567**<br><br>**Judge Harry D. Leinenweber** |

# ORDER

Before the Court is Defendant Robert Kelly's ("Kelly") Motion for a Judgment of Acquittal (Dkt. No. 387) and two of Kelly's Motions for a New Trial (Dkt. Nos. 388, 408). For the reasons stated herein, the Motions are denied.

# STATEMENT

### A. Motion for Judgment of Acquittal

Kelly moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c). A judgment of acquittal should only be granted when "the evidence is insufficient to sustain the conviction." *United States v. James*, 464 F.3d 699, 705 (7th Cir. 2006). When analyzing a motion for a judgment of acquittal, a court views the evidence in the light most favorable to the Government. *Id.* A court may only overturn a conviction if "the record contains no evidence from which a rational jury could have returned a verdict of guilty." *Id.*

Kelly's Motion challenges his convictions on all six counts. The Motion can be divided into two parts: Kelly's convictions on the child pornography counts (one through three), and the inducement counts (nine, ten, and twelve). Kelly's Motion states that he is challenging his conviction of count eleven (which he was acquitted of), rather than count twelve (which he was convicted of). Upon review of the Motion, it appears to the Court that Kelly is actually challenging his conviction on count twelve so the Court will analyze the argument as to that count.

### *1. Counts One through Three*

Counts One through Three of the superseding indictment were all brought under 18 U.S.C § 2251 (a). The statute penalizes anyone who induces a minor to engage in sexual conduct for the purpose of creating a visual depiction of the conduct. The statute also requires the depiction be transported or transmitted in interstate commerce. Here, Counts One through Three charged Kelly with the creation of Videos One, Two, and Three. Each video contains a depiction of Kelly engaging in sexual conduct with Jane, a minor at the time.

Kelly argues that the Government did not prove each element of the statute at trial. Specifically, Kelly argues that the Government failed to show that Kelly enticed minor Jane into sexual conduct with the purpose of creating a video. Kelly also argues that the Government failed to prove that the Videos traveled in interstate commerce. In the alternative, Kelly argues that the Government failed to prove that Kelly knew that the videos would be put in interstate commerce.

The Court disagrees with Kelly's arguments. First, there is ample evidence that Kelly induced Jane into sexual conduct. Jane testified

about how Kelly gradually persuaded her into sexual activity with him. Jane described how Kelly induced her into making Videos One through Three and that Kelly positioned the camera and told Jane exactly what to do and say while having sex with him.

Second, the statute does not require that the sexual conduct be for the sole purpose of creating a video. It is enough that creating a video depiction be a purpose of the sexual conduct, it need not be the sole purpose. *United States v. Merrill*, 23 F.4th 766, 770 (7th Cir. 2022), *see also United States v. McCauley*, 983 F.3d 690, 697 (4th Cir. 2020). Kelly also seemingly argues that there was no commercial purpose associated with the production of these videotapes. The statute does not require that the video be made for any commercial purpose. *United States v. Andersson,* 803 F.2d 903, 905-06 (7th Cir. 1986), *see also United States v. Sirois*, 87 F.3d 34, 40 (2d Cir. 1996) ("Congress has unambiguously indicated that a defendant does not need to have a commercial motive to be liable under § 2251(a)").

Third, the Government presented evidence showing that the images on Videos One, Two, and Three, traveled in interstate commerce. Kelly argues that the Government was required to show that the physical videos were transported in interstate commerce. The term "visual depiction," as used in § 2251(a) is defined in 18 U.S.C. § 2256(5). There, visual depiction is defined as data "capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means." Thus, transportation of the data on Videos One, Two, or Three, would satisfy the statute, regardless of what medium housed that data. The Government produced testimony establishing

that the data from Video One traveled across the country. Specifically, Betty Allwang from the National Center for Missing and Exploited Children ("NCMEC") testified that the NCMEC received a series depictions called the paneled room series from law enforcement agencies across the country. Ms. Allwang also testified that she compared the paneled room series with Video 1 and that she concluded that the paneled room series was from Video One.

