UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 19 CR 567 |
| -vs- | ) ) ) | Hon. Harry D. Leinenweber |
| ROBERT SYLVESTER KELLY, also known as "R.Kelly." | ) ) ) ) ) | |
| Defendants. | ) | |

### DEFENDANT KELLY'S REPLY TO THE GOVERNMENT'S SENTENCING MEMORANDUM

The government seeks to inflame the passions of the public and the Court, declaring Kelly a "serial sexual predator" who "refuses to accept responsibility for his crimes." By submitting a sentencing memorandum that dares to challenge the government's narrative in any way, the government accuses Kelly of victim-blaming, lack of remorse, and failing to "grasp the gravity of his criminal conduct." It is the government that fails to grasp that Kelly still enjoys a few constitutional and statutory protections that allow him to challenge the government's take on the evidence and advocate for an appropriate sentence without being labeled a monster who has no remorse. The jury that heard this case seemed to respect those basic principles of our criminal justice process. The prosecutors would be wise to take a lesson from the jury.

In reality, no one grasps the seriousness of the crimes for which Kelly was convicted more than Kelly. He is, after all, the one who is likely to spend the rest of his life in prison. For maximum emotional impact, the government devotes five pages of its sentencing memorandum to giving another play-by-play of the contents of the videos that Kelly has been convicted of

producing even though Kelly has argued nothing in connection with the content of those videos. It will probably force everyone to watch them again at the sentencing hearing notwithstanding its feigned concern with the harm repeated viewings cause Jane. There is no need. This Court, the jury, and the parties watched and heard unnecessarily long excerpts of the videos at the government's insistence. This evidence speaks for itself and Kelly has expressly acknowledged the seriousness of those offenses in his sentencing memorandum.

Second, the government simply ignores the jury's verdict in this case, insisting on telling a narrative that their own witnesses did not tell, arguing, *inter alia,* that Kelly is still guilty of obstruction of justice and abusing Brittany and countless unknown and unidentified girls.[1] Apparently the government is not satisfied with having only three victims to fight for and must rely on evidence that a jury expressly rejected to support its absurd request for a second life sentence for Kelly that would violate *Ex Post Facto* and *Apprendi* principles in any event - more on that later.

That Kelly is not willing to accept responsibility for offenses for which he was acquitted and views the evidence presented at trial somewhat differently than the government, does not mean he "fails to grasp" the seriousness of the offenses. Kelly has every right to advocate for himself and argue for a fair sentence that acknowledges the seriousness of the offenses while also pushing back on the government's embellished narrative that relies significantly on acquitted conduct. A blind reading of the government's sentencing memorandum would lead the reader to believe that Kelly was convicted of every count in the government's indictment, including

---

[1] The government does not mention Tracy in its sentencing memorandum but that is probably because Tracy has now accused the government of misconduct. According to recently produced discovery, Tracy claims that she told the agents and prosecutors prior to trial that Lisa Van Allen was extorting her and other victims, information that was never disclosed to the defense in violation of *Brady* and its progeny. Notably, the government had no qualms about vouching for Tracy's credibility when it was seeking to convict Kelly of a bogus inducement count but now that Tracy has turned on the government, accusing the agents and others of wrongdoing, it seems to have abandoned any claims that she was a *bona fide* victim.

obstruction of justice, a myriad of child pornography trafficking offenses, and numerous inducement counts. He wasn't. The right to a jury trial is rather pointless if a defendant is going to be punished for offenses that a jury acquitted him of.

    The government also tramples Kelly's Fifth Amendment rights asking this Court to punish Kelly for not "taking responsibility." Not for nothing, the government knows full well that there never would have been a trial in this case, if it did not insist that Kelly plead to counts of the indictment it lost anyway. The government was far more concerned with its press conference than a reasonable disposition in this case that would have allowed Kelly to take responsibility and spared certain victims the need to take the stand. Kelly only raises this argument to counter the government's unfair claim that Kelly has demonstrated unwillingness to "accept responsibility."

