UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 19 CR 567 |
| v. | |
| ROBERT SYLVESTER KELLY, aka "R. Kelly" | Hon. Judge Harry D. Leinenweber |

**GOVERNMENT'S POSITION PAPER AS TO RESTITUTION**

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, submits its Position Paper as to Restitution in the above-captioned matter.

**I.  APPLICABLE LAW**

Defendant must pay for the "full amount of the victim's losses," which includes "any costs incurred, or that are reasonably projected to be incurred in the future," including "(a) medical services relating to physical, psychiatric, or psychological care; (b) physical and occupational therapy or rehabilitation; (c) necessary transportation, temporary housing, and child care expenses; (d) lost income; (e) reasonable attorneys' fees, as well as other costs incurred; and (f) any other relevant losses incurred by the victim." 18 U.S.C. § 2259(a), (b)(1) and (c)(2)(A)-(F). This statute applies to "restitution for any offense under this chapter [Chapter 110]," which includes violations of 18 U.S.C. § 2251(a). *See* 18 U.S.C. § 2259(a). In this case, defendant was convicted of three counts of producing child pornography of Jane, in

1

violation of § 2251(a) (Counts 1-3).

Similarly, in connection with his convictions on Counts 9, 10, and 12, defendant must pay for the "full amount of the victim's losses." 18 U.S.C. § 2429(a), (b)(1) and (b)(3). Section 2429(b)(3) instructs that "the term 'full amount of the victim's losses' has the same meaning as provided in section 2259(b)(3)." The definition of "full amount of the victim's losses" is found, not in § 2259(b)(3), but in one subsection later, in § 2259(c)(2). "It appears therefore, that the cross-reference in § 2429(b)(3) should be to § 2259(c)(2), rather than to § 2259(b)(3)." *United States v. Kempter*, 29 F.4th 960, 969-70 (8th Cir. 2022) ("We conclude that this is a scrivener's error and use the definition found at § 2259(c)(2) for purposes of applying 2429(b)(1)."); *United States v. Sanchez*, 2022 WL 17250178, at *1 (5th Cir. Nov. 28, 2022) ("Under § 2429, restitution is mandatory for the 'full amount of the victim's losses', including 'costs incurred, or that are reasonably projected to be incurred … as a proximate result of the offenses involving the victim' for, *inter alia*, 'medical services relating to physical, psychiatric, or psychological care'." (citing 18 U.S.C. §§ 2429(b)(3), 2259(c)(2) and *Kempter*, 29 F.4th at 969)).

Section 2259 provides for restitution for future costs of therapy. *See United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001) ("In light of Congress's intent to make whole those victims of sexual exploitation, we find that section 2259 allows for restitutionary damages for the future costs of therapy."). Courts regularly recognize the life-long impacts of child sex offenses and frequently determine restitution

amounts by way of calculating collective costs over a victim's lifespan or life expectancy. *See Danser*, 270 F.3d at 453 n.1, 456 n.6; *United States v. Protho*, 41 F.4th 812 (7th Cir. 2022) ("Determining the duration of future psychological treatment, as a prediction, necessarily prevents any conclusion based on mathematical certainty."). Accordingly, and particularly with regard to child exploitation offenses, "the victim's losses that the Court may order the defendant to restitute in these cases may be retrospective or prospective." *See United States v. Whitley*, 354 F. Supp. 3d 930, 934 (N.D. Ill. 2019).

In determining future costs to arrive at its restitution determination, the court is not required to undertake a precise mathematical inquiry. Rather, "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3364(e). The preponderance of the evidence standard "requires only that the fact-finder believe that the existence of a fact is more probable than its non-existence." *United States v Robl*, 8 F.4th 515, 527 (7th Cir. 2021) (quotation omitted).

