**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

UNITED STATES OF AMERICA,

                                           CRIMINAL
        vs.                         NO. 19-cr-00699-NLH

LARRY L. McGEE,

        Defendant.                  Sentencing

_____

    Mitchell H. Cohen Building & U.S. Courthouse
    4th & Cooper Streets
    Camden, New Jersey 08101
    Thursday, May 6, 2021
    Commencing at 2:05 p.m. via Zoom

**B E F O R E:**   **THE HONORABLE NOEL L. HILLMAN**
                  **UNITED STATES DISTRICT JUDGE**

**A P P E A R A N C E S:**

    OFFICE OF THE UNITED STATES ATTORNEY
    BY:  CATHERINE R. MURPHY, AUSA
    970 Broad Street
    Newark, NJ  07102
    For the United States

    BROWNSTEIN & ASSOCIATES
    BY:  HOWARD B. BROWNSTEIN, ESQUIRE
    512 42nd Street
    Union City, NJ  07087
    For the Defendant

    U.S. PROBATION OFFICE
    BY:  DANIEL CARNEY

    LARRY L. McGEE, DEFENDANT

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

       Robert T. Tate, Official Court Reporter
              Bob@Tate-Tate.com
              (609) 462-4384







United States District Court
Camden, New Jersey

















































*United States District Court*
*Camden, New Jersey*



United States District Court
Camden, New Jersey









```
 1   the Court.)
 2          THE COURT:  For those signing on, please mute your
 3   microphones.  Ms. Novoa, do you have the capacity to mute
 4   anyone who doesn't mute themselves?
 5          THE COURTROOM DEPUTY:  Yes, Judge.  That's what I'm
 6   doing once they come in and I see that their audio is
 7   connecting, I automatically mute people.
 8          THE COURT:  All right.  Very good.  If you are
 9   signing on to these proceedings, kindly mute your microphone
10   or the host will mute your microphone for you.
11      Well, someone is still signing on, but I think we are
12   ready to proceed.
13      Mr. Tate, can you hear everybody so far?
14          THE REPORTER:  I can, Judge.  Thank you.
15          THE COURT:  All right.  This is the day set aside for
16   sentencing, United States versus Larry McGee, Criminal Number
17   19-699.  May I have appearances, please, first for the United
18   States?
19          MS. MURPHY:  Good afternoon your Honor.  Catherine
20   Murphy, Assistant United States Attorney, on behalf of the
21   government.
22          THE COURT:  And for the defendant.
23          MR. BROWNSTEIN:  Good afternoon, your Honor.  Howard
24   Brownstein on behalf of Larry McGee, who is presently on the
25   screen.
```

```
 1           THE COURT:  All right.  Mr. Brownstein, welcome to
 2    you as well.
 3           MR. BROWNSTEIN:  Thank you.
 4           THE COURT:  Mr. Brownstein, in a moment I'm going to
 5    ask your permission to swear your client so I can make inquiry
 6    regarding proceeding by video today.  Let me note for the
 7    record that through the public website for the United States
 8    District Court for the District of New Jersey we received
 9    three requests to observe these proceedings and links were
10    provided.  We have a number beyond that three-person number,
11    presumably because of the sharing of that link.
12           Let me state for the record and to be absolutely clear
13    that if you are observing these proceedings -- rather, I'll
14    say that Mr. Tate is the official court reporter for these
15    proceedings and is the only person authorized to make any
16    video or audio recording of these proceedings.  This is
17    longstanding Judicial Conference policy, the law of the United
18    States, and the standing order of this Court.  Any violation
19    of this rule is subject to the contempt powers of the Court,
20    including criminal contempt.
21           The next order of inquiry, Mr. Brownstein, may I make
22    inquiry of your client regarding proceeding by video?
23           MR. BROWNSTEIN:  Yes, your Honor.
24           THE COURT:  All right.  Ms. Novoa, could you please
25    administer an oath?
```

1          Mr. McGee, good afternoon.  Ms. Novoa will administer

2     an oath.

3               THE DEFENDANT:  How you doing?

4               THE COURTROOM DEPUTY:  Sir, please raise your right

5     hand.

6          Do you solemnly swear or affirm that all the testimony

7     you are about to give in the case now before the Court will be

8     the truth, the whole truth, and nothing but the truth, so help

9     you God?

10              THE DEFENDANT:  Yes.

11              THE COURTROOM DEPUTY:  Please state your name and

12    spell your last name for the record.

13              THE DEFENDANT:  Larry McGee, M-C-G-E-E.

14              THE COURTROOM DEPUTY:  Thank you.

15              THE COURT:  Mr. McGee, could you either turn your mic

16    up a little bit or maybe move closer to your computer so we

17    can hear you a little better?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  All right.  Thank you for that.

20         Good afternoon, sir.

21              THE DEFENDANT:  How are you, sir?

22              THE COURT:  All right.  You're in a private

23    residence?

24              THE DEFENDANT:  Yes, sir.

25              THE COURT:  All right.  And that private residence is

1    yours?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  All right.  Are you comfortable there?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Anyone else present in the room?

6            THE DEFENDANT:  No, sir.

7            THE COURT:  All right.  Have you had any drugs or

8    medicine or pills or anything that affects your ability to

9    make reasoned decisions?

10           THE DEFENDANT:  No, sir.

11           THE COURT:  Do you understand that today is the day

12   set aside for your sentencing?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Do you understand that sentencings are

15   normally conducted in an open courthouse in an open courtroom?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  So, if you wanted to have supporters

18   there or any other interested members of the public might want

19   to attend, they could do so.  Do you understand that?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  That if you wanted to consult with Mr.

22   Brownstein during these proceedings at any time by being next

23   to him in the courtroom, all you would have to do is lean

24   over, whisper in his ear, or ask for an adjournment, correct?

25           THE DEFENDANT:  Yes, sir.

 1          THE COURT:  All right.  Now, you may know that the

 2    courthouse has been closed for quite some time.  I can't

 3    remember the last time you were before me, but I assume we

 4    proceeded during the pandemic, that would be my recollection.

 5    There's a previous order entered, Ms. Murphy.  Do you recall

 6    that I made inquiry of you before about proceeding by video?

 7          THE DEFENDANT:  Yes, sir.

 8          THE COURT:  All right.  One of the ways we try to

 9    replicate an in-court proceeding, in addition to providing

10    access to the public, is to provide you an opportunity to

11    speak to Mr. Brownstein privately.  If at any time during

12    these proceedings you wish to do that, all you have to do is

13    ask and we'll put you in a private breakout room for purposes

14    of consultation with counsel.  Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  All right.  And Mr. Brownstein knows to

17    ask for that as well if he determines that that's appropriate.

