UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | |
| ) | No. 19 CR 567 |
| -vs- ) | |
| ) | Hon. Martha M. Pacold |
| ROBERT SYLVESTER KELLY, ) | |
| also known as "R.Kelly," ) | |
|     Defendant. ) | |

## SUPPLEMENT TO EMERGENCY MOTION FOR TEMPORARY FURLOUGH

COMES NOW Defendant, Robert Sylvester Kelly, by and through counsel, Beau B. Brindley, and hereby provides a supplement to his emergency motion for temporary furlough. In support of his motion, Mr. Kelly provides as follows:

When we brought our emergency motion, we did so with a great deal of fear and trepidation. The reason for that is obvious. We have evidence that our client's life is being threatened by the very jailers on which he is required to rely for protection. Because of the imminency of the increasing threat, we had no choice but to act now and place this matter before the Court. Mr. Kelly's life could depend on it. We faced the risk that Mr. Kelly could be killed by persons who believed they could get away with it behind the shadow of prison walls. We brought a public filing and sought the intervention of this Court to let them know that there is no more darkness as now the world is watching. This was the best means we have of protecting our client.

However, at the same time that we brought our motion to protect our client's life, we feared the likely retaliation from the Bureau of Prisons. Within hours of the filing of our motion, that retaliation began. According to the evidence we presented, Mr. Kelly is the victim of a murder plot orchestrated by officials in the Bureau of Prisons. He did not make these allegations. The white supremacist sent to kill him did. Mikeal Glenn Stine set forth his long history of committing

1

acts of violence at the behest of prison officials in exchange for valuable favors. Mikeal Glenn Sinte revealed that he was sent to Butner for the purpose of killing R. Kelly. Mr. Kelly did nothing wrong. Yet, within hours of our filing, Mr. Kelly was placed in solitary confinement. He has no access to phones to call his family or his friends. He has no way to all his lawyer. When they came to take him to solitary, Mr. Kelly immediately asked to call his lawyer. He was denied that request. After no one heard from him on the evening of June 10, 2025, the undersigned's office began making efforts to determine what happened. Prison official refused to tell him whether Mr. Kelly had been placed in solitary confinement. All they would say is that he is still housed in the same facility. After multiple sustained demands, the undersigned finally got a legal call with Mr. Kelly on the morning of June 11. It was only then that the circumstances Mr. Kelly faces were brought to his attention.

    Mr. Kelly is now living in solitary confinement. He cannot call his family. He cannot eat his own food from his locker, which he purchased from commissary. The prison officials refuse to give it to him. Mr. Kelly has spiders crawling over him as he tries to sleep. He is alone in the dark in miserable conditions. Me. Kelly has not eaten since the afternoon of June 10. This is because the only food they will bring him comes from the very chow hall about which a prison official warned him before Mr. Kelly even knew anything about Mikeal Stine.[1] Since that warning, David Keith Harris has comes forward and admitted that Lieutenant Teague at Butner directed him to kill Mr. Kelly and Mr. Stine and suggested the poisoning of chow hall food, which is always handled by inmates. Hence, Mr. Kelly is afraid to eat that food. And with good reason. The prison officials refuse to let him have his own purchased and sealed food products from his locker (things like peanut butter and crackers) and, instead, insist he must eat food from the chow hall. He

---

[1] We have kept the name of this official anonymous for his own security.

requested a bag lunch, which is what is given to prisoners going to court. He was refused that. That left Mr. Kelly with no way to eat without the justifiable fear that his food is being poisoned. So he has been without food for two days. He cannot take his medicine on an empty stomach. Consequently, he is also without his medication.

And what's the reason? Because he was the victim of a murder threat. That makes no sense. He is being housed in the same solitary confinement conditions as inmates who commit the acts of prison violence that he fears. He pleaded with the jailers not to take him to the so-called special housing unit (the code word for solitary confinement). He said he was afraid to go there. He pointed out that Jeffrey Epstein died in solitary confinement. He said that he would feel safer in his room with the door locked. He repeatedly requested to speak to his lawyer. No one listened. This is not done for protection. It is done for punishment. Before his attorney call, Mr. Kelly was told by a prison official that, so long as we continue this fight and pursue our motion, things will only to get worse for him.

As Mr. Kelly languishes in solitary confinement for being the target of a murder plot, the officer at Butner who approached Mikeal Glenn Stine and David Keith Harris with directives to kill Mr. Kelly (Lt. Teague) remains free to walk through the facility and interact with inmates and staff, all of whom pose a potential threat to Mr. Kelly's life. The cruel and unusual punishment conditions that we identified in our motion are now substantially amplified.

Moreover, BOP officials are admittedly retaliating against Mr. Kelly for exercising his right of access to the courts. "An inmate's access to the courts is the most fundamental of his rights; 'all other rights of an inmate are illusory without it, being entirely dependent for their existence on the whim or caprice of the prison warden.'" *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Adams v. Carlson*, 488 F.2d 619, 630 (7th Cir.1973)). In keeping with this fundamental right, "[a]

3

prison official may not retaliate against an inmate because he filed grievances under the First Amendment." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). BOP officials have admittedly retaliated against Mr. Kelly for petitioning this Court for redress of his grievances. If the retaliation is permitted, all other of Mr. Kelly's rights—including the right to be free of extrajudicial execution at the behest of federal officials—will be rendered illusory. The imminent need for intervention from the Court cannot be overstated.

WHEREFORE Mr. Kelly respectfully requests that this Honorable Court order a temporary furlough to home detention.

Respectfully submitted,

By: /s/ *Beau B. Brindley*
Attorney for the Defendant

LAW OFFICES OF BEAU B. BRINDLEY
53 W. Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
(312) 765-8878 (Phone)