# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT SYLVESTER KELLY, <br><br> Defendant. | Case No. 1:19-cr-00567 <br><br> Judge Martha M. Pacold |

### ORDER

On September 14, 2022, a jury convicted defendant Robert Sylvester Kelly—better known by his stage name, R. Kelly—of three counts of inducing a minor to engage in sexually explicit conduct and three counts of producing child pornography. [335].[1] About six months later, on March 7, 2023, Judge Leinenweber (who was then presiding) sentenced Kelly to 240 months of imprisonment—228 of which are to run concurrently with Kelly's sentence for similar conduct in the Eastern District of New York. [429]. The Seventh Circuit affirmed Kelly's conviction and sentence. *United States v. Kelly*, 99 F.4th 1018 (7th Cir. 2024).

About two and a half years later, on June 10, 2025, Kelly filed an emergency motion for temporary furlough, in which he alleged a widespread conspiracy among various Bureau of Prisons and other Department of Justice officials to have him murdered. *See* [485].[2] He has since filed several supplements alleging subsequent developments in the plot on his life, none of which attach evidence. *See* [487], [489], [491]. [493].[3] The court scheduled a hearing on the motion and asked the parties to

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the CM/ECF page number.

[2] The original version of this motion, [480], also filed on June 10, failed to properly anonymize one of Kelly's child victims. Accordingly, the court granted the Government's motion to strike that version of the motion and ordered Kelly to refile an appropriately anonymized version of the motion. *See* [483]. Kelly's corrected motion, [484], also did not properly anonymize his child victims, so the court struck it as well. *See* [486]. Kelly's second corrected motion, [485], is thus the motion currently before the court.

[3] Kelly's surreply, [495], and the Government's response to Kelly's fourth supplement, [494], are stricken as surreplies filed without leave of court, *see Robinson v. Wexford Health Sources,*

be prepared to address whether this court has jurisdiction to issue the relief Kelly seeks. [483].[4] The court now concludes that it lacks jurisdiction over this matter. Accordingly, the court does not decide the merits of Kelly's allegations. The emergency motion, [485], is denied.

## STATEMENT

"The district courts of the United States are courts of limited jurisdiction." *Badgerow v. Walters*, 596 U.S. 1, 7 (2022). "Without jurisdiction, the court cannot proceed at all in any cause." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)). Jurisdictional limitations must be respected even where, as here, a litigant claims that the circumstances are extraordinary.

"Once a court sentences a criminal defendant"—as Judge Leinenweber did more than two years ago—"it has jurisdiction to continue hearing related issues *only* when authorized by statute or rule." *United States v. Goode*, 342 F.3d 741, 743 (7th Cir. 2003) (emphasis added). But Kelly has not identified (nor is the court aware of) any statute or rule that authorizes the court to exercise jurisdiction. Thus, the court cannot award relief in this case.

Kelly appeals to the court's "limited authority to address matters related, but tangential, to cases within [its] jurisdiction," which derives from the court's "inherent authority to protect [its] judgments." *Nichols v. Longo*, 22 F.4th 695, 698 (7th Cir. 2022). But this argument ignores that, as explained above, there is not presently a case within the court's jurisdiction. In addition, Kelly's motion does not fall within either of the established bases for ancillary jurisdiction: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379–80 (1994) (citations omitted). Instead, Kelly argues that "[s]topping cruel and unusual punishment falls within the [c]ourt's jurisdiction." [485] at 18. But that describes the court's jurisdiction at far too high a level of generality. "Federal courts do not possess a roving commission" to oversee enforcement of federal law. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Instead, they can determine constitutional issues only in the context of cases properly

---

*Inc.*, No. 18 C 5729, 2022 WL 558363, at *2 n.1 (N.D. Ill. Feb. 24, 2022), that do not address the issues before the court and instead serve only to air grievances against opposing counsel.

[4] At the hearing, the court set a briefing schedule on the jurisdictional issue. On the request of Kelly's counsel, the deadline for his reply brief was set for June 18, 2025. [486]. At 9:02 p.m. CDT on the day his reply brief was due, Kelly's counsel filed a motion for an extension of time. [496]. In light of counsel's repeated representations regarding the extreme urgency of this matter, further delay is not warranted. Accordingly, the motion for an extension of time, [496], is denied.

brought before them. Thus, Kelly's inherent authority argument assumes the very thing it seeks to prove—that the court has jurisdiction over this matter.

Because the nature of Kelly's motion is unclear, however, the court has also considered the possibility that the motion, despite being filed on the docket in Kelly's criminal case, should be construed as initiating a related civil case. Although it is unclear whether the court can so construe the motion, the court need not decide that question because however the motion is construed, the court lacks jurisdiction.

