UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT SYLVESTER KELLY, <br><br> Defendant. | Case No. 1:19-cr-00567 <br><br> Judge Martha M. Pacold |

## ORDER

Defendant Robert Sylvester Kelly's motion for disqualification or recusal of the United States Attorney's Office for the Northern District of Illinois, [499], is denied. The Government shall respond to defendant's motion for a new trial, [498], by October 16, 2025. Defendant shall reply by November 13, 2025.

## STATEMENT

Almost three years ago, a jury convicted defendant Robert Sylvester Kelly—better known by his stage name, R. Kelly—of three counts of inducing a minor to engage in sexually explicit conduct and three counts of producing child pornography. [335].[1] The trial judge sentenced Kelly to 240 months of imprisonment, [429], and the Seventh Circuit affirmed, *United States v. Kelly*, 99 F.4th 1018 (7th Cir. 2024).

On June 20, 2025, Kelly filed a motion for a new trial, alleging various forms of prosecutorial misconduct, including violations of *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Sixth Amendment's protection for the attorney-client privilege. [498]. The motion also renewed Kelly's previous requests for the court to order his immediate release pending the adjudication of the motion for a new trial.[2] *See id.* at 2. Specifically, the motion

---

[1] Bracketed numbers refer to docket entries and are followed by page and/or paragraph number citations. Page numbers refer to the CM/ECF page number.

[2] Kelly first made this request on April 12, 2025, via an ex parte "emergency motion for immediate legal visit and temporary furlough or, alternatively, immediate transfer to the [Metropolitan Correctional Center] Chicago." [477]. On April 15, the court held a hearing to determine whether ex parte proceedings were appropriate. *See* [473]. At the hearing, Kelly voluntarily withdrew the motion. [474]. On June 10, Kelly filed an emergency motion for

reiterated Kelly's allegations of a widespread conspiracy among various Bureau of Prisons and other Department of Justice officials to have Kelly murdered. Contemporaneously with this motion, Kelly also filed a motion to have the entire United States Attorney's Office for the Northern District of Illinois (USAO) disqualified. [499].

On June 24, the court again denied Kelly's request for release pending the adjudication of his new trial motion, [502], set a briefing schedule on the disqualification motion, [501], and suspended briefing on the new trial motion pending decision on the disqualification motion, *id.* The court now denies Kelly's motion to disqualify the United States Attorney's Office for the Northern District of Illinois, [499].

The Assistant United States Attorneys (AUSAs) who staff the USAO "are members of the Executive Branch, and the Constitution vests the executive power in the President alone." *United State v. Petlechkov*, 72 F.4th 699, 709 (6th Cir. 2023) (citing *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 213 (2020)); *see* U.S. Const. art. II, § 1, cl. 1. "That means the President and his officers, not the courts, supervise AUSAs." *Petlechkov*, 72 F.4th at 709. Thus, a court "disqualifying an entire office of Executive branch attorneys" runs a "great[] risk of offending separation-of-powers principles." *United States v. Williams*, 68 F.4th 564, 572 (9th Cir. 2023). Federal courts "do not dictate to the Executive branch who will serve as its prosecutors" "[a]bsent a violation of . . . the Constitution, a [federal] statute, or a procedural rule." *Id.* (alterations in original) (quoting *United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992)).

"In light of these principles, every circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification." *United States v. Bolden*, 353 F.3d 870, 879 (10th Cir. 2003); *accord Williams*, 68 F.4th at 572; *see also United States v. Basciano*, 763 F. Supp. 2d 303, 313 (E.D.N.Y. 2011) ("In fact, the overwhelming weight of authority counsels against disqualification of an entire U.S. Attorney's Office."). Courts have described officewide disqualification as "an extreme remedy," *Williams*, 68 F.4th at 573, and a "drastic measure," *Bolden*, 353 F.3d at 878 (quoting *Bullock v. Carver*, 910 F. Supp. 551, 559 (D. Utah 1995)). "Such sweeping interference," they have explained, "is seldom warranted." *Williams*, 68 F.4th at 572; *see Bolden*, 353 F.3d at 875 ("[W]e can only rarely—if ever—imagine a scenario in which a district court could properly disqualify an entire United States Attorney's office."). And "disqualifying an entire United States Attorney's office is almost always reversible error." *Bolden*, 353 F.3d at 876.

---

temporary furlough, this time publicly. [485] (corrected version). On June 19, the court denied the motion. [497].

Such extensive interference with Executive branch affairs demands 'a clear basis in fact and law.'" *Williams*, 68 F.4th at 573 (quoting *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir. 1985)). "This is a two-part requirement. First, a district court must find a strong factual predicate for blanket disqualification. Second, a district court must determine that the U.S. Attorney's Office's continued representation of the government will result in a legal or ethical violation." *Id.* In other words, "a court must not only make specific findings against the accused prosecutors, but it must also determine that any misconduct or conflict so pervades the office that less intrusive remedies would be inadequate to safeguard against a legal violation." *Id.* "Only after the district court makes these exacting findings and legal conclusions" may it "disqualif[y] . . . an entire office of a coequal branch." *Id.*

Kelly cannot meet this exacting standard. The only AUSA he accuses of any misconduct is no longer part of the USAO. And Kelly has expressly disclaimed "any allegation concerning . . . any misconduct undertaken in this case by" the only member of the original prosecution team who remains part of the USAO. [499] at 4. Instead, Kelly's theory is that all attorneys with the USAO (even, apparently, those who did not join the office until long after the alleged misconduct) are potential witnesses or "could be harboring bias for their friends and colleagues, fear of their supervisors, or general fervor to champion the integrity of" the USAO. *Id.* at 5.

It is well-established that this sort of "speculat[ion] about possible conflicts" is insufficient to support officewide disqualification. *Williams*, 68 F.4th at 567. Indeed, Kelly's theory would be equally applicable to any case where a defendant alleges prosecutorial misconduct. But prosecutorial misconduct is "routinely . . . the issue of post-conviction litigation." *Le v. Mullin*, 311 F.3d 1002, 1029 (10th Cir. 2002) (Henry, J., concurring). Yet "every circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification." *Bolden*, 353 F.3d at 879; *accord Williams*, 68 F.4th at 572.

\* \* \*

To warrant such an extraordinary intrusion into the affairs of a coequal branch as the disqualification of an entire USAO, a defendant must make an equally extraordinary showing. Kelly's motion does not meet that standard. Accordingly, it is denied.

Dated: August 19, 2025                    /s/ Martha M. Pacold