UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,               )
                                        )  No. 19 CR 567
-vs-                                    )
                                        )  Hon. Martha M. Pacold
ROBERT SYLVESTER KELLY                  )

**DEFENDANT'S SUPPLEMENTAL BREIF REGARDIGN STRUCTURAL ERROR**

The government's interception of attorney-client communications discussing trial preparation and strategy constitutes structural error. "The right to the assistance of counsel guaranteed by the Sixth . . . Amendments is indispensable to the fair administration of our adversarial system of criminal justice." *Maine v. Moulton*, 474 U.S. 159, 168 (1985); *see, e.g.*, *Black v. United States*, 385 U.S. 26, 28 (1966) (ordering a new trial where agents overheard conversations between the defendant and his attorney and the information was communicated to the prosecution); *O'Brien v. United States*, 386 U.S. 345 (1967) (same). The Supreme Court "has also recognized that the assistance of counsel cannot be limited to participation in a trial; to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Id.* at 170. The government's intrusion on the attorney-client relationship also has due process implications under the Fifth Amendment. *See United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989).

"The opaque term 'structural error' is best understood as denoting an error that can't (at least without inordinate burden or difficulty) be *determined* to be harmless. *United States v. Gaya*, 647 F.3d 634, 638 (7th Cir. 2011). The Supreme Court has recognized three circumstances that give rise to structural error:

> First, an error has been deemed structural in some instances if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest. . . .

1

Second, an error has been deemed structural if the effects of the error are simply too hard to measure. . . .

Third, an error has been deemed structural if the error always results in fundamental unfairness.

*Weaver v. Massachusetts*, 582 U.S. 286, 295–96 (2017) (citations omitted).

"These categories are not rigid. In a particular case, more than one of these rationales may be part of the explanation for why an error is deemed to be structural." *Id.* at 296. "For these purposes, however, one point is critical: An error can count as structural even if the error does not lead to fundamental unfairness in every case." *Id.* While violations of the right to counsel are, in some instances, subject to harmless error analysis, whether a particular violation is structural "depend[s] on the nature of the violation." *See Ashford v. Gilmore*, 167 F.3d 1130, 1137 (7th Cir. 1999).

The use of a jailhouse informant to obtain attorney-client communications discussing trial preparation or strategy satisfies the criteria for structural error. A criminal defendant has a right to confer confidentially with his counsel. *See Adams v. Carlson*, 488 F.2d 619, 631 (7th Cir. 1973) ("[T]he effective protection of access to counsel requires that the traditional privacy of the lawyer-client relationship be implemented in the prison context."). The purpose of the protection is not to protect against erroneous conviction, but rather "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "Free two way communication between client and attorney is essential if the professional assistance guaranteed by the sixth amendment is to be meaningful." *United States v. DiDomenico*, 78 F.3d 294, 300 (7th Cir. 1996) (quoting *United States v. Levy*, 577 F.2d 200, 209 (3d Cir.1978)). Allowing the government to obtain confidential attorney-client communications discussing trial

2

preparation and strategy would undermine the public interest in the observance of law and administration of justice.

Moreover, allowing the government to obtain such information will always produce an unfair result. Trial preparation and strategy can involves "investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006). Allowing the government to have a window into any such information will always produce an unfair result. Armed with such information, the government will always an unfair advantage at trial. It will have an opportunity to prepare for and meet defense tactics and theories that is denied to the defense. Allowing the government to tailor its case based intercepted attorney-client communications regarding trial strategy places a thumb on the scale in the government's favor. With such an advantage, the government's case is not required to "survive the crucible of meaningful adversarial testing." *See United States v. Cronic*, 466 U.S. 648, 656 (1984).