Kelly argues that the Government's evidence that Videos Two and Three traveled in interstate commerce was insufficient. The Government put on testimony from Charles Freeman, Lisa Van Allen, and Keith Murrell establishing that Videos 2 and 3 traveled in interstate commerce. Kelly argues that Charles Freeman and Lisa Van Allen's testimony was "rejected whole cloth by the jury." (Mot. for Jdgmt. of Acquittal ¶ 14, Dkt. No. 387.) Kelly's evidence for this assertion is that he was acquitted of Counts Four, Six, Seven, and Eight of the indictment. Kelly argues that by acquitting him on these charges, the jury necessarily concluded that the tapes acquired by Van Allen and Freeman did not contain child pornography. This argument does not hold water. Like Counts One through Three, Count Four was brought under 18 U.S.C. § 2251(a). Counts Six through Eight were brought under 18 U.S.C. § 2252 and charge Kelly with conspiracy to receive child pornography and receipt of child pornography. For a jury to convict under either statute, the Government must prove each element of the charged offense. If the Government fails to prove even one element, a jury cannot convict. When reading its verdict, the jury did not explain why it chose to acquit Kelly of Counts Four through Eight. It did not explain that it was acquitting Kelly of those Counts

because it found that Videos Two, Three, and Four did not contain child pornography. In fact, it is quite the opposite. By convicting Kelly of Counts Two and Three, the jury communicated that it found that Videos Two and Three contained child pornography and were transported in interstate commerce. The Court finds no reason to disturb the jury's verdict now.

In the alternative, Kelly argues that he was not aware that the videos would be transported in interstate commerce. This argument fails. 18 U.S.C. § 2251(a) is clear that knowledge is only one of the ways the statute may be satisfied. Actual transportation also satisfies the statute. Here, the Government proved that Videos One through Three were actually transported in interstate commerce. Thus, Kelly's knowledge is irrelevant.

Kelly's Motion for a Judgment of Acquittal on Counts One through Three is denied.

### *2. Counts Nine through Eleven*

Counts Nine through Eleven of the indictment were all brought under 18 U.S.C. § 2422(b). § 2422(b) prohibits the use of facility of interstate commerce to induce a minor to engage in criminal sexual conduct. Kelly was convicted of using the telephone to induce and entice three minors, Jane, Nia, and Pauline, into criminal sexual conduct. Kelly's argument on these counts is twofold: first, that he did not use a facility of interstate commerce; second, that he did not induce the minors in question, Jane, Nia, and Pauline, to engage in criminal sexual activity using the phone.

First, the telephone is a facility of interstate commerce, even when used in an intra state fashion. *See United States v. Richeson*, 338 F.3d 653, 660 (7th Cir. 2003) (citing *United States v. Marek*, 238 F.3d 310 (5th Cir.2001)); *U.S. v. Nader*, 542 F.3d 713, 720 (9th Cir. 2008) ("intrastate telephone calls involve the use of a facility in interstate commerce.") (internal quotation marks omitted); *see also* 15 U.S.C Section 78dd-3(f)(5) (stating that intrastate use of a telephone would qualify as interstate commerce in a different context).

Second, the Government provided ample evidence to show that Kelly used the telephone to induce Jane, Pauline, and Nia to engage in criminal sexual activity. The Seventh Circuit has found that "child sexual abuse can be accomplished by several means and is often carried out through a period of grooming." *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011). Here, the Government elicited testimony that Kelly used the phone to groom Jane, Pauline, and Nia, into committing illegal sex acts with him. Jane testified that her telephone conversations with Kelly that started innocuously but progressed into more sexual topics. After some time, Kelly persuaded Jane to have phone sex, which then led to physical sex. Nia testified that she and Kelly had regular phone calls, which led to Kelly enticing her into sexual conduct when they met in person. Pauline testified that she had regular sexual contact with Kelly, all arranged over the phone.

Looking at the evidence in the light most favorable to the Government, the Court finds that there was enough evidence to sustain a guilty verdict on all six counts Kelly was convicted of. Kelly's Motion for a Judgment of Acquittal is denied.

**B. Motions for a New Trial**

Kelly moves for a new trial under Federal Rule of Criminal Procedure 33. If a district judge believes that "a serious danger that a miscarriage of justice has occurred-that is, that an innocent person has been convicted - he has the power to set the verdict aside." *United States v. Morales*, 902 F.2d 604, 606 (7th Cir 1990). A Rule 33 motion is not to be granted lightly. *Id.* at 605.

Kelly argues that he is entitled to a new trial because the Government violated its obligations under *Napue v. Illinois*, 360 U.S. 264 (1959). *Napue* stands for the principal that the Government may not knowingly use false testimony to obtain a conviction. *Id.* at 269. A defendant is entitled to a new trial under *Napue* if there was false testimony, the Government knew, or should have known, it was false, and there is a likelihood that the false testimony affected the judgment of the jury. *United States v. Cardena,* 842 F.3d 959, 976-77 (7th Cir. 2016). The false testimony must "bear a direct relationship to the defendant's guilt or innocence." *Id.* at 977.