    That aside, Kelly can hardly "take responsibility" or "show remorse" in a manner that the government demands when it continues to indict him. Kelly currently has pending charges in Minnesota and an appeal in the Eastern District of New York to mention nothing of various civil lawsuits. Kelly enjoys a Fifth Amendment right to remain silent and on the advice of counsel asserts his Fifth Amendment right to remain silent. The government is walking a constitutionally thin line when it urges increased punishment for Kelly because he allegedly shows no regret or "fails to grasp the gravity of his criminal conduct against children." The government is not in Kelly's head and cannot say what he feels or thinks; it should refrain from using his Fifth Amendment privilege against him. When federal and state prosecuting agencies stop indicting him, Kelly might be in a position to speak more freely about his regrets but with pending criminal charges and the explosion of statutes across the country that extend and even abolish civil and criminal statutes of limitations for sex offenses, it is hard to know when that will be.

It is clear that if Kelly makes *any* argument that does not embrace the government's narrative, a narrative that ignores critical aspects of the trial evidence, Kelly will be accused of victim-blaming. Kelly, through his counsel, has *every* right to remind the court of the *actual* evidence that was presented at trial which does not conform to the government's depiction of him as a prolific sex-trafficker of young girls. Kelly repeatedly acknowledged in his sentencing memorandum that he has been convicted of serious crimes, but it is also true that his relationships with Jane and Pauline were not quite as the government suggests.

**I.        Guidelines Calculation**

  **A.        The Inducement Counts Carry an Offense Level of 15**

The government argues that Kelly's convictions of the inducement counts necessarily qualify for cross reference at section 2A3.1 because Kelly has convictions of inducement, enticement, and coercion of Jane, Nia, and Pauline. Not so. The government overlooks that the jury was instructed that it could find Kelly guilty of the inducement counts if Kelly persuaded, induced, enticed, *or* coerced. [Ex. E to Kelly's Sentencing Memorandum at pg. 38] In fact, the jury sent out a specific question inquiring whether it had to find that Kelly persuaded, induced, enticed, *and* coerced, or whether the instruction could be read in the disjunctive notwithstanding that the charge was pled in the conjunctive.

Over defense counsel's objection, the government insisted that the instruction was properly given in the disjunctive and this Court agreed. As such, the government is precluded from now arguing that the jury found Kelly guilty of *coercing* Jane, Nia, and Pauline when the jury could have simply agreed that Kelly persuaded Jane, Nia, and Pauline to engage in prohibited sexual conduct. In fact, the jury's question strongly implies that it did *not* find that Kelly used *coercion* but rather had persuaded, enticed or induced Jane, Nia, and Pauline which

satisfied the elements of the statute. Thus, Kelly's mere conviction for the offense of 18 U.S.C. § 2242 does not trigger the cross reference at section 2A3.1 as the government contends.

B. The "Fear" Factor

The government concedes that there is no evidence that Kelly threatened or used force in connection with Jane, Nia, and Pauline but nonetheless claims that he used "fear" to induce the prohibited sexual activity and that the concept of fear should be defined "broadly." To find that Kelly used fear based on the trial evidence would involve far more than a broad reading of the word "fear;" it would involve redefining the word "fear" and reading the requirement out of the sentencing statute altogether.

This Court need only look to Seventh Circuit authority to resolve this contested issue. The Seventh Circuit has defined fear as encompassing a *threat* or other *fear-inducing coercion* to overcome the victim's will. *Cates v. United States,* 882 F. 3d 731, 737 (7th Cir. 2018). Fear is not merely pointing out that Kelly was an "authoritative" figure or an "adult" as the government argues. None of the victims testified that Kelly used any threat of any kind to gain their compliance in sexual activity nor did he employ any "fear-inducing coercion" to overcome the victim's will. The government made no such argument at trial and the jury certainly made no such finding.