As stated above, restitution to Jane, Pauline, and Nia is mandatory, pursuant to 18 U.S.C. § 3663 and 18 U.S.C. § 2259 (Jane) and 18 U.S.C. § 2429 (Jane, Pauline, and Nia). "Victim" is defined in both Sections 2259 and 2429 as "the individual harmed as a result of a commission of a crime under this chapter." There is no

3

question that Jane, Pauline, and Nia were harmed as a result of the offenses of conviction. In this case, Kelly is the sole party responsible for the harms to Jane, Pauline, and Nia. He did not merely possess but produced the child pornography at issue. Kelly alone enticed and coerced each of his victims to engage in unlawful sexual activity, namely, aggravated criminal sexual abuse. Thus, there can be no question that Kelly is the sole "but-for" proximate cause of the harm to his victims.

"In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. §§ 2259(b)(4); 3664(f)(1)(A); *see United States v. Brazier*, 933 F.3d 796, 804 (7th Cir. 2019); *United States v. Sensmeier*, 361 F.3d 982, 988 (7th Cir. 2004) ("The economic circumstances of a defendant *cannot* be considered by the court when fixing the amount of the restitution.") (emphasis in original).

## II. THE AMOUNT OF RESTITUTION DUE IN THIS CASE

In support of its restitution request, the government has submitted two Supplements to the Government's Version of the Offense: (1) Government's Supplemental Version of the Offense Re: Restitution dated February 3, 2023 ("2/2/23 GVO Supp."); and (2) Government's Supplemental Version of the Offense Re: Restitution dated February 22, 2023 ("2/22/23 GVO Supp."). Attached to the Supplements are documents containing sensitive medical information about Jane, Pauline, and Nia. The government submitted this information under seal as

4

Supplements to the GVO to protect the privacy of the victims in this case. Indeed, Section 3664(d)(4) provides that "[t]he privacy of any records filed, or testimony heard, pursuant to this section shall be maintained to the greatest extent possible, and such records may be filed or testimony heard in camera."

As set forth in the 2/2/23 GVO Supp. and the 2/22/23 GVO Supp. and their attachments, the government has proven the restitution amounts by a preponderance of the evidence.

### A. Restitution Due to Jane

As set forth in the 2/22/23 GVO Supp., the government has calculated the losses already incurred by Jane and the losses reasonably expected to be incurred in the future. Jane's losses fall into three main categories, as summarized below.

| Category | Amount |
| --- | --- |
| Future Medical and Mental Health Care | $5,400,754 |
| Lost Income | $4,569,851 |
| Attorney's Fees | $54,468 |
| **TOTAL** | **$10,025,073** |

In calculating the amount of Jane's future medical and mental health care, the government relied on reports authored by Dr. Sharon Cooper, a developmental and forensic pediatrician, and Dr. Stan Smith, an economist. Dr. Cooper's curriculum vitae is attached as Exhibit 1 to this filing, and her qualifications are set forth at the beginning of her report as well. *See* 2/3/23 GVO Supp., Exhibit 1 (Exhibit A at p. 1-2). Dr. Cooper has extensive education, training, and experience in the field of child sexual abuse and child sexual exploitation.

5

Dr. Cooper participated in nine virtual sessions with Jane, during which she gathered information to assess the physical and psychological impact caused Kelly's sexual abuse. *Id.* at 1, 6, 8. Dr. Cooper's report contains a detailed medical review and assessment of Jane's conditions. *Id.* at 9-17. At the conclusion of her report, Dr. Cooper includes a list of the medical diagnoses for Jane, along with the associated direct costs of the mental health and medical treatment procedures. *Id.* at 19-20.

In her report, Dr. Cooper discusses the Adverse Childhood Experiences framework. *Id.* at 4-5. In summary, the Adverse Childhood Experiences Study cited to by Dr. Cooper identified the following as Adverse Childhood Experiences (ACEs): (1) whether an adult or person at least 5 years older than the child ever touched or fondled the child's body in a sexual way, including by having or attempting to have oral, anal or vaginal intercourse with the child; (2) whether a child often or very often felt that they had no one to protect them; (3) whether an adult often denigrated a child, humiliated a child, or made the child afraid that they might be physically hurt; and (4) whether an adult often or very often pushed, grabbed, slapped, or threw something at the child, including if the child was hit so hard it left a lasting mark or injury. *Id.* at 4. "Through the Adverse Childhood Experiences Study, it became evident that the occurrences of ACEs cause elevated levels of cortisol in the body leading to toxic stress and poor health outcomes." *Id.* As stated in Dr. Cooper's assessment of Jane, toxic levels of cortisol worsen medical conditions. *Id.* at 11.