18          Now, the courthouse is open for criminal proceedings

19    where defendants do not consent to video.  In other words, we

20    could hold a sentencing hearing in open court in light of a

21    recent order entered by the Court if that were your choice.

22    Whether proceeding in person or by video is entirely up to

23    you.  Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And you've had an opportunity to speak to

 1   Mr. Brownstein about that?

 2          THE DEFENDANT:  Yes, sir.

 3          THE COURT:  And the consent that you previously

 4   granted for purposes of video continues through this

 5   proceeding?

 6          THE DEFENDANT:  Yes, sir.

 7          THE COURT:  All right.  Mr. Brownstein, you discussed

 8   the options with him?

 9          MR. BROWNSTEIN:  Yes, your Honor.

10          THE COURT:  And do you believe proceeding by video is

11   in his best interests?

12          MR. BROWNSTEIN:  Absolutely, your Honor.

13          THE COURT:  All right.  Could I get a brief proffer

14   from the United States about why the United States believes

15   proceeding by video would be appropriate in this case?

16          MS. MURPHY:  Certainly, your Honor.  The United

17   States has submitted a proposed COVID-19 order to your Honor

18   which sets forth that proceeding today by video is in the

19   interests of justice, first to ensure that the Court is not

20   overwhelmed by cases and proceedings at the conclusion of this

21   period of emergency, particularly in this district given that

22   there are multiple judicial vacancies.

23          Proceeding by video today also permits Mr. McGee to

24   obtain a speedy resolution of his case and to permit the

25   victim of the offense the ability to obtain a speedy

1  determination of guilt responsibility for the harm caused by

2  Mr. McGee.

3  Proceeding by video today is also in the interests of

4  justice as it permits the government to obtain a resolution

5  given that the government is operating in a restricted

6  capacity in light of the pandemic.

7  Finally, the offenses charged in this case occurred

8  between 2016 and 2019, and the government understands that Mr.

9  McGee would like to move forward and resolve this case without

10  undue delay.

11  THE COURT:  All right.  Mr. Brownstein, do you agree

12  with those proffered reasons?

13  MR. BROWNSTEIN:  Yes, your Honor.

14  THE COURT:  All right.  Mr. McGee, do you agree with

15  those reasons?

16  THE DEFENDANT:  Yes, sir.  Yes, your Honor.

17  THE COURT:  All right.  I find that the requirements

18  of the CARES Act and the standing orders of the Court have

19  been satisfied in this matter, that Mr. McGee understands his

20  options, and that he wishes to continue to consent to video

21  proceeding and we will do so now.

22  All right.  I like to begin by reviewing the written

23  sentencing materials that have been submitted to the Court for

24  consideration here at sentencing.  I'd like to begin with Ms.

25  Murphy, as well as confirm receipt of the presentence

1   investigation report and identify contested issues, and I

2   believe that there are two.

3         First, Ms. Murphy, I received a comprehensive

4   sentencing memorandum and addendum from you as well in support

5   of an anticipated departure.  Are there any other written

6   sentencing materials from the United States?

7         MS. MURPHY:  Nothing further.

8         THE COURT:  All right.  And I have a final written

9   presentence report dated January 13th, 2021.  Is that the

10  report that you have?

11        MS. MURPHY:  That is the report that the government

12  has, your Honor.

13        THE COURT:  All right.  Now, there are I believe two

14  issues where Probation differs from the parties' plea

15  agreement, and I believe that they are found at paragraphs 51

16  and 53, correct?

17        MR. BROWNSTEIN:  Yes, your Honor.

18        THE COURT:  Other than those two issues, which we

19  will resolve at step one, Ms. Murphy, are there any other

20  objections, corrections or additions to the report?

21        MS. MURPHY:  The only correction the government would

22  make is with respect to the final sentence of paragraph 17.

23  The government respectfully requests that it be changed to

24  reflect that the investigation eventually revealed that the

25  identities of approximately 79 individuals were used as part

```
 1   of this scheme and that a majority of these individuals were
 2   inmates.
 3           THE COURT:  Yes.  And I remember that from the
 4   sentencing of a co-defendant, sentencing of co-defendants.
 5   Thank you for reminding me that.  We fixed that in the
 6   statement of reasons rather than reissue the report.
 7       Mr. Brownstein, any objection to that change?
 8           MR. BROWNSTEIN:  No, your Honor.
 9           THE COURT:  All right.  Thank you, Ms. Murphy.
10       Mr. Brownstein, the same series of questions from you.
11   I have a sentencing memorandum dated April 23rd, 2021,
12   offering reasons for mitigation of sentence in support of the
13   government's anticipated motion and accompanied by several
14   letters written on Mr. McGee's behalf speaking to his good
15   qualities, both personal and professional and in his
16   community.  I have read those letters and will take them into
17   consideration here today.
18       I would like to know, Mr. Brownstein, are there any
19   additional written materials from the defense?
20           MR. BROWNSTEIN:  No, your Honor.
21           THE COURT:  All right.  And have you had an
22   opportunity to review the January 13th, 2021 report with your
23   client?
24           MR. BROWNSTEIN:  Yes, your Honor.
25           THE COURT:  Any corrections, additions or objections
```

1    other than the ones that will be joined at step one?

2              MR. BROWNSTEIN:  No, sir.

3              THE COURT:  All right.  Let's turn then to step one

4    of the sentencing process.  Here the Court considers the

5    advisory sentencing guidelines or calculates the advisory

6    sentencing guidelines.  They are indeed advisory, they're one

7    factor among many that the Court will consider in determining

8    its overall sentence after step three.  We calculate them

9    because they represent a benchmark or reference point for any

10   departures or variances that the Court may grant on

11   application of the parties or may calculate on its own motion.

12   Such departures and variances are best imposed in conjunction

13   with an accurate calculation of the guidelines to ensure

14   uniformity in sentencing and to avoid unwarranted disparity.

15             So, if we turn to page 49 of the report, we will see

16   that the 2018 guideline is used.  Probation concludes a base

17   offense level of 7.  And then in paragraph 51, we encounter

18   the first dispute that the parties appear to have with

19   Probation's conclusions.

20             Probation concludes that the amount of loss in this

21   case is more than $1.5 million, although just barely, but not

22   more than $3.5 million, more specifically, $1,506,420.76, and

23   adds 16 levels.  The parties had stipulated to a level -- an

24   increase of 14 levels with a loss of more than $500,000 but

25   less than $1.5 million.