First, the court has considered the possibility that Kelly's motion is best understood as a request for equitable relief to prevent an ongoing or imminent constitutional violation. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015) (noting that federal courts may enjoin federal officials from violating federal law). While a prisoner can use a civil rights suit to challenge the conditions of his confinement, a challenge to the "very fact . . . of the confinement itself" must be brought via a petition for a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973); *see also Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (noting that *Preiser* "held that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release").[5] Here, Kelly seeks "immediate"—albeit temporary—"release from physical custody." *Preiser*, 411 U.S. at 487. Moreover, he argues that his "continued incarceration" violates his constitutional rights. [485] at 15; *see also id.* at 16 (arguing that "[c]ontinued custody" violates Kelly's constitutional rights). But that argument "'necessarily impl[ies]' the invalidity" of [his] confinement." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005 (2025) (per curiam) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022). As a result, it "fall[s] within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Id.* (quoting *Nance*, 597 U.S. at 167).[6]

If Kelly's motion is construed as a habeas petition, "jurisdiction lies in only one district: the district of confinement." *Id.* at 1005–06 (quotation omitted). Kelly is currently housed at FCI Butner, which is located in Butner, North Carolina—outside this judicial district. Accordingly, this court cannot award him habeas relief. In addition to ordinary habeas relief, "Congress created [28 U.S.C.] § 2255 as a separate

---

[5] Although *Preiser* and *Heck* both involved state prisoners, the same principles apply to federal prisoners such as Kelly. *See Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997); *see also Trump v. J.G.G.*, 145 S. Ct. 1003, 1005–06 (2025) (applying the *Preiser* rule to federal detainees).

[6] The court acknowledges that Kelly's requested furlough may be a form of constructive custody. *Cf. United States v. Lamell*, No. 2:12-cr-00016-wks, 2012 WL 5285383, at *3 (D. Vt. Oct. 25, 2012) ("As furloughed inmates remain under the custody of the State, furlough is the equivalent of detention."). Nevertheless, it "can fairly be described as a quantum change in the *level* of custody," and thus must be sought via a habeas petition, not a civil rights action. *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) (emphasis added).

3

remedial vehicle" for federal prisoners. *Jones v. Hendrix*, 599 U.S. 465, 473 (2023). While a motion under § 2255 may be made in "the court which imposed the sentence," 28 U.S.C. § 2255(a)—unlike a petition for a writ of habeas corpus, which must be brought in "the district of confinement," *J.G.G.*, 145 S. Ct. at 1005–06 (quotation omitted)—Kelly's motion does not fit within § 2255. Section 2255 applies only when the prisoner argues that his conviction or sentence was unlawful. But Kelly does not at this time challenge his conviction or sentence—though he notes that he plans to do so. Instead, he challenges how his sentence is being carried out. Thus, because he does not ask the court to "vacate, set aside or correct the sentence," 28 U.S.C. § 2255(a)—and even if he did, the court could not vacate, set aside, or correct the sentence imposed by the Eastern District of New York, *see United States v. Correa-De Jesus*, 708 F.2d 1283, 1285 (7th Cir. 1983)—§ 2255 does not authorize the court to order the relief Kelly seeks.

The court has also considered whether relief may be issued under the All Writs Act, 28 U.S.C. § 1651(a), as "necessary or appropriate in aid of" its potential future jurisdiction over proceedings related to Kelly, such as a future motion under § 2255 or Federal Rule of Criminal Procedure 33. *See In re Campbell*, 264 F.3d 730, 731 (7th Cir. 2001) ("[T]he federal court's jurisdiction in aid of which the writ . . . is sought need not yet have attached or been perfected; it can be potential . . . ."). But "the Act does not enlarge [the court's] jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 535 (1999). And while a writ can issue in aid of potential future jurisdiction, it cannot issue "solely on the basis that events *might* lead to a filing." *In re Tennant*, 359 F.3d 523, 529 (D.C. Cir. 2004). Rather, the "preliminary requirement" is that there be "a proceeding of *some* kind instituted" over which the court might eventually have jurisdiction. *Id.* Although Kelly may eventually seek relief that is within this court's jurisdiction, no such proceeding has been instituted, and so any potential jurisdiction is too speculative to support relief under the Act.[7]

Finally, the court briefly notes that Kelly's motion does not appear to be a motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1). The motion does not mention compassionate release, and it argues only that continued detention violates the Constitution, not that Kelly can meet the statutory requirements for compassionate release. Moreover, Kelly is not asking the court to "modify a term of imprisonment." 18 U.S.C. § 3582(c). Even if he was, the court could not modify the term of imprisonment imposed by the Eastern District of New York. *See Davis v. United States*, 124 F.4th 980, 983–84 (5th Cir. 2025). Thus, Kelly's motion cannot fairly be construed as a motion for compassionate release.

---

[7] Because the court concludes that it lacks jurisdiction, it does not decide whether any writ that could be issued would be "agreeable to the usages and principles of law," 28 U.S.C. § 1651(a), or whether the issuance of a writ would be barred by the rule against "issu[ing] ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate," *Pa. Bureau of Corrs. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).

## CONCLUSION

"After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also Johnson v. Luther*, 516 F. Supp. 423, 424 (N.D. Ill. 1981) ("Congress has committed the decision to grant a furlough to a federal prisoner to the discretion of the Attorney General."). Kelly has not demonstrated a legal basis for this court's jurisdiction. Accordingly, his emergency motion, [485], is denied. The in-person hearing set for June 20, 2025, is stricken.

Dated: June 19, 2025 /s/ Martha M. Pacold