The difficulty of determining the extent of the harm a defendant suffers from the surreptitious interception of attorney-client communications counsels in favor of finding structural error. *See Gonzalez-Lopez*, 548 U.S. at 150 (concluding that a Sixth Amendment violation "with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error'" (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 281–82 (1993)). There are numerous ways in which the government's receipt of attorney-client communications relating to trial preparation or strategy may advantage the government. It may aid the government in its investigation. It could help the government focus more heavily on certain aspects of the case. It may assist in the preparation of witnesses. It can help the government assess what evidence to put on in its case in chief or save for rebuttal. Determining the extent of the harm suffered by a

3

defendant will be next to impossible. Likewise, it will be next to impossible for the government to show that its receipt of such information was harmless beyond a reasonable doubt. The efficiency cost of permitting the government to attempt such a showing render harmless error analysis unjustified.

The government's obtainment of communications relating to the defense's trial preparation and strategy is distinguishable from *Whetherford v. Bursey*, where the Supreme Court required a showing of prejudice. There, the Court made clear that there was "no tainted evidence in this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by [the informant] . . . ." 429 U.S. 545, 558 (1977). Indeed, the *Weatherford* Court acknowledged that the case would be much stronger if the government obtained communications relating to trial preparations. *Id.* at 554. And the Court noted that the United States had conceded[1] that certain intrusions into the attorney-client relationship would constitute violations of the right to counsel:

> In Hoffa, the United States conceded, as it does here as amicus curiae, that the Sixth Amendment would be violated "if the government places an informant in the defense camp during a criminal trial and receives from that informant privileged information pertaining to the defense of the criminal charges . . . because the Sixth Amendment's assistance-of-counsel guarantee can be meaningfully implemented only if a criminal defendant knows that his communications with his attorney are private and that his lawful preparations for trial are secure against intrusion by the government, his adversary in the criminal proceeding."

*Id.* at 554 n.4 (citations to briefs omitted, ellipsis in original). The same rationale applies to the government's obtainment of attorney-client communications. If a defendant cannot trust that attorney-client communications can be secure, his right to counsel is eviscerated. Defendants who are detained before trial are already at a disadvantage in trial preparation due to the practical

---

[1] The United States made the concession as a party in *Hoffa v. United States*, 385 U.S. 293 (1966) and as *amicus curiae* in *Weatherford*.

constraints detention poses for conferring with counsel. If the government is entitled to obtain communications sent from or meant for counsel, the right to counsel has no meaning.

Subsequent cases suggest that the disclosure of defense strategy would require reversal. In *United States v. Disston*, the Seventh Circuit remanded for an evidentiary hearing to determine what information an informant gave to the prosecution. 582 F.2d 1108, 1110 (7th Cir. 1978). The Seventh Circuit instructed that the defendant's conviction should be dismissed if prejudicial information or trial strategy was communicated to the government: "If Disston's co-defendant was a Government informer, and if he obtained information prejudicial to Disston or regarding Disston's trial strategy which he then transferred to the Government, Disston's conviction should be reversed." *Id.*

Similarly, *United States v. Balistrieri*, 606 F.2d 216, 222 (7th Cir. 1979) cited *Coplon v. United States*, 191 F.2d 749 (D.C. Cir. 1951) for the proposition that eavesdropping on attorney-client communications may be grounds for reversal. *Coplon* applied a *per se* rule, requiring that a conviction be vacated if the government intercepted attorney-client communications. *Coplon*, 191 F.2d at 759 ("We think it is further true that the right to have the assistance of counsel is so fundamental and absolute that its denial invalidates the trial at which it occurred and requires a verdict of guilty therein to be set aside, regardless of whether prejudice was shown to have resulted from the denial."). These cases are consistent with Third Circuit's interpretation of *Whetherford* as "suggesting by negative inference that a sixth amendment violation would be found where . . . defense strategy was actually disclosed or where . . . the government enforcement officials sought such confidential information." *United States v. Levy*, 577 F.2d 200, 210 (3d Cir. 1978).

An evidentiary hearing is warranted to determine whether the government obtained information relating to trial preparation or strategy. If so, the Court should find structural error.

Respectfully submitted,

By: /s/ Beau B. Brindley
Attorney for the Defendant

LAW OFFICES OF BEAU B. BRINDLEY
53 W Jackson Blvd, Suite 1410
Chicago, Illinois 60604
(312) 765-8878

6