Kelly makes two separate motions under *Napue*: first about Dr. Darrel Turner's testimony, second, about Jane's testimony.

### *1. Dr. Darrel Turner*

The Government's expert witness, Dr. Darrel Turner testified that his hourly rate for the case was $250. On October 27, 2022, the Government sent a letter to Kelly's counsel informing them that Dr. Turner's rate for the case was $450 per hour. (Dr. Turner Letter, Mot. for New Trial, Ex. A, Dkt. No. 388-1.) The Government should have known about this discrepancy, as the contract was executed prior to trial. (*Id.*) Thus,

the question before the Court is whether Dr. Turner's testimony about his rates directly related to the jury's decision to convict Kelly on any of the six counts.

The Court finds no likelihood that Dr. Turner's testimony about his rates affected the jury's decision to convict Kelly. In Kelly's motion, he states: "Had the jurors known that Dr. Turner actively misled them, the jurors would likely have rejected his testimony outright." (Mot. for a New Trial based on Dr. Turner's testimony ¶ 8, Dkt. No. 388.) Kelly does not explain how he reaches this conclusion, nor does he cite any caselaw in support of his position.

The law in this circuit does not support Kelly's position. *United States v. Freeman*, 650 F.4d 673 (7th Cir. 2011) (affirming a district court's decision to grant a new trial when the Government's star witness testified falsely, the Government knew about it, and the Government relied on the testimony to secure convictions); *United States v. Hilliard*, 851 F.3d 768 (7th Cir. 2017) (affirming a district court's decision to deny a motion for a new trial where the Government did not rely on the false testimony to secure a conviction); *Griffin v. Pierce,* 622 F.3d 831 (7th Cir. 2010) (affirming a district court's decision to deny a motion for a new trial where the false testimony did not change the outcome of the trial). These cases show that a court should only grant a new trial under *Napue* if the false testimony directly leads to the Defendant's conviction.

Here, it is not clear to the Court how the false testimony about Dr. Turner's rates bears on Kelly's guilt. Dr. Turner had no personal involvement in this case. He was not familiar with Kelly, or any witness

in the case. Dr. Turner testified generally about grooming and victim behavior. Dr. Turner did not express a conclusion about whether any of those practices and behaviors were present in this case. While Dr. Turner's testimony may have provided helpful background information to the jury, he never tied that information back to Kelly. As such, there was sufficient evidence to sustain Kelly's convictions, even without Dr. Turner's testimony. The Government's case was mainly based on the testimony of the victim-witnesses, who testified as to Kelly's actions.

### 2. Jane

Jane, one of the victim-witnesses, testified that she was undecided about whether she was going to seek restitution. Kelly argues that this statement is false. In support, Kelly points to Jane's private attorney's billing records which contains three entries discussing restitution. It is not clear to the Court, which, if any, of the *Napue* requirements are satisfied here. Simply because Jane and her attorney considered the possibility of restitution, does not mean she lied during her testimony. Jane's testimony was that she was undecided. Her testimony was not that she was not intending to pursue restitution. Kelly alleges that the Government knew that Jane's statement was false, because Jane's attorney discussed restitution with the Government in 2020. Again, nothing in the record suggests that Jane was going to pursue restitution, just that it was a possibility. Kelly argues that this "false" testimony was directly related to his conviction because it goes to Jane's credibility generally. Kelly fails to specify further, only stating that Jane had "motivation to share her story in ways that were not entirely honest because she stood to gain significant restitution" which "could have

affected the judgment of the jury." (Mot. for a New Trial based on Jane's testimony ¶ 12, Dkt. No. 408.)

The Court finds that Kelly has not met the requirements of *Napue,* nor is this a case that requires a new trial in the interest of justice. Kelly's Motions for a New Trial are denied.

## CONCLUSION

For the reasons stated herein, Kelly's Motion for a Judgment of Acquittal (Dkt. No. 387) and Kelly's Motions for a Tew Trial (Dkt. Nos.388, 408) are denied.

**IT IS SO ORDERED.**

                                              Harry D. Leinenweber, Judge
                                              United States District Court

Dated: 2/16/2023