The government relies on *United States v. Henzel*, 668 F. 3d 972, 977 (7th Cir. 2012) to support its argument that fear doesn't really mean fear. *Henzel* does not stand for such a proposition. Rather, *Henzel* supports Kelly's argument that the government's evidence of fear was woefully lacking. In *Henzel,* a 12-year old girl called the police to report that she had just been sexually assaulted by the defendant in a hotel room. Upon questioning by the police, the defendant conceded that he met the girl on-line and arranged to meet her at a local hotel after

claiming to be 14 years old. When the victim finally met the defendant, she realized he was much older than 14 years of age and that the "situation was scary." Because she was frightened, she complied with the defendant and went to the hotel room where he slapped her buttocks which caused her to feel "really uncomfortable." When the defendant began to physically touch her, she was "really scared" and when he began to remove her clothes, she told him she was "uncomfortable" and "crossed her legs" to stop the defendant from removing her pants. The victim told the defendant she did not want to have sex and the girl whimpered as he pressed on against her will. The victim ran out of the room and immediately called her mother and the police. *Id.* at 974.

In *Henzel,* the Seventh Circuit found that the concept of "fear" is distinct from "force." *Id.* at 977. It further found the cross-reference was appropriate because the district court concluded that the defendant "coerced" the girl's participation in the prohibited sexual conduct "despite her efforts to move away from him, her crossed legs and resistance to undress her, her crying, and her ten or more protests that she did not want to participate." The victim testified that she was "scared" and that is why she complied with his demands. *Id.*

This case is entirely inapt. Jane, Pauline, and Nia never testified to being scared to engage in the prohibited sexual contact with Kelly. Importantly, *none* of them testified that Kelly did anything to overcome their will. Of course, this is not a defense to the underlying inducement count and is certainly not tantamount to "victim-blaming," but there is no question that using coercion, threats, and fear to induce prohibited sexual activity is not the same as persuading or enticing a teenager into the prohibited conduct. The government refuses to acknowledge this distinction.

6

Absurdly, the government attempts to analogize this case to the Fifth Circuit case *United States v. Lucas,* 157 F. 3d 998 (5th Cir. 1998) for the proposition that fear can include a scenario where the defendant "would react badly if she [the victim] did not meet his demands," or may emanate from "a defendant's control over a victim's everyday life." *Id.* at 1003. In *Lucas,* the defendant was the warden of jail in Eunice, Mississippi who repeatedly raped an inmate. There, the defendant pled guilty and admitted that he *coerced* the female inmate to engage in sexual intercourse and other sexual acts and that the sexual acts were unwanted. *Id.* at 1000. There the court found that the warden used *actual force* to rape the inmate not merely his powers as a warden. Critically, the Fifth Circuit observed that fear is interpreted broadly but "[t]his element is satisfied when the defendant's actions implicitly place the victim in fear of *some bodily harm.*" *Id.* at 1002. *Lucas* only proves Kelly's argument. Kelly's tactics as determined by the jury may have satisfied the elements of persuasion or inducement, but they fall far short of demonstrating that he placed the victim in fear of some bodily harm or any other type of harm.

Similarly, *United States v. Castillo,* 140 F. 3d 874 (10th Cir. 1998) does not help the government's argument. There the defendant was convicted of sexually abusing his two minor children. On appeal the defendant challenged the "fear" element. *Id.* at 885. Again, the court held "the element is satisfied when the defendant's actions implicitly place the victim in fear of *some bodily harm."* (emphasis added) *Id.* The court found that fear could be inferred in this case because the nature of the circumstances that a male parent attempting to perform sexual acts with his children would place them in fear of bodily harm because the victims had witnessed the defendant physically abuse their mother on many occasions and had physically abused his children. *Id.* at 886.