Dr. Cooper's report also refers to research conducted by the National Center

6

for Injury Prevention and Control, Centers for Disease Control and Prevention, which estimates that the lifetime cost of one rape is $122,461. *Id.* at 6, 17, 19; *see* Exhibit 2, attached. Importantly, this research specifies that the victim must be 18 years of age or older at the time of the sexual assault and does *not* account for victims like Jane, who were minors when they were raped numerous times over the span of multiple years. 2/3/23 GVO Supp., Exhibit 1 (Exhibit A at 6). Dr. Cooper cites to the above CDC research for reference purposes, but it is not applicable in this case. Jane's sexual abuse as a minor was far more extensive and her lifetime medical costs as a result of the abuse are much higher than $122,461.

### B. Restitution Due to Pauline

As set forth in the 2/22/23 GVO Supp., the government has calculated the losses already incurred by Pauline and the losses reasonably expected to be incurred in the future. Pauline's losses fall into four main categories, as summarized below.

| Category | Amount |
|---|---|
| Future Medical and Mental Health Care | $991,008 |
| Past Medical Expenses | $42,000 |
| Lost Income | $100,000 |
| Other (fee for obtaining medical records) | $28 |
| **TOTAL** | **$1,133,036** |

In calculating the amount of Pauline's future medical and mental health care, the government relied on a report authored by Dr. Cooper. *See* 2/22/23 GVO Supp., Exhibit 5. Dr. Cooper assessed Pauline during a two-hour telephone call and, later, participated in a virtual evaluation with Pauline for one hour. *Id.* at 6.

7

As discussed above, Dr. Cooper opined that toxic stress is seen in many survivors like Pauline, who were victims of child sexual exploitation associated with the production of child sexual abuse material. *Id.* at 5.

### C. Restitution Due to Nia

Dr. Cooper has also evaluated Nia, however, the government has not received the report at this time. At a minimum, Nia is entitled to receive restitution for future therapy. As set forth in the 2/3/23 GVO Supp., the government estimates that the cost of Nia's future therapy is $80,640. The request for future therapy is supported by the background information included in Dr. Cooper's reports related to Jane and Pauline regarding the impact of child sexual abuse. *See* 2/3/23 GVO Supp., Exhibit 1 (Exhibit A at 6) ("The victim impact of a sexual assault has been researched and found to be particularly egregious when a victim is a minor[.]"). *See also United States v. Dickey*, 52 F.4th 680, 687-88 (7th Cir. 2022) (finding no abuse of discretion where court considered expert's conclusions based on the victims as a group, rather than individually, and the expert's collective analysis where the victims suffered similar abuses by defendant and experienced comparable symptoms after the abuse). Dr. Cooper's report may contain additional information to support other future medical needs that take into account the "full amount" of Nia's losses.

As set forth in 18 USC 2259(b)(4)(B), "[a] court may not decline to issue an order under this section because of … (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any

8

other source." *See also* 18 U.S.C. § 3664(f)(1)(B). At trial, Nia testified that she filed a civil lawsuit against Kelly in 2002. GVO Ex. L, Tr. 2615. However, the record does not indicate the amount that Nia actually received as a result of this lawsuit. According to additional court records, attached as Exhibit 3 (filed under seal), there was additional litigation over the settlement funds. According to information received from Nia on February 22, 2023, she believes that she received approximately $200,000 to $220,000 in connection with the civil lawsuit. The remainder of the $500,000 settlement went to Nia's attorneys who represented her in the civil case.

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court Order restitution to Jane, Pauline, and Nia.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ Elizabeth R. Pozolo*
JEANNICE APPENTENG
ELIZABETH R. POZOLO
JASON JULIEN
BRIAN WILLIAMSON
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604

9