1    The primary, although it's sprinkled throughout the

2    presentence report, the primary basis for this conclusion is

3    found, based on my review, in paragraphs 26, 27 and 28, and is

4    based on, as set forth in the report, the probation officer

5    author's review of the underlying information and

6    investigative documents prepared by the Federal Bureau of

7    Investigation.  This is found at paragraph 14.

8    I know the United States would stand by its stipulation

9    and its plea agreement and will probably not want to further

10   address this issue.  Mr. Brownstein, I'll hear you on it.  I

11   know you object to it, and I understand your arguments about

12   the relative role of Mr. Arena and Mr. McGee, but this seems

13   to be based on specific findings that the scheme extended for

14   some period of time after Mr. Arena ceased activities and some

15   additional loss was incurred, and that's why the loss to Mr.

16   McGee is slightly higher.  I don't have any reason to question

17   that other than your objection to it, and the recitation that

18   it relies on underlying FBI records would seem to be

19   sufficient indicia of reliability.  How can you prove to me

20   that this number is wrong?

21       MR. BROWNSTEIN:  Well, I'm not exactly sure how the

22   number came -- they came about that number.  Secondly, the

23   Court did receive a forfeiture order where the amount is

24   $300,000, what Mr. McGee was involved in this incident, which

25   is even a guideline level enhancement of 12, not even 14.  So,

where they came up with this extra couple of dollars and how they got over the 15 hundred, and I see where, I think Mr. Arena was still involved, but is saying that Mr. McGee referred people, other individual, Mr. Paulino, which I think was someone who is also involved with Mr. Arena, and he went to a jewelry store in New Jersey, which Mr. McGee did not know, was not involved in, had never been to New Jersey, and never knew the owner of the jewelry store. So, how all this is enhanced and where the initial numbers come from, I can't say.

All I know is that I reviewed what Ms. Murphy sent me on the forfeiture. It was $308,000. We're talking about a minor amount of money over the guideline level of 15 hundred -- $150,000, and I'd ask the Court to concur with the agreement between the government and the defense in the plea agreement.

THE COURT: Well, again, Ms. Murphy, I'll leave it to you whether you want to address any of this or not. My understanding from the last -- from the sentencing of a co-defendant is that the forfeiture numbers are based on gain, but the calculation of loss is based on loss, and that's the difference, why there's a difference.

In terms of the jewelry store and all of that, I can only rely on what I've read and what Probation has told me, which is that Mr. McGee is responsible for those additional

1   transactions as they relate to fraudulent identities and/or

2   credit that Mr. McGee was involved in.  He doesn't have to put

3   the money in his pocket to be responsible for that loss as a

4   matter of loss determinations under the guidelines.

5       If you want to adjourn the sentencing and take this up

6   with Probation and ask them, you know, do a show me, do a show

7   and tell, that's the way this really should be addressed.  I

8   can't rely on the forfeiture number to dispute this.  I would

9   have to see a calculation from you that disputes Probation's

10  calculation.  Otherwise, I would find by a preponderance of

11  the evidence, as set forth in the presentence investigation

12  report that has not been specifically challenged, only

13  generally challenged, as accurate and complete.  I'll leave it

14  to you.

15      MR. BROWNSTEIN:  Well, Judge, as I said, it's a minor

16  difference between the level 16 and a level 14, which makes a

17  big difference as far as a sentence is concerned.  I don't

18  have the documents in front of me nor did I have the documents

19  for me to calculate what the actual loss was.  I don't know

20  the accuracy of the FBI information, I can't say.  But for

21  such a minor situation, I'm not going to ask for an

22  adjournment to be able to go back and go through that, Judge.

23  I'll just move forward, and if the Court feels an increase of

24  16 levels, I think 14 as we agreed upon, Ms. Murphy knew what

25  the numbers were when we came to the agreement, and I'd ask

1    for the Court to abide by our agreement.

2            THE COURT:  All right.  Well, I'll offer to Ms.

3    Murphy the opportunity to represent to the Court that she sat

4    down with you and the FBI and the FBI number for Mr. McGee was

5    below 1.5.  I just don't, I don't have any -- I have

6    Probation's findings, which is based on an assertion by them

7    that they met with the FBI, they reviewed the records, and

8    they calculated this amount.  I don't have anything to

9    undermine that, and either I've got to hear it from the

10   government or I'll hear it from you, and other than, Judge, we

11   stipulated to a different number and the forfeiture number is

12   different.  I'll provide that opportunity to you.

13           I will take, if I accept this, I will still take into

14   consideration at step three the argument you have just raised,

15   which is valid, is that he goes from a 14 to a 16 and two

16   points ain't nothing for $6,000 and that just seems a little

17   out of whack, and that can be taken into consideration in the

18   overall sentence.  I think that's fair.  But I don't have any

19   reason to doubt Probation's calculation.  Unless I have more,

20   I'm going to adopt it.

21           Ms. Murphy, do you wish to be heard on this issue?

22           MS. MURPHY:  Your Honor, I can just represent that

23   the government stands by the terms of its plea agreement.  Mr.

24   McGee pled guilty before the other defendants.  It reflects

25   the loss calculation at the time that he entered his plea, and

1  additional information was provided to Probation and that's

2  the loss calculation you see here.  I shared the basis for

3  that loss calculation with Mr. Brownstein.  But I stand by the

4  terms of the parties' plea agreement, which is a loss amount

5  of up to $1.5 million and an offense level of 14.

6       THE COURT:  But you are not prepared to prove that

7  Probation is wrong?

8       MS. MURPHY:  No, I don't believe the number is wrong.

9       THE COURT:  All right.  I'm going to accept

10  Probation's calculation of the loss amount and compute the

11  specific offense characteristic as a level 16 and turn to the

12  next issue.

13       From there, two points are added because there was an

14  unauthorized transfer or use of any means of identification

15  unlawfully to produce or obtain another means of

16  identification.  And then we come to the next issue that's

17  joined for the calculation of the guidelines, and that is

18  whether the defendant knew or should have known that the

19  victims of the offense were vulnerable.

20       I previously applied this in the Arena sentencing.  I

21  can't recall whether I applied it in the Modeliste one or not,

22  but as we discussed very briefly in the modification of the

23  presentence report, Mr. Arena, through his own devices,

24  apparently, obtained the information of incarcerated

25  individuals, and then using their identifiers engaged in

1    certain transactions and credit line modifications, adding in

2    false vendors and so forth in order to boost the credit scores

3    of those individuals, and then was going to use those lines of

4    credit, as he did, as part of this scheme, and that Mr. McGee

5    joined in the scheme knowing of its extent.