The same cannot be said here. Jane, Pauline, and Nia did not fear any bodily harm when they engaged in prohibited sexual conduct with Kelly when they were underage. There is simply no analogous case *anywhere* that supports the government's definition of fear. If this Court were to embrace the government's definition of fear it would simply be reading fear out of the section. The government is free to argue that Kelly used all types of inappropriate tactics to engage the minors into prohibited sexual activities but fear is simply not among them.[2]

In sum, the inducement counts each carry an offense level of 15. Kelly did not use threats or force to induce Jane, Pauline and Nia into the prohibited sexual conduct, nor did he cause them to fear bodily harm, *or* any type of harm to induce the prohibited sexual conduct. Simply put, the tactics that the government claims Kelly used were very different. The government claims Kelly groomed the minors; he showered them with affection; he bought them presents; he promised them various things; and wowed them with his superstar power. None of these facts let Kelly off the hook for his conduct which is why he stands convicted of three counts of inducement, but the government cannot *now* claim he also used fear of bodily harm with the victims when the victims made no such claims, the government advanced no such theory *even in the alternative*, and the record suggests that the jury rejected any notion that the sexual abuse was committed through acts of coercion. Applying an appropriate offense level to the

---

[2] The government desperately grasps to its inflated offense level on the inducements counts for Jane and Pauline (not Nia) arguing that Kelly transported Jane and Nia for the purpose of producing child pornography. At the outset, the government cannot use the child pornography counts as to Jane to increase the offense level for the inducement count; this would result in impermissible multiple punishments. Moreover, Jane did not testify that Kelly transported her anywhere *for the purpose* of creating child pornography. Although Pauline claimed that she saw recording equipment in Kelly's home, she never saw any explicit videos of herself. Neither the government nor the Court can simply assume based on the presence of recording equipment that Kelly recorded sexual activity with Pauline. The mere presence of recording equipment is insufficient proof under any standard that Kelly did in fact record sexually explicit conduct with Pauline anywhere. Moreover, Pauline, who had a relationship with Kelly long after she was a minor, did not even indicate *when* she saw this recording equipment. There is simply no evidence that such videos were ever produced or that Kelly transported Pauline to any location *for the purpose* of creating child pornography. This argument is a stretch and is appropriately relegated to a footnote.

inducements counts is not "going easy" on Kelly. It is applying the law appropriately and fairly to Kelly.

## II. Sentencing Factors

The government argues that Kelly's desire to "sexually abuse children" is insatiable; it repeatedly advanced a false claim that Kelly has been abusing countless under-age girls for decades. Unfortunately for the government, their evidence comes up a short on this bold allegation. Indeed, the government continues to exaggerate the evidence against Kelly apparently not satisfied by the jury's verdict or the harms caused to Jane, Pauline, and Nia. This Court is obligated to consider the charged conduct and relevant conduct to the extent allowable, *not* the government's sweeping claims that are more appropriate for a *Lifetime* "docuseries" than a court of law.

The government is correct that Kelly was convicted of having an illegal sexual relationship with Jane and Pauline that started when they were 14. He was convicted of creating child pornography when he video-recorded his sexual contact with Jane. Kelly was also convicted of fondling 15 or 16-year-old Nia on a single occasion in Chicago (she also alleged that Kelly touched her and masturbated on a single occasion in Minnesota). This conduct is serious enough. But the government insists on exaggerating Kelly's misdeeds, sounding more like a teaser for the next installment of "*Surviving R. Kelly*" than lawyers. The government declares Kelly a prolific sexual abuser of children but resorts to manufacturing evidence related to Aaliyah that *has never been proven* as support for this claim. Kelly is convicted of serious crimes as it is, yet the government is so committed to obtaining another life sentence for him that it resorts to invoking unsubstantiated Aaliyah claims, perpetuating rumors from tabloid

docuseries, and attributing hyperbolic labels to Kelly rather than relying on the actual evidence to supports its ask.