6         In light of the use of vulnerable victims, as I

7    previously found, in order to further this conspiracy, this

8    seems to be an appropriate adjustment.  I recognize it was not

9    contemplated by the plea agreement, but again, in light of the

10   findings of the presentence report, it appears that it is an

11   appropriate specific offense characteristic at step one.

12        Mr. Brownstein, is there anything you want to add to

13   the record or argue to me to convince me that the vulnerable

14   victim enhancement should not be applied to Mr. McGee?

15        MR. BROWNSTEIN:  As I said, the vulnerable victim had

16   no damage done to them based on the scheme that Mr. Arena

17   created.  The only one who had a damage done was the Synchrony

18   Bank.  There was no -- the individuals, inmates, whatever

19   names you want to use, were not vulnerable -- were not in any

20   way damaged by the scheme to defraud.  They do not owe any

21   money.  The only one that is owing money to is Mr. McGee, Mr.

22   Arena to the Synchrony Bank, and that's what the loss is

23   about.  So, I don't think the victim enhancement should apply

24   here.

25        THE COURT:  All right.  Well, I'll hear from Ms.

1    Murphy if she wants to be heard on this.  I'm not sure I'm

2    convinced of that.  Essentially what happened is the identity

3    of these individuals were stolen and credit lines, which were

4    not -- were inflated and not paid in full were obtained.  This

5    very likely would have a negative impact on the credit rating

6    of the individuals whose identities were stolen, even if a

7    decision not to pursue them for the loss was made.  I'm not

8    prepared to find that there was no actual loss or

9    victimization of the individual whose identity was stolen.

10   They may not be owed restitution, but they still had their

11   identities stolen and lines of credit taken out in their name

12   without their authorization.  In fact, that's the very nature

13   of the scheme here.

14        I consider, under the terms of relevant conduct, for

15   them to have been victims of either a state, a local, state or

16   federal crime based on that unauthorized use of their

17   identities to obtain credit.  Relevant conduct does not have

18   to be charged.  It only has to be fairly established.  That

19   the government only chose to charge Mr. Arena, Mr. McGee, Mr.

20   Modeliste with bank fraud, in this case conspiracy to commit

21   bank fraud and bank fraud, doesn't mean unauthorized access to

22   credit accounts or identity theft was not part and parcel of

23   the scheme.  In fact, it seems to me to be a central part of

24   the scheme.  So, I would apply this enhancement.

25        Anything else on that, Mr. Brownstein?

1            MR. BROWNSTEIN:  No, your Honor.

2            THE COURT:  Ms. Murphy?

3            MS. MURPHY:  Nothing further from the government.

4            THE COURT:  All right.  I'm going to add the two

5    points and determine that the adjusted offense level is a

6    level 27.

7            Probation concludes that Mr. McGee has accepted

8    responsibility and did so in a timely manner.  In fact, I'm

9    told that he immediately cooperated with the United States in

10   this case, and, therefore, I calculate the adjusted offense

11   level as a level 24.

12           Mr. McGee's criminal history is calculated beginning at

13   paragraph 61.  One point is assessed for an 11-year-old, or

14   so, 10-and-a-half-year-old matter in Illinois and that's the

15   only point calculated.  Because he has a one-point criminal

16   history score, he's in criminal history category I.  Those two

17   things taken together, level 27 and -- rather, level 24 did I

18   say?  Level 24 and a criminal history category of I, means an

19   advisory sentencing guideline range of 51 to 63 months.

20           Other than the issue about the amount of the loss and

21   vulnerable victim, are there any other reasons -- any other

22   objections to the report and may I otherwise adopt it in full,

23   Ms. Murphy?

24           MS. MURPHY:  No objections from the government.

25           THE COURT:  Mr. Brownstein?

     1          MR. BROWNSTEIN:  Nothing further, your Honor.

     2          THE COURT:  All right.  The parties' rights with

     3    regard to the two calculations that I have determined are

     4    preserved.  I'll adopt the findings of the presentence report

     5    in support of those two specific offense characteristics.

     6          We then turn to step two of the sentencing process.

     7    The Court has not provided any advance notice to the parties

     8    about its intention to depart on its own and, therefore, will

     9    not depart on my own.  I understand from a submission made to

    10    the Court in camera that the United States has a departure

    11    motion.  For the record, 5K1.1 allows the Court to consider

    12    the support, any support for a departure motion under 5K1.1 in

    13    camera.

    14          I received a written submission from the United States

    15    as part of the sentencing process here with regard to a

    16    departure motion.  I have also considered proffers from Mr.

    17    McGee and Mr. Brownstein in order to have a fuller picture of

    18    the basis for such a departure, and I invite Ms. Murphy to

    19    make any departure motions now that she wishes to make.

    20          MS. MURPHY:  Your Honor, the government moves for a

    21    departure based on 5K1.1 and as support the government refers

    22    to its April -- the addendum A to its April 29, 2021

    23    sentencing memorandum.

    24          THE COURT:  All right.  Mr. Brownstein, this is a

    25    motion you do not oppose, indeed I take it that you join in

1    it?

2              MR. BROWNSTEIN:  I do.

3              THE COURT:  All right.  And I appreciate both sides

4    providing information so that I can fully complete -- fully

5    consider this motion.

6              Under this motion, the Court has the authority to

7    depart from the guidelines if the Court concludes, after

8    review of five statutory factors, that the defendant has

9    provided substantial assistance in the investigation or

10   prosecution of another person who has committed an offense.  I

11   am told of three separate matters that Mr. McGee has provided

12   assistance on.  One is the matter pending, that was pending in

13   this Court or is pending in this Court.  Mr. Arena and Mr.

14   Modeliste have both pled guilty and have been sentenced, and

15   that's a partial basis for the departure motion that has been

16   made before me.

17             In a related case, Mr. McGee provided assistance

18   regarding Mr. Arena for which he has pled guilty in a state

19   matter in State Court in New York.

20             I have also received information from the United States

21   concerning a matter in another federal district and have taken

22   that into consideration as part of my overall determination as

23   to an appropriate departure.