The government spends a significant portion of its sentencing memorandum arguing that the distribution and trafficking in child pornography causes significant harm to a victim and society at large, beyond the mere production of the pornography. Kelly agrees. As the government pointed out, "the 'victimization' of the children involved does not end when the photographer's camera is put away," which is precisely why Kelly and others continue to wait for the government to indict those individuals responsible for stealing and distributing the video of Jane, including Jane's aunt Stephanie Edwards ("Sparkle") who stole the videotape and gave at least one copy to Sun Times reporter Jim Derogatis who then shared and transported the video to other people/places, and extortionists Chuck Freeman and Lisa Van Allen.[3] Of course, there is no disputing that if the video was never created, it could not have entered the public sphere, but Kelly has already been convicted and will be punished for the creation of the video.

The government has no choice but to concede that Kelly had no role in placing the images into the public domain which **of course** does not relieve him of liability for creating it, but it also does not mean that his sentence should be enhanced for distributing it. Indeed, it was the government's star witnesses who were responsible for that. Rather than prosecute those people for that specific harm caused to Jane, the government doled out immunity agreements and even falsely indicted Kelly for abusing Lisa Van Allen[4] who consistently lied about everything

---

[3] Derogatis runs his mouth plenty on news shows, social media, and in his recently published book, but when called to testify and answer questions under oath about what he did with the video he received from Stephanie Edwards, he prefers to invoke his Fifth and First Amendment privileges. He is a big believer in constitutional rights - for himself.

[4] The government was forced to acknowledge that Van Allen lied about her age when she had a consensual sexual relationship with Kelly and voluntarily dismissed that count of the indictment. That Van Allen lied about something so significant as her age did not dissuade the Government from making her a star witness in this case.

from her age to the number of videos she stole to the contents of those videos. By her own admission she repeatedly robbed Kelly and engaged in a decades-long scheme to extort Kelly and others.[5] The government's point is well taken that Jane continues to suffer harm by each viewing of the images, but Kelly is not 100% responsible for that harm. If the government seeks to vindicate that wrong, it should indict those who trafficked the video.

**III.     A Guidelines Sentence of Life Based on Acquitted Conduct and Guidelines Amendments that Post-Date the Charged Offense Is Unjustified and Would Run Afoul of *Apprendi v. New Jersey* and the *Ex Post Facto* Doctrine.**

The government seeks an above-Guidelines sentence on two grounds: (1) Kelly obstructed justice; and (2) if he was indicted today his guidelines sentence would be higher. These grounds are not appropriate grounds for an above-guidelines range sentence. Even Probation recognized as much in finding no basis for an upward variance.

**A.     Obstruction Does Not Justify an Above-Guidelines Sentence Where Kelly Did Not Obstruct Justice in the *Instant* Offense and Was Acquitted of Obstructing the 2002 State Court Prosecution.**

Using the 2-level enhancement for obstruction of justice is *not* a basis for a variance above the guidelines-range for several reasons. First and foremost, the 1997 Federal Sentencing Guidelines only permits an enhancement for obstruction of the *instant offense.* USSG § 3C1.1 The government does not argue otherwise, because it did not, does not and cannot show that Kelly attempted in any way to obstruct *this* prosecution. Recognizing that no such enhancement is applicable here, the government attempts to end run the *ex post facto* clause arguing that this Court can still consider Kelly's obstruction as a sentencing factor and basis for sentencing him to an above-guidelines sentence. Relying on the inapplicable 2006 guidelines which employed language that seemed to expand the obstruction enhancement for obstructive conduct *related* to

---

[5] According to a recent disclosure by the government, Tracy claims that Lisa Van Allen even extorted her.

"a defendant's offense of conviction," the government contends that this Court should use this factor to justify an upward variance. The government continues to ignore that Kelly was acquitted of obstructing justice in connection with *any* offense of conviction. No authority allows this Court to consider an offense for which Kelly was *acquitted* as a basis for sentencing him to an above-guidelines sentence.