24             My review of the in camera submissions on those three

25   matters demonstrates to my satisfaction that in those three

1   matters, that Mr. McGee has provided useful and significant

2   information, and that the government concurs in that

3   evaluation of the assistance rendered; indeed, in the present

4   matter before me two significant convictions were obtained

5   against co-defendants.  Mr. McGee's explanation of the scheme

6   and the involvement of others was no doubt a factor in those

7   guilty pleas and he's to be entitled to a departure for that

8   alone.

9        Significantly, he assisted another prosecution entity,

10   another sovereign in another matter related to Mr. Arena and

11   as has been relayed to me, the investigators in that matter

12   were quite satisfied with the information provided and indeed

13   indicated that it saved them years of work.

14        The other matter has also been a subject of

15   cooperation, and I have received information from the

16   government in camera that indicates that this additional

17   cooperation has been considered by the government to be

18   significant and useful.

19        The Court determines that, on the record before me,

20   that the truthfulness, completeness and reliability of that

21   information has been unquestioned by individuals who have

22   relayed information to me.  I have nothing from a government

23   or reliable source indicating that Mr. McGee has been anything

24   other than reliable, truthful and complete in his matters of

25   cooperation with state and federal authorities.

 1      The nature and the extent of the assistance appears to

 2  be extensive historically and providing background

 3  information, and this is, given the breadth across

 4  jurisdictions, the nature of these schemes and the importance

 5  of having an individual with insider knowledge makes such

 6  assistance substantial because of that insider status.

 7      The fourth factor is whether the defendant suffered or

 8  there's any danger or risk to the defendant or his family

 9  resulting from his assistance.  There's always a risk of such

10  risks anytime anyone does cooperate.  My overall assessment of

11  this, based on the in camera submissions, is that Mr. McGee

12  suffers a higher, higher than ordinary risk of such danger,

13  and I'm taking that into consideration in determining my

14  overall sentence.

15      In terms of the timeliness of the defendant's

16  assistance, I'm told from the government that Mr. McGee

17  cooperated in a timely fashion in the matter before me, in the

18  other state matter and in other federal matters, and has been

19  unwavering in his ability and desire to provide such

20  assistance.

21      So, I find on the record before me that Mr. McGee is

22  entitled to a substantial departure from the guidelines

23  calculated at step one.  I previously calculated them at 51 to

24  63 months.  I will vary -- or depart, rather, down seven

25  levels at step two to 24 to 30 months in light of the

 1   cooperation and the government's motion.

 2        Let me ask the United States whether they wish to

 3   address that motion any further?

 4        MS. MURPHY:  The United States does not wish to

 5   address the motion any further.

 6        THE COURT:  All right.  Mr. Brownstein?

 7        MR. BROWNSTEIN:  No, it's guidelines discretionary

 8   and we will move forward from there, Judge.

 9        THE COURT:  All right.  We then turn to step three of

10   the sentencing process.  Here I offer to Mr. Brownstein the

11   opportunity to make any arguments in mitigation of sentence,

12   to offer any additional evidence he wishes the Court to

13   consider, and, Mr. McGee, I invite you to address the Court

14   personally if there's anything you want me to know before I

15   pronounce sentence, and Mr. Brownstein may take those up in

16   the order he sees fit.  Mr. Brownstein.

17        MR. BROWNSTEIN:  I think Mr. McGee would like to

18   address the Court, and I'd like to have him address the Court

19   first if the Court doesn't mind.

20        THE COURT:  All right.  Very good.

21        Mr. McGee, good afternoon again, sir.

22        THE DEFENDANT:  Sir, Dear Honorable Judge Noel

23   Hillman.  I understand that my actions caused us to be here

24   today.

25        THE COURT:  Mr. McGee, can you speak up a little more

1   loudly for me?  Because I can hear you, but just barely.

2   Maybe I'll turn my volume up a little.  Maybe that's my

3   problem, maybe I'm part of the problem.  Sorry.  Go ahead.

4         THE DEFENDANT:  Dear Honorable Judge Noel Hillman, I

5   understand that my actions have caused us to be here today.

6   I'm very sorry and aware of my efforts in this case.  I am

7   guilty.  I knew what I was doing was wrong.  I placed the

8   burden on my uncaused family.  I should not have participated

9   in any of this.

10         The effects of my actions have caused uncertainty in my

11   household.  I recently, two, three years, just moved over here

12   in search of a better education and schools and area for my

13   kids.  My wife depends on me greatly.  All my kids are under

14   my roof.  I have embarrassed my family and friends.  My two

15   eldest daughters recently graduated from college and here I am

16   in Federal Court about to get sentenced.  It is unbearable to

17   look at my kids' face regarding this topic, and everybody is

18   still trying to show me sympathy, but it was just stupid, and

19   I don't know, I'm sorry and I'm just going to -- I don't know.

20         I'm -- I just want to move forward.  I have a plan to

21   pay Synchrony their money back.  I should have never got

22   involved with this.  I should have never got involved with

23   him.  I knew what I was doing was wrong.  I can't -- I

24   can't -- I can't lie and say certain people in my life told me

25   it was a bad idea.  You know, it was a bad idea, but I was

```
 1   trying to put my family ahead.  It was a stupid -- it was so
 2   stupid.  I just, I just wish I would have did things
 3   different.
 4        I get out of this, I'm going to trucking school.  I do
 5   not want to disappoint my wife, my kids.  I won't be back in
 6   nobody's court, and I am going to continue my -- to advocate
 7   against human trafficking.  I'm going to keep going with that.
 8   Thank you, your Honor.
 9        THE COURT:  All right.  Mr. McGee, thank you.
10        Mr. Brownstein.
11        MR. BROWNSTEIN:  Well, I think all has been said,
12   Judge.  I don't think Mr. McGee, as I put in my sentencing
13   memo, I don't think I need to enhance more of what I said in
14   my sentencing memo, and to me my credibility is very important
15   before a court.  Maybe in my 47-year career of doing this,
16   I've recommended maybe the number of fingers on my hands, that
17   someone shouldn't go to jail, ask for a non-custodial
18   sentence.  I don't do that lightly.  I don't do that because
19   to me it's very important that I have credibility with this
20   Court.  This Court has known me probably 25 years when he was
21   an Assistant U.S. Attorney, and it's very important to me that
22   what I say is taken as gospel and as true and that I would not
23   in any way ask for something I don't think is appropriate.
24        I think when, if the Court has departed down to 24
25   months, it's a discretionary guideline number.  I think
```

1  personally that, and as I said, Mr. McGee should be a

2  non-custodial sentence.  The reasons why I have already

3  articulated.  And he's still doing things to help individuals

4  in society.  His blog is still helping young women, still

5  helping little girls, still helping society to prevent the

6  predators and the pedophiles and preying on these young

7  children, vulnerable children.  I think that to stop him and

8  to prevent him from continuing his assistance in many

9  different areas and putting him in custody will not accomplish

10  anything but hurt the good that he's done, the good that he's

11  continuing to do, and the good it is in helping all these

12  young women.  His daughters help him with the blogs.  They

13  basically try to assist in the pain and helping these young

14  kids that have been traumatized, and he's continuing to do

15  that and he does it every day.