Using acquitted conduct to justify an upward variance not only raises *ex post facto* concerns, it presents an additional constitutional problem under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The guidelines range suggested by the government is well above the statutory maximum for the top count of the indictment. Indeed, the government seeks a 25-year sentence which exceeds the 20-year statutory maximum for production of child pornography. The United States Supreme Court has held that facts other than prior convictions must be proved to a jury beyond a reasonable doubt before they can be used to increase punishment for a crime "beyond the prescribed statutory maximum." *Id.* at 480. Thus, if Kelly's alleged "obstructive conduct" is to be used as a basis for upwardly departing from the sentencing guidelines to a range that exceeds the statutory maximum for production of child pornography, those facts need to have been proven to a jury beyond a reasonable doubt. In this case, the jury *did* consider those facts and rejected them. Since an upward variance based on obstruction would result in a sentence that exceeds the statutory maximum of the top count, *Apprendi* prohibits a variance based on this acquitted conduct or any other "obstructive" conduct that the government claims Kelly committed.

  **B.**  **Reliance on Subsequent Amendments to the Guidelines to Justify an Upward Variance of 5 to 7 Levels Runs Afoul of the *Ex Post Facto* Clause**

The government urges an outrageous life guidelines range based not only on acquitted conduct but based on amendments to the sentencing guidelines that post-date Kelly's conduct.

The government again ignores this Court's limitations under the *ex post facto* cause. It is true that the Seventh Circuit has held that a court may interpret the Commission's later addition of an *aggravating element* as a sentencing factor as evidence that a previous version of the Guidelines did not adequately consider that factor in the sentencing scheme and may also consider later amendments for determining how much of a departure is warranted for the aggravated conduct in question. *United States v. Coe,* 220 F. 3d 573, 578 (7th Cir. 2000). However, in this case, the government does not identify *any aggravating element* that was omitted as a sentencing factor in the applicable 1997 Guidelines. Instead, it simply points out that the *offenses* for which Kelly was convicted now carry a higher base offense level than they did in 1997. Put differently, production of child pornography is punished more severely now than it was in 1997. Raising the guidelines range based on this amendment is a textbook *ex post facto* violation, because a court is prohibited from sentencing the defendant under an amendment to the Guidelines that makes the punishment more severe than it had been at the time the criminal activity took place. *Id.* at 578.

  As a point of comparison, this case does not involve the scenario where a subsequent amendment included an enhancement for a specific aggravating factor that increased an offense level that a sentencing court might naturally have considered as aggravating evidence in the sentencing factors before it was codified. In that scenario, a court may consider an amendment to upwardly depart from the guidelines range. Indeed, the Seventh Circuit observed that since a court's decision to depart must be linked to the rationale and methodology of the Guidelines, it may prove useful to identify *an aggravating element* codified in later amendments as support for relying on that sentencing factor in increasing the range. That said, *Coe* in no way condones upward variances based on amendments that simply punish the *charged offense* more severely.

In clear violation of the *ex post facto* doctrine, the government brazenly asks this Court to apply current offense levels and subject Kelly to greater punishment than he would have faced if he had been prosecuted in 1997 - before the government started caring about young Black women.

Using acquitted conduct and the mere fact that production of child pornography is more seriously punished today than it was in 1997 is not grounds for any variance. Such an upward departure would violate Kelly's constitutional rights to Due Process, trial by jury per *Apprendi,* and the *Ex Post Facto* clause.

**IV.     The Government Offers No Compelling Basis for Running this Sentence Consecutive.**

The government acknowledges that this Court has the discretion to run this sentence concurrent to his Eastern District sentence but urges a consecutive sentence because: (1) Kelly lacks remorse; and (2) there are different victims involved in this case.