16       And again, Judge, if the Court feels that there has to

17  be some sort of sentence other than a non-custodial, I would

18  ask for the Court to sentence him to a house arrest.  The

19  Court can sentence him up to a year, 10 months to a year on

20  house arrest.  This way at least he can continue the good

21  things that he is doing.  He will not be separated from his

22  family.

23       But more importantly, because everybody has that issue,

24  as though everyone and anyone I represent has that issue,

25  being separated from their loved ones, that's not the main

1  situation here.  What the main situation and what I'm asking,

2  why I'm asking what I'm asking is because of all the good that

3  he's doing and all the good that he has done.  So, to prevent

4  that by incarcerating him accomplishes nothing.  It's just

5  another black man going to jail on a non-violent case.

6      And this mass incarceration, it goes on in this

7  country, the largest in anywhere in the world, and I don't

8  know if you read Judge Rakoff's book or not, he talks about

9  that, and it is going to accomplish nothing in putting him in

10  custody, Judge.  And that's why I sincerely mean what I'm

11  saying, and I wouldn't -- I don't say it lightly.  As I said,

12  I can count on my hands in 47 years that I've requested this,

13  and I believe what I'm saying is true and necessary and

14  supportive of the record, and supportive for helping society

15  and the local people in Las Vegas and elsewhere that he's

16  assisting.  That's all I have to say, Judge.

17      THE COURT:  All right.  Mr. Brownstein, thank you.

18      All right.  Ms. Murphy, do you wish to be heard on

19  behalf of the United States?

20      MS. MURPHY:  Yes, your Honor.  First I would just

21  incorporate my April 29th, 2021 sentencing submission with

22  respect to the 3553(a) factors.

23      I would just like to note, with respect to the nature

24  and circumstances and the seriousness of the offense, the

25  government does obviously treat this very seriously.  This

1   crime in this case, you know, involved taking other

2   individuals, many of whom were inmates, PII, having their

3   credit inflated, applying for fraudulent credit cards in their

4   names, and then making fictitious transactions, the proceeds

5   of which were deposited into bank accounts controlled by Mr.

6   McGee and his co-conspirators.

7          The government does think it is appropriate, however,

8   to take into account Mr. McGee's role in this conspiracy.  He

9   was, his primary role was soliciting CareCredit and then

10  providing that CareCredit to Mr. Arena who was responsible for

11  submitting most of the fictitious transactions to Synchrony

12  Bank, and the government does recognize that Mr. Arena played

13  the largest role in terms of generating losses to Synchrony

14  Bank and he pocketed the largest amount of the fraudulent

15  proceeds here.

16         Also, with respect to the inmates, the government does

17  note that it was Mr. Arena that hired the hacker to obtain the

18  inmates' identities and it was Mr. Arena that inflated their

19  credit.  Mr. McGee obviously used these inmates' identities to

20  apply for these cards and profited, but I just bring Mr.

21  Arena's conduct to the Court's attention so that it may

22  consider that in light of fashioning an appropriate sentence

23  for Mr. McGee.

24         I think with respect to the other 3553(a) factors, I

25  would just rely on my written submission.

 1          THE COURT:  All right.  Ms. Murphy, thank you.

 2      Mr. Brownstein, anything further?

 3          MR. BROWNSTEIN:  No, your Honor.

 4          THE COURT:  All right.  I'm going to take a short

 5  break to consider the thoughtful arguments offered by counsel,

 6  to consult with Probation on the final language.  If you will

 7  bear with me for just few minutes, it won't take too long.

 8          MR. BROWNSTEIN:  Thank you, your Honor.

 9          (Recess at 3:47 p.m..)

10          (On the record at 3:51 p.m.)

11          THE COURT:  All right.  I am now obligated to impose

12  a sentence that's sufficient but not greater than necessary to

13  comply with the statutory goals set forth in 18, United States

14  Code, Section 3553.  My sentence should reflect the

15  seriousness of the offense, should promote respect for the law

16  and provide just punishment.  It should afford adequate

17  deterrence to criminal conduct, to protect the public from

18  further crimes of the defendant, and to provide the defendant

19  with needed educational or vocational training, medical care

20  or other correctional treatment in the most effective manner.

21      I'm to consider the nature and circumstances of the

22  offense, and the history and characteristics of the defendant,

23  the kinds of sentences made available for the count of

24  conviction, here there are two counts of conviction,

25  conspiracy to commit bank fraud and bank fraud; the kinds of

1   sentences and sentencing range based on a determination of an

2   accurate calculation of the sentencing guidelines as well as

3   the policy statements that accompany them.  I'm free to

4   disregard the sentencing guidelines and the policy statements

5   in fashioning my overall sentence and specifically to

6   determine that they may be inapplicable for various reasons.

7        I am to avoid unwarranted sentencing disparity among

8   defendants with similar records who have been found guilty of

9   similar conduct.  The Court has fraud cases before it, bank

10  fraud cases before it fairly regularly.  I'm mindful of those

11  overall cases.  And in this particular matter there are two

12  co-defendants who have been sentenced by the Court.  Mr. Arena

13  received a sentence of 48 months after a modest variance.  Mr.

14  Modeliste received a sentence of 36 months after a similar

15  calculation.  I'm mindful of those sentences in light of both

16  the arguments made by the government and the defense as well

17  as the departure motion in fashioning this overall sentence.

18       The defense argues that the two points that I

19  calculated, Probation calculated on the guidelines and

20  consistent with the plea agreement is particularly harsh given

21  the relative role of the three defendants in this case, and

22  we've all noted that it was just barely over the threshold for

23  the extra two points, $6,000 or so.

24       It's been described to me that Mr. McGee is contrite

25  and sorry for his conduct, as reflected in both his

1   cooperation and his decision to plead guilty, and is

2   consistent with his overall history and characteristics.  I've

3   heard him here today and believe him to be seriously

4   remorseful and contrite about his criminal behavior.