The government's argument in favor of a consecutive sentence falls flat. First of all, there is no authority for the proposition that Kelly should face increased punishment because he defends himself at his sentencing hearing. Kelly has repeatedly acknowledged the seriousness of the offenses for which he stands convicted. That the government seeks not one, but *two,* life sentences for Kelly while similarly situated people avoid government scrutiny, are widely celebrated, and even hold elected positions in Congress,[6] does seem a little unfair. Kelly has merely pointed out the disproportionate treatment as grounds for arguing that one life sentence is enough - not to minimize the conduct for which he *has* been convicted. That the government asks this Court to run his sentence consecutive because he dares to point out that his treatment by

---

[6] https://www.nbcnews.com/politics/congress/doj-decides-not-charge-rep-matt-gaetz-sex-trafficking-investigation-rcna70839

the criminal justice system has been excessive and disproportionate is not the same as blaming the victims and does mean that he is not "rehabilitated."

Moreover, Kelly's silence as to the question of whether he is remorseful about conduct for which he has been convicted is not evidence of lack of rehabilitation. It's evidence that he is represented by counsel who has advised him to remain silent in the face of pending criminal indictments. It is a blatant violation of Kelly's Fifth Amendment rights to ask for increased punishment on the grounds of "lack of rehabilitation" because he has not "accepted responsibility" for his conduct when the government knows full well that Kelly is still under indictment in other jurisdictions. Moreover, the government is knowingly advancing a lie. The government knows very well that Kelly was willing to accept responsibility for certain conduct, but it was the government that pushed this case to a trial insisting on guilty pleas to offenses that resulted in acquittals anyway and for refusing to show its hand on its sentencing request or take an above-guidelines sentence off the table. The government wanted its trial and now it wants another life sentence for Kelly. It does not apparently want to prosecute the other wrongdoers in this case or the countless other celebrities who have committed similar conduct.

Contrary to the government's argument the conduct charged in New York covered the conduct charged here. It is true that Jane, Pauline, and Nia did *not* testify in New York, but they certainly could have, and nothing stopped the government from charging these offenses in that indictment. The government essentially concedes that it pulled out a handful of minors to bring in the instant indictment for no good reason. The government does not even attempt to argue that the charges brought in the instant indictment could not have been brough in the EDNY case. The government now claims that a 300-month consecutive sentence is appropriate to account for the

15

specific harm of these three minors. In making that argument, the government concedes that it engaged in piece-meal prosecution to enhance Kelly's sentence.

The government fails to explain why "substantial incremental punishment" is justified here when Kelly is likely to die in prison anyway. The sentencing factors instruct this Court to consider a number of factors, but that each victim get allotted a certain number of years is not among them. A concurrent sentence is what fairness demands. In its quest to ensure that Kelly never sees the light of day, the government fails to give *any* consideration to the significant mitigation he has presented. The government asks this Court to ignore its responsibility to consider the individual characteristics of the defendant and join its blood-thirsty campaign to make Kelly a symbol of the #metoo movement rather than treat him as human being who should be appropriately punished - no greater or less than anyone else similarly situated.

## CONCLUSION

For the foregoing reasons, the applicable guidelines range is 135 to 168 months' imprisonment. No upward variance is justified and numerous factors justify a sentence at the lower end of the guidelines range. Moreover, fairness demands that the sentence run concurrent to the EDNY sentence which is statistically-speaking, a life sentence.

                                                  Respectfully Submitted,

                                                  /s JENNIFER BONJEAN
                                                  *Attorney for Robert Kelly*

Bonjean Law Group, PLLC
750 Lexington Ave., 9th Fl.
New York, New York  10022
718-875-1850

## CERTIFICATE OF SERVICE

I, JENNIFER BONJEAN, an attorney licensed to practice law in the State of Illinois, hereby certifies that she filed the Reply to the Government Sentencing Memorandum on February 19, 2023, by filing the motion via the Northern District of Illinois Electronic Filing System. The government and other parties were automatically served via ECF.

/s/JENNIFER BONJEAN