5        It's been argued in the sentencing memorandum that Mr.

6   McGee faced a very tough upbringing.  That seems to be well

7   established.  In spite of that, he has established himself as

8   a hard working individual, creative individual, indeed earns

9   a, currently earns a living and supports his family at least

10  in part through social media activities, clearly someone who

11  overcame a difficult background and is capable of achieving

12  important things.

13       I'm asked to consider that he, through his internet

14  activities, his social media activities, has engaged in

15  helping others in society who have suffered various traumas

16  and been victimized.  It appears to me that this is a

17  substantial effort, that it was not undertaken for purposes of

18  mitigating his sentence here, but represents a sincere desire

19  to help others who have suffered such traumas.

20       He is described to me as a family man in his

21  relationships.  He's been supportive of his natural children

22  and also children that have been under his custody and care.

23  He has strong family support and community support, as

24  evidenced in the letters submitted to me.

25       I have to balance this, these what are primarily

history and characteristics of the defendant largely
favorable, I should also add that his criminal history
category is I, and while there were some, maybe some
knucklehead things when he was very young, he's basically
lived a law abiding life since that time.  I have to balance
all these things against the nature and circumstances of the
offense, and, frankly, this is a very sophisticated, wide
ranging fraud that extended over a period of years, and I view
the inmates and others whose identities were stolen as true
victims in this case.  This appears to have been driven by
monetary gain and greed, and through especially Mr. Arena's
knowledge of credit reporting scores and credit repair, a
substantial amount of money was obtained from an insured
institution.

Now, that's reflected in the base offense level and the
amount of loss, but the fact of the matter is this is a
serious federal crime and a message should be sent to others
and to these defendants that if you engage in the systematic,
extensive, long ranging theft from an insured federal
institution and you are caught, that you are likely to serve a
substantial sentence, and my sentence will reflect this, the
broad harm caused to the individuals whose credit was stolen
as well as this institution.

Now, I should say I credit the government for their
explanation about the relative roles of the individuals.  I am

 1   not sure I fully appreciated it at Mr. Arena's sentencing, but

 2   I appreciate it now, that really in the order of involvement

 3   or responsibility for this, it's Arena first, McGee second,

 4   and Mr. Modeliste third, to the extent that Mr. McGee

 5   recruited him, and I think that's not a particularly favorable

 6   thing for Mr. McGee in that he recruited another individual to

 7   the conspiracy and directed him with regard to the creation of

 8   these fake bank accounts.

 9        So, this was a sophisticated fraud and Mr. McGee was

10   literally in the middle of it, and I think Mr. McGee needs to

11   understand that it's a serious crime and he's going to have to

12   pay a price for that in terms of some period of incarceration.

13   I understand the defense wants a non-custodial sentence.  I

14   understand that's within my authority and power.  But I don't

15   think it's appropriate given the amount of money stolen, how

16   long it lasted, the number of people involved, the recruiting

17   of others, and the broad harm that the scheme caused.

18        Overall, I believe a sentence of 18 months, which would

19   result from a two-level variance downward in light of Mr.

20   McGee's positive characteristics, I would depart -- rather,

21   vary in this matter down from the level 17 that I previously

22   computed to a level 15 after my consideration of the 3553

23   factors and impose a sentence of 18 months.  I would also

24   impose -- and those would run, would be on each of the two

25   counts to run concurrently.

1    I would impose a term of supervised release of five

2  years.  I would impose financial disclosure, new debt

3  restrictions, and self-employment disclosure while the

4  restitution amount remains unpaid.  I would order full

5  restitution in the amount of $1,506,393.76 to be paid to

6  Synchrony Bank.  That, of course, is subject to any funds

7  received to offset that amount paid by the co-defendants, that

8  amount representing the amount of the total fraud.

9    I would not waive -- I would waive fine in this case,

10 rather, because I find that Mr. McGee's financial situation

11 would not allow him to pay restitution, take care of his

12 family and also pay a fine.  It would be unnecessarily

13 punitive and perhaps interfere with his reintegration back

14 into society and support of his family.  So, I will waive a

15 fine in this case.  However, it is required under statute that

16 a total special assessment of $200 be imposed, and I would

17 impose that.

18    There is a final order of forfeiture coming my way or

19 did come my way, Ms. Murphy?  I'm sorry, I don't recall that.

20      MS. MURPHY:  It has been submitted to the Court, your

21 Honor.  It was sent in yesterday.

22      THE COURT:  All right.  Any objection to the

23 forfeiture order as submitted by the United States, Mr.

24 Brownstein?

25      MR. BROWNSTEIN:  No, your Honor.

 1          THE COURT:  All right.  I'll sign that order.

 2          Ms. Murphy, do you know of any legal reason why I can't

 3    impose the sentence I have just described?

 4          MS. MURPHY:  The government is not aware of any legal

 5    reason.

 6          THE COURT:  Mr. Brownstein?

 7          MR. BROWNSTEIN:  No legal reason, your Honor.

 8          THE COURT:  Pursuant to the Sentencing Reform Act of

 9    1984 -- I'm sorry.  Mr. McGee, I'm now going to pronounce

10    sentence.

11          Pursuant to the Sentencing Reform Act of 1984, it is

12    the judgment of this Court that you, Larry McGee, are hereby

13    committed to the custody of the Bureau of Prisons to be

14    imprisoned for a term of 18 months on each of counts 1 and 2

15    to be served concurrently.

16          Upon release from imprisonment, you will be placed on

17    supervised release for a term of five years.  This term

18    consists of terms of five years on each of counts 1 and 2, all

19    such terms to run concurrently.

20          Within 72 hours of release from custody, you must

21    report in person to the Probation Office in the district to

22    which you are released.

23          While on supervised release, you must not commit

24    another federal, state or local crime, must not possess a

25    firearm or other dangerous device, must not possess an illegal

1    controlled substance, and must comply with the other mandatory

2    and standard conditions that have been adopted by this Court.

3    You must submit to one drug test within 15 days of

4    commencement of supervision and at least two tests thereafter

5    as determined by the probation officer.

6         I'm going to impose those three special conditions I

7    indicated.  I do so because of the nature and circumstances of

8    the offense of conviction, the history and characteristics of

9    the defendant, the need for specific and general deterrence,

10   the need to protect the public, and to provide needed

11   correctional treatment to the defendant.  I find that these

12   conditions involve no greater deprivation of liberty than is

13   reasonably necessary.

14        First, upon request you must provide the U.S. Probation

15   Office with full disclosure of your financial records,

16   including commingled income, expenses, assets and liabilities,

17   to include yearly income tax returns.  With the exception of

18   the financial accounts reported and noted within the

19   presentence report, you are prohibited from maintaining or

20   opening any additional individual or joint checking, savings

21   or other financial accounts for either personal or business

22   purposes without the knowledge and approval of the U.S.

23   Probation Office.

24        You must cooperate with the U.S. Probation Office in

25   the investigation of your financial dealings, and must provide

 1   truthful monthly statements of your income.  You must

 2   cooperate in the signing of any authorization to release

 3   information forms permitting the U.S. Probation Office access

 4   to your financial records.

 5        You are prohibited from incurring any new credit

 6   charges, opening additional lines of credit, or incurring any

 7   new monetary loan, obligation or debt, by whatever name known,

 8   without the approval of the U.S. Probation Office.  You must

 9   not encumber or liquidate interest in any assets unless it is

10   in direct service of the restitution obligation or otherwise

11   has the express approval of the Court.

12        You must cooperate with the U.S. Probation Office in

13   the investigation and approval of any position of

14   self-employment, including any independent, entrepreneurial or

15   freelance employment or business activity.  If approved for

16   self-employment, you must provide the U.S. Probation Office

17   with full disclosure of your self-employment or other business

18   records, including, but not lilted to, all the records

19   identified in the Probation Form 48F, Request for

20   self-employment records, or otherwise requested by the U.S.

21   Probation Office.

22        It is further ordered that you must pay restitution in

23   the total amount of $1,506,393.76.  Payments should be made

24   payable to the U.S. Treasury and forwarded to the Clerk of the

25   Court in Trenton, New Jersey, for distribution to the

1    following victim:  Synchrony, Attention:  Fraud Restitution,

2    P.O. Box 105969, Atlanta, Georgia, 30348-5969.

3         The amount ordered represents the total amount due to

4    the victim for that victim's loss.  Your restitution

5    obligations will not be affected by any restitution payments

6    made by other defendants in this case, except that no further

7    payments will be required once payments by one or more of the

8    defendants, co-defendants fully satisfies the victim's total

9    loss or this defendant satisfies that loss.

10        The following defendants in the following case may be

11   subject to restitution orders to the same victims for the same

12   loss and indeed are:  Adam D Arena, Docket Number 19-699, and

13   Dwayne Modeliste, 19-699 as well.

14        This restitution is due immediately.  It's recommended

15   that you participate in the Bureau of Prisons Inmate Financial

16   Responsibility program.  If you participate in that program,

17   the restitution will be paid from those funds at a rate

18   equivalent to $25 every three months.  In the event the entire

19   restitution is not paid prior to the commencement of

20   supervision, you must satisfy the amount due in monthly

21   installments of no less than $200 to commence 30 days after

22   release from confinement.

23        You must notify the United States Attorney for this

24   district within 30 days of any change of mailing or residence

25   address that occurs while any portion of the restitution

1    remains unpaid.

2           As I indicated, I find that the defendant does not have

3    the ability to pay a fine.  I will, therefore, waive a fine in

4    this case.  It is, however, ordered that Mr. McGee pay to the

5    United States a total special assessment of $200, which is due

6    immediately.  That's $100 on each of the counts, two counts of

7    conviction.

8           The government has indicated and the defense consents

9    that an order of forfeiture will be entered and I will sign it

10   today.

11          I wish to advise you, Mr. McGee, of your right to

12   appeal your conviction and my sentence as applicable pursuant

13   to 18, United States Code, Section 3742, subject to any

14   preexisting appellate waiver that may limit that right.  If

15   you are unable to pay the cost of filing a notice of appeal,

16   you may request the Clerk of the Court to file a notice of

17   appeal on your behalf.  You have 14 days to do so.

18          All right.  Are there any recommendations that you wish

19   to make, Mr. Brownstein, regarding the service of his

20   sentence?

21          MR. BROWNSTEIN:  Yes.  I ask the Court to permit Mr.

22   McGee to self-surrender.  I'd ask the Court to recommend a

23   camp closest to his home in Las Vegas.  And that's it.

24          THE COURT:  All right.  Ms. Murphy, thoughts on that?

25          MS. MURPHY:  The government has no objection to Mr.

```
 1   McGee self-surrendering to a BOP facility.

 2              THE COURT:  All right.  Mr. Brownstein, I'm going to

 3   leave it to the Bureau of Prisons to determine the appropriate

 4   level of institution.  In light of the fraud charge and the

 5   amount of the sentence, he may very well go to a camp, but I'm

 6   going to let the Bureau of Prisons follow their guidelines and

 7   determine what they think is best.

 8         I will recommend an institution closest to his home

 9   address in light of the support of his family and his stated

10   obligations to them and hope that that will facilitate a

11   positive relationship with his family.

12              Mr. McGee, where you serve your sentence is entirely up

13   to the Bureau of Prisons.  I will recommend, however, that you

14   serve at an appropriate facility in the State of Nevada as

15   close as possible to your home address.

16         All right.  Is there anything else the United States

17   wishes me to address at this time?

18              MS. MURPHY:  Nothing further from the government,

19   your Honor.

20              THE COURT:  All right.  Anything else from the

21   defense?

22              MR. BROWNSTEIN:  Are there any counts to be

23   dismissed?

24              MS. MURPHY:  No counts to be dismissed.

25              THE COURT:  All right.
```

 1              MR. BROWNSTEIN:  Nothing further, Judge.

 2              THE COURT:  All right.  Thank you for that.

 3         Mr. McGee, you came from humble beginnings and have

 4    worked very hard, pursued some education, perhaps you will

 5    pursue some more.  You strike me as an intelligent man who has

 6    a great amount of potential, and you've demonstrated that over

 7    the last couple of years.  You did the right thing in this

 8    case and you're trying to do the right thing in your

 9    community.  I think you have a bright future.  Nothing in my

10    sentence is designed to discourage you from achieving great

11    things.  It's meant to convey to you the seriousness of what

12    you did.  I think that's something that's not lost on you.

13    I've tried to balance the good person that you are and the

14    things you've tried to do and the cooperation you provided to

15    the United States.  I wish you good luck in the future.

16         All right.  If there's nothing else from the parties,

17    this matter is concluded.  I wish you all a good rest of the

18    day.

19              MS. MURPHY:  Thank you.

20              (Proceedings concluded at 4:09 p.m..)

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3            I certify that the foregoing is a correct transcript

4     from the record of proceedings in the above-entitled matter.

5

6

7     /S/ Robert T. Tate, CCR, CRR          Dated:  May 10, 2021

8     Signature of Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```